C.A. No. 17-16852

D. Ct. No. CV 13-1996-TUC-JAS

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

——————

DAVID A. DIEHL,

Plaintiff-Appellant,

v.

UNKNOWN MENDEZ, et al.

Defendants-Appellees.

——————

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ARIZONA

-------------------------------------------------------------

# BRIEF OF APPELLEES
# (REDACTED)

-------------------------------------------------------------

|  |  |
|---|---|
|  | ELIZABETH A. STRANGE |
|  | First Assistant U.S. Attorney |
|  | District of Arizona |
|  | ROBERT L. MISKELL |
|  | Assistant U.S. Attorney |
| CONNOR HACKERT | Chief, Appellate Section |
| Trial Attorney | 405 West Congress, Suite 4800 |
| U.S. Department of Justice | Tucson, Arizona 85701 |
| Civil Division | Telephone: (520) 620-7300 |
| Constitutional & Specialized Torts | Attorneys for Appellees |

Date Electronically Filed: April 27, 2018

# I.  TABLE OF CONTENTS

Page

I.  Table of Contents ........................................................................ i

II.  Table of Authorities ................................................................... ii

III.  Statement of Jurisdiction

    A.  District Court Jurisdiction ................................................1

    B.  Appellate Court Jurisdiction.............................................1

    C.  Timeliness of Appeal........................................................1

IV.  Issues Presented ........................................................................2

V.  Statement of the Case

    A.  Nature of the Case; Course of Proceedings.........................3

    B.  Statement of Facts ...........................................................4

VI.  Summary of Arguments...............................................................14

VII.  Arguments

    A.  The District Court Did Not Err By Granting Summary Judgment Because There Is No Genuine Dispute That The Plaintiff Did Not Exhaust His Administrative Remedies As To The Claims Alleged In The First Amended Complaint Against Defendants Hansen And Mendez ..........................................................16

    B.  This Court Should Decline To Extend A *Bivens* Remedy To Plaintiff's First Amendment Retaliation Claims.................................22

    C.  Alternatively, The Judgment Should Be Affirmed Because The Diehl Cannot Establish The Elements Of His Claim And Because Defendants Hansen And Mendez Are Entitled To Qualified Immunity ........................................................................53

VIII.  Conclusion .............................................................................59

IX.  Statement of Related Cases ........................................................60

X.  Certificate of Compliance...........................................................61

XI.  Certificate of Service ................................................................63

i

## II. <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) (en banc) ...........................................19

*Anderson v. Creighton*,
  483 U.S. 635 (1987).....................................................................48

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).....................................................................16

*Andrews v. Miner*,
  __ F. Supp. 3d __, 2017 WL 7688266 (N.D. Ala. Aug. 25, 2017) .............. 35, 43

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009) (en banc) ...............................................36

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................ 25, 27, 55

*Ashford v. Travesio*,
  No. 17-CV-00164-PHX-JJT,
  2018 U.S. Dist. LEXIS 18500 (D. Ariz. Feb. 2, 2018).......................33

*Bell v. Wolfish*,
  441 U.S. 520 (1979)....................................................................51

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971)..................................................................... *passim*

*Bothke v. Fluor Engineers & Constructors, Inc.*,
  834 F.2d 804 (9th Cir. 1987) .......................................................22

*Bruce v. Ylst*,
  351 F.3d 1283 (9th Cir. 2003) ................................................. 53, 57

*Buenrostro v. Fajardo*,
    No. 1:14-CV-00075-DAD-BAM,
    2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017) .............................................33

*Bush v. Lucas*,
    462 U.S. 367 (1983) ........................................................ 24, 25, 27, 37

*Butts v. Martin*,
    877 F.3d 571 (5th Cir. 2017) .............................................................27

*Carlson v. Green*,
    446 U.S. 14 (1980) ..................................................................... *passim*

*Chappell v. Wallace*,
    462 U.S. 296 (1983) ...................................................................... 24, 52

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001) ...................................................................... *passim*

*Crawford-El v. Britton*,
    523 U.S. 574 (1998) ...........................................................................49

*Davis v. Passman*,
    442 U.S. 228 (1979) ................................................................. 24, 26, 27

*Davis v. Powell*,
    901 F. Supp. 2d 1196 (S.D. Cal. 2012).............................................................50

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018) .................................................................. 56, 57

*FDIC v. Meyer*,
    510 U.S. 471 (1994) .................................................................... 24, 47

*Frank v. Schultz,*
    624 Fed. Appx. 565 (9th Cir. 2015 .............................................................. 56, 57

*Free v. Peikar*,
   No. 1:17-CV-00159-MJS-PC,
   2018 WL 905388 (E.D. Cal. Feb. 15, 2018),
   *report and recommendation adopted*,
   1:17-CV-00159-AWI-MJS-PC,
   2018 WL 1569030 (E.D. Cal. Mar. 30, 2018) ............................ 27, 28, 30, 37, 43

*Gibson v. United States*,
   781 F.2d 1334 (9th Cir.1986) ...............................................................28

*Gonzalez v. Bendt*,
   No. 4:16-CV-04038-KES,
   2018 WL 1524752 (D.S.D. Mar. 28, 2018) ........................................50

*Graham v. Henderson*,
   89 F.3d 75 (2d Cir. 1996).....................................................................50

*Grenning v. Klemme*,
   34 F. Supp. 3d 1144 (E.D. Wash. 2014) ..............................................49

*Harvey v. Jordan*,
   605 F.3d 681 (9th Cir. 2010) ...............................................................18

*Hernandez v. Mesa*,
   137 S. Ct. 2003 (2017) ................................................................... 23, 25

*Jerra v. United States*,
   No. 2:12-CV-01907-ODW-(AGRx),
   2018 WL 1605563 (C.D. Cal. Mar. 29, 2018)......................................30

*Kisela v. Hughes,*
   138 S. Ct. 1148 (2018).........................................................................57

*Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*,
   881 F.3d 912 (D.C. Cir. 2018) ....................................................... 35, 36

*Malley v. Briggs*,
   475 U.S. 335 (1986)............................................................................56

*Martin v. Naval Criminal Investigative Serv.*,
   539 Fed. Appx. 830 (9th Cir. 2013) (unpublished) .............................................28

*McBride v. Lopez*,
   807 F.3d 982 (9th Cir. 2015) ........................................................... 18, 21

*McRorie v. Shimoda*,
   795 F.2d 780 (9th Cir. 1986) ................................................................40

*Miller v. Gammie*,
   335 F.3d 889 (9th Cir. 2003) (en banc) ................................................28

*Minneci v. Pollard*,
   565 U.S. 118 (2012)...............................................................................24

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ................................................................28

*Nunez v. Duncan*,
   591 F.3d 1217 (9th Cir. 2010) ..............................................................29

*O'Haire v. Napa State Hosp.*,
   No. C 07-0002 RMW (PR),
   2009 WL 2447752 (N.D. Cal. Aug. 7, 2009) ......................................40

*Overton v. Bazzetta*,
   539 U.S. 126, (2003).............................................................................51

*Parks v. Wren,*
   651 Fed. Appx. 597 (9th Cir. 2016).....................................................29

*Porter v. Nussle*,
   534 U.S. 516 (2002)...............................................................................17

*Pratt v. Rowland*,
   65 F.3d 802 (9th Cir. 1995) ........................................................... 53, 54

*Reeb v. Thomas*,
   636 F.3d 1224 (9th Cir. 2011) ..................................................... 34, 42

*Reichle v. Howards*,
566 U.S. 658 (2012) .............................................................................27

*Reid v. United States*,
No. 1:14-CV-01163-LJO-MJS (PC),
2018 WL 1588264 (E.D. Cal. Apr. 2, 2018) ..................................... 29, 33, 35, 37

*Rhodes v. Robinson*,
408 F.3d 559 (9th Cir. 2005) ...............................................................53

*Rodriguez v. Copenhaver*,
823 F.3d 1238 (9th Cir. 2016) ..............................................................34

*Ross v. Blake*,
136 S. Ct. 1850 (2016) ........................................................................18

*Saucier v. Katz*,
533 U.S. 194 (2001) ...........................................................................57

*Schweiker v. Chilicky*,
487 U.S. 412 (1988) ....................................................... 24, 25, 31, 38

*Scott v. Harris*,
550 U.S. 372 (2007) ...........................................................................16

*Shepard v. Quillen*,
840 F.3d 686 (9th Cir. 2016) ...............................................................57

*Solida v. McKelvey*,
820 F.3d 1090 (9th Cir. 2016) ..............................................................34

*Soto v. Sweetman*,
882 F.3d 865 (9th Cir. 2018) ...................................................... 16, 52

*Turner v. Safley*,
482 U.S. 78 (1987) .............................................................................45

*United States v. Diehl*,
775 F.3d 714 (5th Cir.),
*cert. denied*, 136 S. Ct. 213 (2105) ............................................... 1, 4, 5

vi

*United States v. Stanley*,
   483 U.S. 669 (1987) .......................................................................24

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017) ...................................................... 27, 35

*Vega v. United States*,
   881 F.3d 1146 (9th Cir. 2018) ................................................. *passim*

*Vega v. United States*,
   No. 13-35311, 2018 WL 747823 (9th Cir. Feb. 7, 2018) ...................................29

*W. Radio Servs. Co. v. U.S. Forest Serv.*,
   578 F.3d 1116 (9th Cir. 2009) .................................................... 24, 34

*Wilkie v. Robbins*,
   551 U.S. 537 (2007) ................................................................. *passim*

*Wood v. Moss*,
   134 S. Ct. 2056 (2014) ...................................................................27

*Woodford v. Ngo*,
   548 U.S. 81 (2006) ..................................................... 17, 18, 20, 41

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) .............................................................. *passim*

## **STATUTES**

5 U.S.C. § 706(2)(A)-(B) .........................................................................34

18 U.S.C. § 2251(a) ..................................................................................4

18 U.S.C. § 3621 ............................................................ 34, 42, 43, 44

18 U.S.C. § 3621(b) ........................................................................ 34, 46

18 U.S.C. § 3622 ...................................................................................43

18 U.S.C. § 3623 ...................................................................................43

18 U.S.C. § 3624 ................................................................................43

18 U.S.C. § 3625 ......................................................................... 34, 42

18 U.S.C. § 3626(a)(2) .......................................................................35

18 U.S.C. § 4001(b) ...........................................................................44

18 U.S.C. § 4001(b)(2) .......................................................................46

18 U.S.C. § 4042(a) ...........................................................................44

28 U.S.C. § 1291 ..................................................................................1

28 U.S.C. § 1915(g) ...........................................................................41

28 U.S.C. § 2241 ................................................................................33

42 U.S.C. § 1983 ......................................................................... 17, 39

42 U.S.C. § 1997d ..............................................................................40

42 U.S.C. § 1997e ..............................................................................41

42 U.S.C. § 1997e(a) ............................................................. 14, 17, 41

42 U.S.C. § 1997j ..............................................................................40

## **RULES**

28 C.F.R. § 50.15 ...............................................................................23

28 C.F.R. § 541 ..................................................................................47

28 C.F.R. § 542.10 .............................................................................32

28 C.F.R. § 542.10(a) ...........................................................................7

28 C.F.R. § 542.11 ................................................................32

28 C.F.R. § 542.13(a)..............................................................7

28 C.F.R. § 542.14(d)(1)............................................... 7, 19, 20

28 C.F.R. § 542.15 ..................................................................7

28 C.F.R. § 522-27 ................................................................47

28 C.F.R. §§ 542.10-542.19 .....................................................7

28 C.F.R. § 542.14 ..................................................................7

Fed. R. App. P. 4(a) ................................................................1

Fed. R. Civ. P. 56(a)..............................................................16

Fed. R. Civ. P. 56(c)..............................................................16

## **MISCELLANEOUS**

1980 Civil Rights of Institutionalized Persons Act (CRIPA).................... 39, 40, 41

2006 UN Report, https://www.state.gov/documents/organization/133838.pdf ......42

Allen W. Burton, *Prisoners' Suits for Money Damages: An Exception to the
  Administrative Exhaustion Requirement of the Prison Litigation Reform Act*,
  69 Fordham L. Rev. 1359, 1369 (2001) ...............................................39

Federal Bureau of Prisons Act, ch. 274,
  Pub. L. No. 71-218, 46 Stat. 325 (1930)..............................................44

Inmate Discipline Program,
  p. 45 (eff. Aug. 1, 2011).............................................................47

John F. Wagner Jr., Annotation, *Validity, construction, application, and effect of
  Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997-1997j,*
  93 A.L.R. Fed. 706, Part I, § 2(a)
  (Originally published in 1989) (emphasis added) ................................40

ix

Prison Litigation Reform Act (PLRA) of 1995 .......................................... 41, 42, 43

S. Rep. 96-416, pgs. 1-3, 26-27, 40 (1979),
   reprinted in 1980 U.S.C.C.A.N. 787-90, 802, 808-09, 822 .................................40

The Prison Rape Elimination Act (PREA),
   34 U.S.C. §§ 30301-09 ................................................................... 41, 42

Three Prisons Act,
   ch. 529, 26 Stat. 839 (1891) .................................................................44

Violence Against Women Reauthorization Act of 2013,
   PL 113-4, March 7, 2013, 127 Stat 54 ................................................42

## III. STATEMENT OF JURISDICTION

### A. District Court Jurisdiction

The district court assumed subject matter jurisdiction, because the plaintiff, David A. Diehl ("Diehl" or "plaintiff") filed a complaint asserting a cause of action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against several employees of the United States Bureau of Prisons ("BOP"). (CR 1.)[1]

### B. Appellate Court Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 based on the entry of the final judgment by the district court on August 29, 2017. (CR 140; SER1 2.)

### C. Timeliness of Appeal

Following the entry of the final judgment, the plaintiff filed a notice of appeal on September 11, 2017. (CR 142; SER1 1.) The notice was timely pursuant to Fed. R. App. P. 4(a).

---

[1] "CR" refers to the Clerk's Record, followed by the document number(s). "SER1" refers to the Supplemental Excerpts of Record, Volume 1, followed by the relevant page number(s). "SER2" refers to the Supplemental Excerpts of Record, Volume 2.

1

# IV. **ISSUES PRESENTED**

A.     Whether the district court erred by granting summary judgment where there is no genuine dispute that the plaintiff did not exhaust his administrative remedies as to the claims alleged in his first amended complaint against the defendants.

B.     Whether this court should decline to extend a *Bivens* remedy to plaintiff's First Amendment retaliation claims

C.     Whether, alternatively, the judgment should be affirmed because the plaintiff cannot establish the elements of his claim and because defendants Hansen and Mendez are entitled to qualified immunity.

## V.  STATEMENT OF THE CASE

### A.  Nature of the Case; Course of Proceedings

On December 2, 2013, the plaintiff filed a pro se civil rights complaint.  (CR 1.)  The district court dismissed the complaint without prejudice for failure to state a claim.  (CR 24.)

On September 26, 2014, the plaintiff filed a pro se first amended complaint pursuant to *Bivens* alleging three counts:  (1) violation of his association and equal protection rights; (2) retaliation; and (3) tortious interference and negligent failure to investigate, which he claims violated his association and equal protection rights.  Plaintiff named 12 employees of the United States Penitentiary-Tucson as defendants.  (CR 28; SER1 138.)  In its screening order, the district court dismissed without prejudice all of the claims except the retaliation claims against defendants Mendez and Hansen.  (CR 32.)

On August 29, 2017, the district court granted defendants Mendez's and Hansen's motion for summary judgment and dismissed the action without prejudice for failure to exhaust administrative remedies.  (CR 138; SER2 177.)[2]  This appeal ensued.

---

[2] The district court did not reach the defendants' arguments that (1) pursuant to *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), there is no implied *Bivens* remedy in this context; (2) plaintiff could not establish First Amendment retaliation, and (3) the defendants had qualified immunity.  (CR 138, p. 10 n.6; SER2 186.)

**B.** **Statement of Facts**

Plaintiff David A. Diehl was convicted of 10 counts of sexual exploitation of a child/production of child pornography in violation of 18 U.S.C. § 2251(a) and sentenced to 600 months in prison. *United States v. Diehl*, 775 F.3d 714 (5th Cir.), *cert. denied*, 136 S. Ct. 213 (2105). Plaintiff has been in custody since April, 2010. (CR 110-1, Exh. 1, Att. 1; SER2 207.) Between November 17, 2011 and December 3, 2013, he was serving his sentence at the United States Penitentiary ("USP") Tucson. (CR 110, ¶ 1; SER2 187.)

1.     General Background

The conditions of supervised release imposed at Diehl's sentencing prohibited him from "associat[ing] with any child or children under the age of 18 except in the presence and supervision of an adult specifically designated in writing by the probation officer." Diehl also was prohibited from having contact "with any victim named in the presentence report" without the prior written consent of the probation officer. (CR 110-1, Exh. 2, Att. 2; SER2 255.)

On July 29, 2011, a state court in Texas entered an order modifying the custody arrangement for the son of Diehl and his ex-wife. That order allowed Diehl to call at 6:00 p.m. Central Standard Time on the first, third and fifth Sunday of each

4

month. The order also allowed the son not to talk to Diehl. (CR 110-1, Exh. 2, Att. 1; SER2 251.)

In December, 2011, an FBI agent contacted the prison and relayed that Diehl was making harassing telephone calls to his ex-wife's telephone number, and that she wanted her telephone number blocked. The prison placed a block on her number. (CR 110, ¶ 29; SER2 194.)

Diehl brought an action in the Texas state court which resulted in his ex-wife's representative writing a letter, dated July 12, 2012, to the prison stating that she consents to the removal of any call block. That letter also stated that prior to the initiation of the call block, Diehl was making multiple phone calls outside the court-authorized schedule, including one day when upwards of 15 calls were made. (CR 110; ¶ 12; SER2 191.)

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████[3]

On July 18, 2012, the probation office for the District of Arizona advised Diehl that the no contact orders were in effect from the date of his sentencing and

---

[3] Diehl committed his crimes in 1999 and 2000. ██████████████████████████
████████████████ *See Diehl*, 775 F.3d at 717.

that the Bureau of Prison must follow the no contact orders.  (CR 110, ¶ 14; SER2 191.)

In a letter dated August 8, 2012, the probation office in the Western District of Texas (the sentencing district) responded to a request Diehl made to the sentencing judge.   The probation officer stated that the sentencing judge agreed to allow the contact with his son as provided by the Texas state court order.  The judge refused to make any changes to the Presentence Report.  (CR 110-1, Exh. 2; Att. 14; SER2 296.)

2.     <u>The Plaintiff's Allegations of Retaliation By Defendants Mendez and Hansen</u>

In the first amended complaint, Diehl alleged that defendant Mendez made clear to him that Mendez would transfer Diehl to another facility if Diehl exercised his right to access the court system.   Diehl further alleged that Mendez told him that his life would be jeopardized if he was transferred to another facility.  Diehl claimed that Mendez had him transferred within weeks of the defendant initiating this *Bivens* action.  (CR 28, p. 17; SER1 154.)

Diehl alleged that defendant Hansen issued an untimely disciplinary charge against him in retaliation after Diehl succeeded in the Texas state court case regarding contact with his son.  (CR 28, p. 18, SER1 155.)

3.    Facts Regarding Exhaustion of Administrative Remedies

a.    Bureau of Prison's Grievance Procedure

The Bureau of Prisons provides a four-level Administrative Remedy Program, which is codified at 28 C.F.R. §§ 542.10-542.19.  The program is designed to allow an inmate to seek formal review of an issue relating to any aspect of confinement. 28 C.F.R. § 542.10(a).  The program contains four levels of review. Initially, an inmate is required to attempt to informally resolve his or her grievance with the Unit Team staff.  28 C.F.R. § 542.13(a).  If the inmate is unable to resolve the grievance informally, he may submit an Administrative Remedy Request to the Warden using the BP-9 Form. 28 C.F.R. §§ 542.13(a), 542.14.  If the inmate is not satisfied with the Warden's response, he may submit an Appeal on the BP-10 Form to the Regional Director within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15.  If the inmate is not satisfied with the Regional Director's response, he may submit an Appeal on the BP-11 Form to the General Counsel at the Central Office within 30 days of the date the Regional Director signed the response.  *Id*. The appeal to the General Counsel at the Central Office is the final level of administrative review.  *Id*.  (CR 110, ¶ 2; SER2 188.)

The Administrative Remedy Program also provides a procedure for grievances that involve a "sensitive issue," defined as an issue where the inmate reasonably believes his health or well-being would be placed in jeopardy if the filing

7

became known at the institutional level. 28 C.F.R. § 542.14(d)(1). In that situation, the inmate may submit a request directly to the Regional Director. If the Regional Administrative Remedy Coordinator agrees the issue is sensitive, the request will be accepted. If not, the request is rejected in writing. The original request is not returned and the inmate may pursue the matter at the institution. *Id*. "The Warden shall allow a reasonable extension of time for such a resubmission." *Id*.

b.    The Plaintiff Did Not Exhaust His Administrative Remedies

The Bureau of Prisons maintains a computerized database of inmate grievances. (CR 110-1, Exh. 1, ¶¶ 2, 6; SER2 200-201). That database demonstrates that Diehl had submitted a total of 44 administrative remedy requests or appeals. Of those, Diehl only properly exhausted two requests for administrative remedies: No. 772332-A2 (claiming he was not receiving his mail at USP Atwater) and No. 779886-A1 (concerning a Discipline Hearing Officer decision involving a fight with another inmate). (CR110, ¶ 3; SER2 188.) Specifically, for the three requests pertinent here, Diehl did not exhaust the administrative process.

1)    No. 674440

Diehl submitted an administrative remedy request at the institution level on February 1, 2012, to have telephone access to his son unblocked (No. 674440-F1). (CR 110, ¶ 4; SER2 188.) Diehl's request was denied by the Warden. He appealed the decision to the Western Regional Office on April 10, 2012 (No. 674440-R1).

8

(*Id*.) The Regional Director denied this request on May 9, 2012. (CR 110-1, Exh. 1, Att. 3; SER2 214; CR 126, p. 44; SER1 46.) This denial instructed Diehl that any appeal to the General Counsel's Office must be received by that office within 30 days. (CR 126, p. 44; SER1 146.)

Diehl's appeal to the Central Office level was received there on December 10, 2012 (No. 674440-A1). (CR 110, ¶ 4; SER2 188.) Diehl dated his appeal May 13, 2012. (CR 126, p. 23; SER1 25.) The appeal was rejected because he did not provide a copy of the Warden's response and it was untimely. (CR 110; ¶ 4; SER2 188.) Diehl was advised that he could resubmit within fifteen days of the rejection notice and was instructed to provide a "staff memo on BOP letterhead, stating reason untimely filing was not your fault." (*Id*.)

Diehl resubmitted the request to Central Office on March 3, 2013. (No. 674440-A2). He did not provide the information requested. His appeal thus was denied as untimely. (CR 110; ¶ 4; SER2 188.)

### 2) No. 727948

Diehl submitted a request for administrative remedy concerning Defendant Hansen directly to the Regional Office on March 14, 2013 (No. 727948-R1). (CR 110, ¶ 5; CR 110-1, Exh. 1, Att. 3; SER2 189, 221.) This request was rejected because it was submitted to the wrong level of review and determined not to be a sensitive matter per policy. (CR 110, ¶ 5; SER2 189.) A copy of the administrative

9

remedy was not kept on file pursuant to BOP policy. (*Id*.) Diehl did not resubmit his request at the appropriate level. (*Id*.)

### 3)    No. 761940

Diehl similarly submitted a request for administrative remedy concerning SIA Mendez directly to the Regional Office on December 23, 2013 (No. 761940-R1). (CR 110, ¶ 5; CR 110-1, Exh. 1, Att. 3; SER2 189, 224.) This request was rejected because it was submitted to the wrong level of review and determined not to be a sensitive matter per policy. (CR 110, ¶ 5; SER2 189.) Diehl did not resubmit his request at the appropriate level. (*Id*.)

### 4)    Diehl's Other Submissions

Also in his response to the motion for summary judgment, Diehl submitted to the district court documents from other grievances. These documents related to allegations involving Lieutenant Cooper and telephone access to his son. (CR 126, pp. 25-28 35, 64, 88-89: SER1 27-30, 37, 66, 90-91.)[4] As the district court noted, these documents do not mention Diehl's retaliation claim against defendants Hansen and Mendez. (CR 138, p. 7; SER2 183.)

Diehl also submitted documents regarding an administrative remedy request regarding a disciplinary hearing for fighting (No. 763699). (CR 126, pp. 55-56, 68,

---

[4] These documents appear to refer to administrative remedy request Nos. 706307 and 698475. (*See* CR 110, Exh. 1, Att. 3; SER2 218-220.)

72; SER1 57-58, 70, 74.)    Diehl claimed that Hansen and Mendez had fabricated the fight story because Diehl had filed a habeas corpus petition in the Ninth Circuit. (CR 126, p. 56; SER1 58.)   The Regional Director returned the matter to the Discipline Hearing Officer to reconsider and augment the matter.  (CR 126, pp 62-63; SER1 64-65.)  Diehl did not appeal the Regional Director's decision in No. 763699 to the Central Office.  (*See* CR 110, ¶ 3; SER2 188.)  Moreover, this incident is not included as an allegation or even mentioned in Diehl's first amended complaint.  (*See* CR 28; SER1 138.)

After the Discipline Hearing Officer reconsidered the matter, Diehl submitted another administrative remedy request (No. 779886).[5]  (CR 126, pp. 68-72; SER1 70-74.)  This request does not mention defendants Hansen and Mendez, but contains a conclusory claim of retaliation, alleging that "[t]his whole thing was nothing more than an opportunity to keep Diehl's phone illegally blocked and continued vindication and retaliation against Diehl."  (CR 126, p. 68; SER1 70.)  It appears that Diehl exhausted his administrative remedies regarding this request (No. 779886). (CR 110, Exh. 1, ¶ 6 and Att. 3 (p. 32); SER2 202, 229.)[6]  This incident, however, is

---

[5] The government's submission to the district court incorrectly refers to this claim as involving a fight at USP Atwater.  (*See* CR 110-1; Exh.1, ¶ 6.)  While this request was processed through the U.S. Penitentiary Atwater because Diehl was then at that facility, it related to the fighting incident in Tucson.  (*See* CR 126, pp. 68-72.)

[6] The district court's order, referring to Diehl's response to the motion for summary judgment (CR 126, pp. 68-72; SER1 70-74), incorrectly states that there was no

not included as an allegation or even mentioned in Diehl's first amended complaint. (*See* CR 28; SER1 138.)  Indeed, it appears that this remedy request was still pending when the Diehl's first amended complaint was filed on September 26, 2014. (*Compare* CR 110, Exh. 1, ¶ 6 and Att. 3; SER2 202, 229 *with* CR 28; SER1 138.)

> 5)  Diehl Admitted He Did Not Exhaust Administrative Remedies as to Defendants Hansen and Mendez.

In his response to the motion for summary judgment, Diehl stated:

> Defendants make issue of the fact plaintiff did not file administrative remedies against the two defendants in this case in particular.  Plaintiff chose not to take such action following threats from defendants after plaintiff filed a BP-8 against previous defendant Lt. Cooper.  See exhibit 6, 7, 8 where plaintiff filed a BP-8, 9, 10, and 11 against Lt Cooper.  See also the exhaustion section of plaintiff's accompanying legal brief.

(CR 126, p. 3; SER1 5.)

In his submissions to the district court, Diehl did not provide any information regarding these alleged threats.  (*See* CR 126, pp. 3, 34-39; SER1 5, 36-41.)

4.  The District Court's Order

The district court concluded that, as to his retaliation claims against defendants Hansen and Mendez, Diehl did not exhaust the available administrative remedies.  (CR 138, pp. 8-9; SER2 184-185.)  The district court noted that plaintiff

---

evidence that these allegations (*i.e.*, No. 779886) were brought before the Central Office.  (CR 138, p. 8; SER2 184.)

conceded that he chose not to file retaliation complaints directly to USP Tucson against defendants. (CR 138, p. 9; SER2 185.)

The district court also concluded that the failure to exhaust was not excusable. (CR 138, pp. 9-10; SER2 185-186.) The court found that Diehl's "vague argument" about threats was not sufficient. "Plaintiff does not state when or how Defendants allegedly threatened him, so it is impossible for the Court to determine whether a prisoner of ordinary firmness would not have pursued the grievance process." (CR 138, p. 9; SER2 185.)

## VI.  SUMMARY OF ARGUMENTS

A.     The district court did not err by granting summary judgment based on the plaintiff's failure to exhaust his administrative remedies.  Before an inmate can file a lawsuit challenging prison conditions, 42 U.S.C. § 1997e(a) requires that the inmate exhaust available administrative remedies.  There is no genuine dispute that the plaintiff did not exhaust through BOP's Administrative Remedy Program.  There is also no genuine dispute that the remedy program was available to him.  The plaintiff's vague and conclusory allegations do not demonstrate that (1) a threat actually deterred the plaintiff from pursuing the grievance process; and (2) the threat was one that would deter a reasonable inmate of ordinary firmness and fortitude from pursuing the grievance process.

B.     Alternatively, the district court's judgment should be affirmed because a *Bivens* remedy should not be extended to First Amendment retaliation claims made by prisoners.  As the Supreme Court recently held in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), before implying a cause of action, a court must first determine whether the case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court.  If it is, courts consider two questions before devising a new remedy: whether an alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new remedy; and whether other "special factors" counsel hesitation before authorizing a new kind

14

of *Bivens* litigation. Here, the plaintiff's First Amendment retaliation claims present a new context, bearing little resemblance to the three *Bivens* claims the Supreme Court has approved in the past. There are also alternative remedies available: the BOP's administrative remedy program, and, as the Court noted in *Abbasi*, other forms of equitable relief in federal court. Moreover, there are a multitude of special factors that counsel hesitation when federal prisoners seek to extend a *Bivens* remedy for First Amendment retaliation claims. These factors include (1) Congress's demonstrated intent to limit prisoner suits; (2) separation-of-powers principles counseling against judicial interference in federal prison operations; (3) the inappropriateness of a *Bivens* action against an individual when a plaintiff's claim, at its core, attacks BOP policy; and (4) practical considerations such as the harmful effects on the discharge of prison officials' day-to-day duties and system-wide costs to the government.

      C.    Alternatively, the district court order can be affirmed because there is no genuine dispute that the plaintiff cannot establish all the elements of his retaliation claim, particularly the involvement of the named defendants and the lack of a legitimate penological purpose. In addition, qualified immunity also requires dismissal of the complaint. Considering the specific facts which confronted the defendants, they are entitled to qualified immunity because it is not clearly established that their actions violated the plaintiff's rights.

# VII.  ARGUMENTS

**A.  THE DISTRICT COURT DID NOT ERR BY GRANTING SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE DISPUTE THAT THE PLAINTIFF DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES AS TO THE CLAIMS ALLEGED IN THE FIRST AMENDED COMPLAINT AGAINST DEFENDANTS HANSEN AND MENDEZ.**

### 1.  Standard of Review

This Court reviews de novo a district court's grant of summary judgment. *Soto v. Sweetman*, 882 F.3d 865, 869 (9th Cir. 2018).

### 2.  Argument

#### a.  Summary Judgment Standard

A party is entitled to summary judgment if the party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those facts that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" *Id.*

16

    b.  <u>Exhaustion Requirement – Legal Standard</u>

Section 1997e(a) of Title 42 provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Under this statute, "exhaustion is now required for all 'action [s] ... brought with respect to prison conditions,' whether under § 1983 or 'any other Federal law.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Thus federal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." *Id*.

In *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006), the Supreme Court concluded that under § 1997e(a), exhaustion encompasses any and all available remedies, and demands compliance with agency deadlines and other critical procedural rules. Specifically, exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. at 90 (internal quotation marks omitted) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91.

Proper exhaustion is a precondition to bringing suit in federal court. *Id*. at 88; *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).

Exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). The threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable. *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). For a threat of retaliation to excuse exhaustion, the inmate must show that (1) the threat actually did deter the plaintiff from pursuing the grievance process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from pursuing the grievance process that the inmate failed to exhaust. *Id*.

To satisfy this standard, an inmate must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance. *Id*. Then, the inmate must demonstrate that his belief was objectively reasonable. "That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id*.

18

The defendants bear the burden to show that there was an available administrative remedy and that the inmate did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014) (en banc). Once the defendants have carried that burden, the inmate has the burden of production. That is, the inmate must come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. The ultimate burden of proof, however, remains with the defendants. *Id*.

    c.    <u>The District Court Did Not Err By Concluding that the Diehl Did Not Exhaust the Administrative Process.</u>

As demonstrated above, Diehl did not exhaust his administrative remedies as to the retaliation claims against defendants Hansen and Mendez that are the subject of his first amended complaint. (*See* supra, pp. 8-10.) In his brief to this Court, Diehl appears to argue that he exhausted his administrative remedies because he submitted sensitive claims directly to the regional director. (Op. Br. at 24.)[7] The procedure for submitting sensitive claims is set forth in 28 C.F.R. § 542.14(d)(1), which provides:

> Sensitive issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall

---

[7] References to the page numbers in the opening brief are to the page as numbered by the Court's ECF system.

clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

28 C.F.R. § 542.14(d)(1).

Here, the regional office determined that Diehl's submissions were not sensitive and rejected them. (CR 110, ¶ 5; SER2 189.) Diehl did not pursue his requests at the institution. (*Id*.) He did not follow the required procedure. Thus, these claims were not exhausted. *See Woodford*, 548 U.S. at 90 (exhaustion "means using all steps that the agency holds out, and doing so *properly*" (emphasis in original)).

In his brief, Diehl does not directly attack the district court's finding that the vague arguments he provided about threats was not sufficient to excuse his failure to comply with the required procedures. He simply provides more conclusory allegations. (Op. Br. at 15.) Moreover, the fact that the defendant continued to file grievances after 2013 (the dates of the two submissions to the regional office), demonstrates that Diehl was not intimidated into abandoning the grievance process. That is, the records demonstrate that Diehl pursued at least six remedies during 2014. (CR 110-1, Exh. 1, Att. 3; SER2 225-233.)

20

As the Court explained in *McBride*, 807 F.3d at 988, "[t]here is no reason to allow inmates to avoid filing requirements on the basis of hostile interactions with guards when the interaction has no apparent relation to the use of the grievance system." Here, there is no such evidence. Deihl's failure to exhaust is not excused because there is no "basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system." *Id.*

With two exceptions, Diehl did not exhaust the administrative process on any of his other remedy requests. (CR 110, ¶ 2; SER2 188.) As Diehl notes (Op. Br. at 13), he did exhaust remedy request No. 779886. That request has nothing to do with this case. Indeed, it apparently was still pending in the Central Office at the time Diehl's amended complaint was filed. (*Compare* CR 110, Exh. 1, ¶ 6 and Att. 3; SER2 202, 229; *with* CR 28; SER1 138.)

The other claim that Diehl exhausted (No. 772332) also has nothing to do with this case. It involved a complaint that arose while Diehl was at USP Atwater. (CR 110-1, Exh. 1, ¶ 6 and Att. 3 (p. 30); SER2 201, 227.)

For these reasons, the district court did not err by concluding that Diehl had not exhausted available administrative remedies. The court's granting of the motion for summary judgment should be affirmed.

21

**B. THIS COURT SHOULD DECLINE TO EXTEND A *BIVENS* REMEDY TO PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS.**

1. Standard of Review

The existence of a cause of action is a question of law that the Court reviews de novo. *Bothke v. Fluor Engineers & Constructors, Inc.*, 834 F.2d 804, 814 (9th Cir. 1987).

2. Argument

Because the district court granted summary judgment for defendants due to plaintiff's failure to exhaust administrative remedies, it did not address Defendants' alternative argument that plaintiff's retaliation claims are not actionable under *Bivens*. (CR 138, p. 10 n.6; SER2 185.) Even if this Court is unconvinced that plaintiff failed to exhaust his administrative remedies, it "may affirm based on any ground supported by the record." *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018). For the reasons below, this Court should alternatively affirm the district court's judgment because a *Bivens* remedy is unavailable for plaintiff's retaliation claims.

In his amended complaint, plaintiff alleged that defendant Mendez transferred him from USP-Tucson to USP-Atwater in retaliation for plaintiff filing this lawsuit; and that defendant Hansen issued a 197 disciplinary charge (use of a phone for an illegal purpose or to further a prohibited act) against plaintiff in retaliation for plaintiff obtaining a court order that resulted in the unblocking of his phone calls to

22

his son.  Plaintiff argues that these First Amendment retaliation claims are actionable under *Bivens*.  (CR 28, p. 1: SER1 138.)  They are not.[8]

In *Bivens*, the Supreme Court took the unprecedented step of creating an implied cause of action directly under the Fourth Amendment for an unreasonable search and seizure when federal agents searched Webster Bivens' apartment without a warrant, handcuffed him, and arrested him for narcotics violations. 403 U.S. at 390, 397.  The Court implied a cause of action without statutory authorization only after finding "no special factors counsel[ed] hesitation" in creating such a remedy. *Id*. at 396.  In *Bivens*, the Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017).  In the more than forty years since *Bivens*, though, the Court has created an implied action in only two other cases:  under the Fifth Amendment's due process clause for gender

---

[8]In his opening brief, plaintiff also attempts to revive theories of "retaliation" against unrepresented individuals not properly before this Court, stating that the amended complaint "accused Sean Nink . . . of retaliation," (Op. Br. at  29), "showed [Lieutenant] Cooper[']s role in the retaliatory actions taken against [him]," (*id.* at 34), and "show[ed] Roy Qualliotine was involve[d] in the retaliation," (*id.* at 37). Department of Justice representation pursuant to 28 C.F.R. § 50.15 was never authorized for these individuals, who were never served in this action and were dismissed by the district court in its screening order.  (CR 32.)  They are not represented by the undersigned.  Although these three individuals are unrepresented (and not even proper parties) on this appeal, defendants' alternative arguments for affirmance equally apply to retaliation claims against them.

discrimination arising out of a Congressman's firing of his administrative assistant, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); and under the Eighth Amendment's cruel and unusual punishment clause arising out of prison officials' failure to provide medical treatment for a prisoner's asthma, resulting in death, *Carlson v. Green*, 446 U.S. 14, 19 (1980). "These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855.

In more recent decisions, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). For more than thirty years, the Court has repeatedly declined to create a *Bivens* remedy in *numerous* cases and contexts,[9] and "has urged 'caution' before 'extending Bivens remedies into any new context.'" *Abbasi*, 137 S. Ct. at 1857; *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009) ("The Court has focused increased scrutiny on whether

---

[9] *See Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (Eighth Amendment suit against private prison guards); *Wilkie v. Robbins*, 551 U.S. 537, 547-48 (2007) (due process suit against Bureau of Land Management); *Malesko*, 534 U.S. at 63 (Eighth Amendment suit against private prison operator); *FDIC v. Meyer*, 510 U.S. 471, 473-74 (1994) (due process suit against agency for wrongful termination); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (due process suit against Social Security officials); *United States v. Stanley*, 483 U.S. 669, 683-84 (1987) (due process suit against military officers); *Chappell v. Wallace*, 462 U.S. 296, 297, 304-05 (1983) (racial discrimination suit against military officers); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (First Amendment suit against a federal employer).

Congress intended the courts to devise a new *Bivens* remedy, and in every decision since *Carlson*, across a variety of factual and legal contexts, the answer has been 'no.'"). As is now evident from the Court's recent *Bivens* cases, an individual damages remedy against federal employees is "in most instances . . . unjustified." *Wilkie*, 551 U.S. at 550.

Last year, in *Ziglar v. Abbasi*, the Court "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity" because expanding the remedy is best left to Congress. 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). As the Court put it, "[w]hen a party seeks to assert an implied cause of action under the Constitution . . . separation-of-powers principles are . . . central to the analysis," and "[w]hen an issue 'involves a host of considerations that must be weighed and appraised,' it should be committed to 'those who write the laws' rather than 'those who interpret them.'" *Id*. (quoting *Bush*, 462 U.S.at 390). "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if 'the public interest would be served' by imposing a 'new substantive legal liability.'" *Id*. (quoting *Schweiker*, 487 U.S. at 426-27).

The "antecedent" issue in any *Bivens* case is whether to devise a new damages remedy against a federal employee. *Hernandez*, 137 S. Ct. at 2006. "[T]he first question a court must ask . . . is whether the claim arises in a new *Bivens* context, i.e., whether 'the case is different in a meaningful way from previous *Bivens* cases

25

decided by [the Supreme] Court.'" *Abbasi*, 137 S. Ct. at 1864. If the case presents a new context, courts consider two questions before devising a new remedy: whether an "alternative, existing process for protecting the [plaintiff's] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages[;]" and whether other "special factors" counsel hesitation before authorizing a new kind of *Bivens* litigation. *Wilkie*, 551 U.S. at 550.

### a. Plaintiff's Retaliation Claims Present a New *Bivens* Context.

"The proper test for determining whether a case presents a new *Bivens* context" is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court[.]" *Abbasi*, 137 S. Ct. at 1859. A "context is new" if there is a "modest" extension of the claims approved in *Bivens*, *Davis*, or *Carlson*. *Id*. at 1859, 1864. "[D]ifferences that are meaningful enough to make a given context a new one" include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1859-60.

Notably for this action, "a case can present a new context for *Bivens* purposes if it implicates a different constitutional right[.]" *Id*. at 1864. After *Abbasi*, plaintiff's First Amendment retaliation claims plainly present a new *Bivens* context because the constitutional right at issue — the First Amendment — differs from any case in which the Supreme Court has affirmatively recognized a *Bivens* remedy (*Bivens*, *Davis*, and *Carlson*). As this Court has observed, "[t]he Supreme Court has never explicitly recognized a *Bivens* remedy for [any] First Amendment claim." *Vega*, 881 F.3d at 1153. The Supreme Court has repeatedly noted this fact. *See Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *Iqbal*, 556 U.S. at 675; *Bush*, 462 U.S. at 368.

Moreover, post-*Abbasi*, prior circuit and district court precedents that allowed for a *Bivens* remedy where the Supreme Court had not must be reevaluated. *See Vanderklok v. United States*, 868 F.3d 189, 199-200 (3d Cir. 2017) (explaining Third Circuit's "past pronouncements" on First Amendment retaliation *Bivens* claim were "not controlling" post-*Abbasi*); *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017) (noting, although "this Circuit has largely permitted *Bivens* claims against prison officials alleging retaliation for exercising a constitutional right," post-*Abbasi*, it "remains inconclusive"); *Free v. Peikar*, No. 1:17-CV-00159-MJS-PC, 2018 WL 905388, at *5 (E.D. Cal. Feb. 15, 2018) ("While the Ninth Circuit has previously held that Bivens may be extended to First Amendment claims . . . it has recently

27

revisited this question in light of *Abbasi*[.]"), *report and recommendation adopted*, 1:17-CV-00159-AWI-MJS-PC, 2018 WL 1569030, *1-2 (E.D. Cal. Mar. 30, 2018).

Accordingly, although the Ninth Circuit previously "recognized that . . . a [*Bivens*] remedy is available to redress allegations of retaliation against protected speech by federal law enforcement officers," *Martin v. Naval Criminal Investigative Serv.*, 539 Fed. Appx. 830, 832 (9th Cir. 2013) (unpublished) (citing *Gibson v. United States*, 781 F.2d 1334, 1341 (9th Cir.1986)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 967 n.4 (9th Cir. 2009), this Court should revisit this question anew in light of *Abbasi*.[10] But, even if this Court were reluctant to reevaluate its decisions in *Gibson* or *Moss*, it could readily distinguish those cases and find that a federal inmate's retaliation claims present a new context. *Gibson* and *Moss* did not address the appropriateness of a *Bivens* remedy in all retaliation contexts, let alone the unique context of federal prisons. And, after *Abbasi*, this Court has suggested that those decisions are cabined to their specific contexts involving retaliation by federal law enforcement. *Vega*, 881 F.3d at 1153 (discussing *Gibson*, citing *Moss*, but concluding that "because neither the Supreme Court nor we have expanded *Bivens* in the context of a *prisoner's First Amendment access* to court or Fifth

---

[10] A subsequent panel may revisit prior opinions if a decision of "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Amendment procedural due process claims arising out of a prison disciplinary process, the circumstances of Vega's case against private [employees of a residential reentry center] *plainly present a 'new context' under Abbasi*." (emphasis added)).[11]

Although the Ninth Circuit has not addressed whether, post-*Abbasi*, a *Bivens* remedy is available for retaliation claims by a federal inmate, see *Vega*, 2018 WL 747823, at *1,[12] at least one court in this circuit has confirmed that "earlier Ninth Circuit cases are . . . not controlling" on the issue. *Reid v. United States*, No. 1:14-CV-01163-LJO-MJS (PC), 2018 WL 1588264, at *2 (E.D. Cal. Apr. 2, 2018). And, other courts in this circuit have held that First Amendment retaliation claims by inmates present a "new context" after *Abbasi* because "the constitutional right at

---

[11] In a concurrently filed, non-precedential opinion in *Vega*, this Court passed on the question of whether a *Bivens* remedy should extend to an inmate's First Amendment retaliation claims following *Abbasi*. *Vega v. United States*, No. 13-35311, 2018 WL 747823, *1 (9th Cir. Feb. 7, 2018). In that decision, this Court affirmed the dismissal of the former-inmate's retaliation claims on qualified immunity grounds, holding that "Vega has not pled that the alleged adverse action was taken 'because of' any protected First Amendment activity." *Id.*

[12] In fact, even before *Abbasi*, this Court, similar to its approach in *Vega*, *supra* note 11, appears to have skirted, without squarely deciding, whether First Amendment inmate retaliation claims are cognizable under *Bivens*. *E.g.*, *Parks v. Wren*, 651 Fed. Appx. 597, 598 (9th Cir. 2016) (remanding for further proceedings without addressing whether claims were cognizable under *Bivens*); *Frank v. Schultz*, 624 Fed. Appx. 565, 566 (9th Cir. 2015) (affirming district court's grant of summary judgment on qualified immunity grounds); *Nunez v. Duncan*, 591 F.3d 1217, 1228 (9th Cir. 2010) ("assum[ing] without deciding" that federal inmate properly asserted a First Amendment retaliation claim under *Bivens*).

29

issue differ[ed] from th[ose] recognized in prior Supreme Court cases." *Peikar*, 2018 WL 905388, at *5; *Jerra v. United States*, No. 2:12-CV-01907-ODW-(AGRx), 2018 WL 1605563, at *4 (C.D. Cal. Mar. 29, 2018) (expressing confusion whether "[t]he Ninth Circuit's reference to 'we' [in *Vega*] . . . impl[ied] that *Bivens* avenues previously accepted by the Ninth Circuit . . . may still be accessible after [*Abbasi*]," but concluding inmate retaliation claims "aris[e] in a new context, requiring a special factors analysis").

Plaintiff's First Amendment retaliation claims plainly present a new context, bearing "little resemblance to the three *Bivens* claims the [Supreme] Court has approved in the past." *See Abbasi*, 137 S. Ct. at 1860. This Court must therefore evaluate "whether any alternative, existing process for protecting [Plaintiff's] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages," *Wilkie*, 551 U.S. at 550; and whether "special factors counsel[] hesitation in the absence of affirmative action by Congress," *Abbasi*, 137 S. Ct. at 1857.

     b.    Alternative Existing Processes Preclude a Bivens Remedy for Diehl's Retaliation Claims.

"[I]f there is an alternative remedial structure present in a certain case, that *alone* may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858 (emphasis added). "For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a

convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id*. (quoting *Wilkie*, 551 U.S. at 550). "So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69. Thus, if alternative processes provide "adequate remedial mechanisms for constitutional violations," they need not provide a plaintiff with "complete relief." *Schweiker*, 487 U.S. at 423, 425.

As this Court has observed, "'[a]lternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega*, 881 F.3d at 1154. In *Vega*, this Court declined to extend *Bivens* to a former prisoner's access-to-the-courts and procedural due process claims against a private reentry center's employees because "Vega had alternative means for relief against the alleged violations of his First and Fifth Amendment rights." 881 F.3d at 1154. Expanding on these alternative processes, this Court explained that Vega could have sought review of issues relating to his confinement through the center's administrative remedy program, which would have "provide[d] an adequate, and more appropriate, remedy to vindicate Vega's rights." *Id*. at 1154 & n.4.

Here, as in *Vega*, Plaintiff had several alternative processes through which he could have sought redress for his retaliation claims, including BOP's administrative remedy program and official-capacity claims for injunctive relief.

31

First, federal prisoners like Diehl have available to them BOP's above-mentioned four-step administrative grievance process. This administrative remedy program is provided through regulations that "allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. Relief through the program is not just theoretical. As the discussion of Diehl's administrative remedies make clear, he sought review of his claims through this process and received notices from BOP at various levels explaining why actions were taken and what policy or program governed the relevant decisions. 28 C.F.R. § 542.11. It is also of no consequence that Diehl did not prevail through this process. As this Court explained in *Vega*, just because a plaintiff fails to obtain relief through alternative processes "does not mean that he did not have access to alternative or meaningful remedies." 881 F.3d at 1155. "It simply means that [he] did not . . . have[] a meritorious claim." *Id.* ("[N]o court has held that the plaintiff's lack of success . . . while pursuing alternative remedies provides a basis for *Bivens* relief" because doing so "would require the court to necessarily prove the plaintiff's alternative remedies for him[.]").

This Court would not be alone in refusing to extend a *Bivens* remedy to Diehl's First Amendment retaliation claims by relying on BOP's administrative remedy program as an alternative process. Since *Abbasi*, courts in this circuit — like the Court in *Vega* — have consistently found BOP's administrative remedy

32

program, whether by itself or in conjunction with other processes or special factors, precludes a *Bivens* remedy for inmates' First Amendment claims. *Reid*, 2018 WL 1588264, at \*2 (finding inmate who raised retaliation claim "had alternative remedies available to him through [BOP's] administrative grievance process, federal tort claims under the FTCA [Federal Tort Claims Act], habeas corpus claims under [28 U.S.C.] § 2241 . . . and *Bivens* claims to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under *Bivens*"); *Buenrostro v. Fajardo*, No. 1:14-CV-00075-DAD-BAM, 2017 WL 6033469, at \*3 (E.D. Cal. Dec. 5, 2017) ("Plaintiff has alternative remedies available to him, including [BOP's] administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief"); *Ashford v. Travesio*, No. 17-CV-00164-PHX-JJT, 2018 U.S. Dist. LEXIS 18500, \*11 (D. Ariz. Feb. 2, 2018) ("Plaintiff has alternative remedies available to him because, at a minimum, [BOP] has established an administrative remedy process permitting an inmate to seek review of an issue relating to 'any aspect of his/her own confinement.'" (citation omitted)).

In addition to BOP's administrative remedy program, federal inmates may avail themselves to equitable remedies in federal court for ongoing claims of retaliation. As the Court noted in *Abbasi*, "alternative remedies available" could include "a writ of habeas corpus," an "injunction requiring the warden to bring his

prison into compliance," or "some other form of equitable relief." 137 S. Ct. at 1865. Here, this sort of equitable relief might be sought through the Administrative Procedures Act (APA), which allows inmates to obtain court review of certain actions by federal officials to determine if they are "contrary to [a] constitutional right," or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A)-(B); *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) (noting waiver of sovereign immunity under APA for injunctive relief). This Court has even recognized, albeit in a different context, that because "alternative remedies under the APA . . . are adequate," it "need not determine whether a *Bivens* right of action is applicable to a claim alleging a violation of the First Amendment." *W. Radio Serv*., 578 F.3d at 1123, 1125 (holding APA was a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages"). [13] And, for retaliatory "prison

---

[13] Plaintiff's ability to bring a challenge to his transfer under the APA may be limited because inmate transfers are typically governed by 18 U.S.C. § 3621(b), which is exempt from APA challenge. *See Reeb v. Thomas*, 636 F.3d 1224, 1225 (9th Cir. 2011) (holding "18 U.S.C. § 3625 precludes judicial review under [APA] of [BOP's] . . . determinations made pursuant to 18 U.S.C. § 3621). Even if his retaliatory transfer claim cannot be brought specifically under the APA, though, an inmate can still bring standalone official-capacity claims for equitable relief for alleged ongoing constitutional violations. *See Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016) (noting district courts "have jurisdiction to decide whether [BOP] acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority when it acted pursuant to 18 U.S.C. § 3621").

conditions," Congress has explicitly allowed such injunctive relief as an "appropriate remed[y]." 18 U.S.C. § 3626(a)(2); *Reid*, 2018 WL 1588264, at *2 ("[W]here a prisoner faces ongoing retaliation, he may seek injunctive relief.").

Defendants cannot and need not divine of all conceivable avenues that a plaintiff may have available to him. *See Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 921 (D.C. Cir. 2018) (declining to imply disfavored *Bivens* remedy and noting courts need "not parse the specific applicability of th[e] web of . . . remedies" to a plaintiff's circumstances). But it is worth adding that inmates like Plaintiff can also sue the United States under the FTCA (where prison officials' retaliatory acts fall within the scope of federal employment), or sue the officer personally under state tort law if their conduct is outside the scope of employment. *See Vanderklok*, 868 F.3d at 204 ("[T]here can be a remedy against the United States in cases where the employee had the responsibility of an officer, and there can be a state law remedy against the individual when the . . . employee acted outside the scope of employment."); *Andrews v. Miner*, __ F. Supp. 3d __, 2017 WL 7688266, *5 (N.D. Ala. Aug. 25, 2017) (inmate claiming retaliation could have submitted claim for damages pursuant to FTCA). Regardless, it is enough here that Plaintiff "ha[s] an avenue for some redress[.]" *Malesko*, 534 U.S. at 69 (emphasis added).

35

In *Bivens*, the Supreme Court created an implied remedy, in part, because the plaintiff had no other avenue for relief; for Webster Bivens, it was "damages or nothing." *Bivens*, 403 U.S. at 410 (Harlan, J. concurring). That is not the case for plaintiff, who can seek redress through BOP's administrative remedy program or through an equitable or monetary claim against the United States. It is inconsequential that Diehl cannot receive damages through some of these processes. *Abbasi*, 137 S. Ct. at 1865 ("[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."); *Liff*, 881 F.3d at 923 ("[I]t makes no difference in our *Bivens* inquiry whether the remedy that Congress has provided is complete in the sense that it makes a party whole . . . ."). Diehl has "the means to be heard" and "the Judiciary [should] stay its *Bivens* hand." *See Wilkie*, 551 U.S. at 552, 554.

### c. Special Factors Counsel Against Extending *Bivens* to Diehl's Claims.

In addition to these alternative processes, "other special factors" counsel hesitation before authorizing the new kind of federal *Bivens* litigation sought here. *Abbasi*, 137 S. Ct. at 1861. As the Court in *Abbasi* explained, the "inquiry [into special factors] must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. "[T]o be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that

36

question in the affirmative." *Id*. "Hesitation is a pause, not a full stop." *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (en banc).

"[I]t is a significant step under separation-of-powers principles for a court to" accept a plaintiff's invitation to "create and enforce a cause of action for damages against federal officials." *Abbasi*, 137 S. Ct. at 1856. "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id*. at 1857 (quoting *Bush*, 462 U.S. at 380). "The answer most often will be Congress." Id. Thus, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Id*. at 1858.

Since *Abbasi*, courts in this circuit have declined to imply the disfavored *Bivens* remedy for federal prisoners' First Amendment retaliation claims not only because they have "alternative remedies available to [them] through [BOP's] administrative grievance process," but also in light "special factors . . . [that] dictate[] hesitation in applying *Bivens* in this context[.]" *Reid*, 2018 WL 1588264, at *2-3. As a court in this circuit recently observed, "[n]ationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *Peikar*, 2018 WL 1569030, at *2 (citing cases).

37

Consistent with these decisions, this Court should consider the multitude of special factors that counsel hesitation when federal prisoners like Diehl seek to extend a *Bivens* remedy for First Amendment retaliation claims. First, through frequent and intense action in regulating federal prisons and prisoner litigation, Congress has demonstrated an intent to limit prisoner suits, and has never allowed a damages remedy for inmate retaliation claims. Second, separation-of-powers principles counsel against judicial interference in federal prison operations when Congress delegated to the Executive the authority to ensure order in those prisons. Third, a *Bivens* action is an inappropriate avenue to vindicate plaintiff's claims, which, at their core, attack BOP policy, not the rogue actions of an individual. Finally, practical considerations — such as the harmful effects on the discharge of prison officials' day-to-day duties and system-wide costs to the government — weigh against courts creating the unworkable cause of action that Diehl seeks.

        1)    <u>Despite frequent and intense regulation of prisons, Congress never provided an individual damages remedy to federal prisoners.</u>

"[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Abassi*, 137 S. Ct. at 1865. When it comes to management of federal prisons, there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." *Id*. That is because, in the prison setting, "Congressional interest has been 'frequent and intense.'" *Id*. at

38

1862 (quoting *Schweiker*, 487 U.S. at 425). Despite decades of Congressional action involving prison operations and the rights of prisoners, Congress has never enacted a statute entitling federal prisoners to a civil damages action, and "when Congress fails to provide a damages remedy in circumstances like these, it is much more difficult to believe that 'congressional inaction' was 'inadvertent.'" *Id*.

"In 1871, Congress passed [The Civil Rights Act, which] was later codified at . . . 42 U.S.C. § 1983," and "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Id*. at 1854. "Congress did not create an analogous statute for federal officials." *Id*. "[I]n the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Id*. Not until 1971, in *Bivens*, did the judiciary, not the legislature, provide a private action for damages against federal officials arising under certain constitutional provisions, and not until 1980, in *Carlson*, did the Supreme Court, for the first and only time, extend such a damages remedy to the extreme circumstances of an inmate who lost his life due to a failure to receive medical care, contravening the Eighth Amendment.

Five months before *Carlson,* Congress enacted the 1980 Civil Rights of Institutionalized Persons Act (CRIPA), its "first major piece of prisoners' rights

39

legislation."[14]  CRIPA's "passage was the culmination of efforts by Congress to bestow express statutory authority on the [U.S.] Attorney General to participate in civil rights litigation seeking redress for the perceived widespread violations of the constitutional and federal statutory rights of persons residing in *state* institutions."[15] CRIPA was enacted to provide the U.S. Attorney General with the "authority to initiate and to intervene in" suits challenging *state* prison conditions.[16]  As part of CRIPA, Congress enacted a provision prohibiting retaliation for reporting violations in state prisons to the U.S. Attorney General. 42 U.S.C. § 1997d.

With that said, Congress was explicit that CRIPA did not create any new individually enforceable rights for prisoners. See 42 U.S.C. § 1997j; *O'Haire v. Napa State Hosp.*, No. C 07-0002 RMW (PR), 2009 WL 2447752, at *5 (N.D. Cal. Aug. 7, 2009) ("CRIPA creates no private right of action." (citing *McRorie v. Shimoda*, 795 F.2d 780, 782 n.3 (9th Cir. 1986)).  Congress instead entrusted the U.S. Attorney General to "redress serious and pervasive patterns of institutional abuses" in state facilities, and while acknowledging "shortcomings" in "the federal

---

[14] Allen W. Burton, *Prisoners' Suits for Money Damages: An Exception to the Administrative Exhaustion Requirement of the Prison Litigation Reform Act*, 69 Fordham L. Rev. 1359, 1369 (2001).

[15] John F. Wagner Jr., Annotation, *Validity, construction, application, and effect of Civil Rights of Institutionalized Persons Act, 42 U.S.C.. §§ 1997-1997j*, 93 A.L.R. Fed. 706, Part I, § 2(a) (Originally published in 1989) (emphasis added).

[16] *Id.*

prison system," Congress stopped short of curtailing the Attorney General's codified discretion in managing federal prisons. S. Rep. 96-416, pgs. 1-3, 26-27, 40 (1979), reprinted in 1980 U.S.C.C.A.N. 787-90, 802, 808-09, 822. As to relief, Congress only expressed that the Attorney General "should consider . . . bringing the federal prison system into compliance with the Constitution," and that "[w]here conditions exist which violate the Constitution, an injunctive order must be entered" to bring the prisons "within constitutional limits." *Id.* (emphasis added).

Fifteen years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act (PLRA) of 1995, "which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Abbasi*, 137 S. Ct. at 1865 (citing 42 U.S.C. § 1997e). The PLRA addressed the "sharp rise in prisoner litigation in the federal courts," *Woodford*, 548 U.S. at 84 (2006), containing "a variety of provisions designed to bring this litigation under control." *Id.* These provisions include stringent exhaustion requirements, 42 U.S.C. § 1997e(a), and limitations on inmate suits unrelated to physical harm, *id.* § 1997e(e). The PLRA also created the "three strikes" rule, designed to prevent prisoners with a history of "frivolous" or "malicious" lawsuits from bringing any "civil action" at the public's expense, unless "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Importantly, the PLRA "does not provide for a standalone damages remedy against federal jailers." *Abbasi*, 137 S. Ct. at 1865.

Since passing CRIPA and the PLRA, Congress took numerous other actions involving federal prisons without ever expressing an intent to codify a *Bivens* remedy for inmates. By way of example, in 2003, Congress enacted The Prison Rape Elimination Act (PREA), 34 U.S.C. §§ 30301-09, which sought to "increase the accountability of prison officials" and "protect the Eighth Amendment rights of" prisoners. *Id*. at § 30302. But even in PREA, Congress did not create a private right of action against prison officials for failing to prevent sexual abuse; instead, Congress instructed the U.S. Attorney General to promulgate national standards for preventing, investigating, and punishing prison rape. 34 U.S.C. § 30307. Finally, when faced with international efforts to reform the PLRA and repeal its physical-injury requirement,[17] Congress responded only by amending the PLRA in 2013 to confirm the availability of suits for criminal sexual assault. *See* Violence Against Women Reauthorization Act of 2013, PL 113-4, March 7, 2013, 127 Stat 54.

Congress' "interest has been 'frequent and intense'" in regulating federal prisons, and it has never provided a damages remedy for federal prisoners. *Abbasi*, 137 S. Ct. at 1862. Instead, Congress placed most matters relating to federal prisons in the Attorney General's discretion. In fact, for suits like this involving an inmate's

---

[17] *See* 2006 UN Report, https://www.state.gov/documents/organization/133838.pdf (expressing "concern" that PLRA limited recovery to physical injuries and arguing that it "should" be amended).

"place of imprisonment or . . . transfers," 18 U.S.C. § 3621, Congress explicitly precluded judicial review. *Reeb*, 636 F.3d at 1227 ("The plain language of [18 U.S.C. § 3625] specifies that the judicial review provisions of the APA . . . do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621-24." (citation omitted)). Thus, implying a *Bivens* remedy related to Plaintiff's transfer would be especially inappropriate because it would circumvent Congress' explicit intent.

In *Abbasi*, the Supreme Court emphasized that "in any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant; and here that silence is telling." 137 S. Ct. at 1862 & 1865 (noting "Congress had specific occasion to consider the matter of prisoner abuse" and did "not provide for a standalone damages remedy against federal jailers" in the PLRA, therefore "this suggests Congress chose not to extend [a] . . . damages remedy to cases involving other types of prisoner mistreatment"). Heeding these pronouncements, courts have hesitated before taking the extraordinary step of extending an additional, non-statutory damages remedy to federal prisoners claiming retaliation. *Andrews*, 2017 WL 7688266 at *5 ("Because this Court finds reason to hesitate . . ., it will not allow [inmate's] *Bivens* First Amendment retaliation claim to proceed . . . ."); *Peikar*, 2018 WL 905388, at *6 ("Congress has been active in the area of prisoners' rights, and its

actions do not support the creation of a new *Bivens* claim."). This Court should do the same.

> 2) Separation-of-powers principles counsel against judicial intervention in federal prison administration because Congress delegated the safe and orderly operation of prisons to the Executive.

"When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis." *Abbasi*, 137 S. Ct. at 1857. In the federal prison context, separation-of-powers is an additional special factor that should cause this Court to hesitate before expanding a *Bivens* remedy because Congress has delegated the management of federal prisons to the Executive (through BOP).

The federal prison system was created in 1891. Three Prisons Act, ch. 529, 26 Stat. 839 (1891). In 1930, Congress established BOP as a subdivision of the Department of Justice. Federal Bureau of Prisons Act, ch. 274, Pub. L. No. 71-218, 46 Stat. 325 (1930). Since then, Congress explicitly and repeatedly delegated federal prison management to BOP, including the classification, housing, transfer, protection, and discipline of federal inmates. 18 U.S.C. § 3621 (noting BOP, in designating place of prisoner's confinement, may choose "any available penal . . . facility that meets minimum standards . . . established by [BOP] . . . that [BOP] determines to be appropriate and suitable" in light of five enumerated factors); 18 U.S.C. § 4001(b) (delegating "control and management" of federal prisons to U.S.

Attorney General, who may classify inmates and promulgate rules that "provide for their proper . . . discipline"); 18 U.S.C. § 4042(a) (stating BOP shall "have charge of the management and regulation of all Federal penal and correctional institutions" and directing BOP to provide for the "discipline of all persons charged with or convicted of offenses against the United States"). As these statutes make clear, Congress has delegated much of its authority over federal prisons to BOP through the Attorney General.

As is underscored by the breadth and depth of legislative action and Congress's decision to delegate day-to-day operations to those with appropriate expertise in the Executive Branch, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches[.]" *Turner v. Safley*, 482 U.S. 78, 84-86 (1987). "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" because "[p]rison administration . . . is a task that has been committed to the responsibility of [the Legislative and Executive] branches, and separation of powers concerns counsel a policy of judicial restraint." *Id*. at 84-85 (emphasis added).

Here, separation-of-powers principles inherent in Congress' delegation of running federal prisons to the Attorney General and BOP should cause this Court hesitation before establishing a new *Bivens* remedy in the retaliation contexts sought

45

by Diehl. This is particularly true when Diehl's retaliation claims seek to challenge his transfer to a different institution and a disciplinary charge imposed on him. For these decisions, Congress specifically vested in BOP and the Attorney General the discretion to transfer and discipline inmates. 18 U.S.C. § 3621(b) ("[BOP] may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another."); 18 U.S.C. § 4001(b)(2) (providing Attorney General with authority over the "proper . . . discipline" of inmates).

Recognizing these separation-of-powers concerns, this Court should hesitate to intervene in everyday matters involving prison management by imposing against prison officials an individual damages remedy for retaliation. This Court should refrain from extending *Bivens* in this case, especially when the record reflects that the decision to transfer Plaintiff to USP Atwater in December 2013 was because of Diehl's involvement in an August 2013 inmate altercation and an October 2013 complaint that plaintiff was sexually harassing another inmate; and that the disciplinary charge against plaintiff in July, 2012 stemmed not from the acts of some rogue officer, but from the decision of a "multidisciplinary team" in BOP due to a complaint of harassment by his ex-wife. (CR 110, ¶¶ 9-16, 32-37; SER2 190, 192, 195.) Routine decisions regarding inmate transfers and discipline inherently implicate prison safety, and are best suited to BOP's expertise. Accepting Plaintiff's invitation to transform such ordinary tasks of prison management into constitutional

tort claims for retaliation is wholly unwarranted. Providing a "general Bivens cure" for such claims "would be worse than the disease." *See Wilkie*, 551 U.S. at 561.

### 3) A *Bivens* action is an improper avenue for attacking BOP policy.

"[A] *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting *Malesko*, 534 U.S. at 74). "*Bivens* . . . is concerned solely with deterring the unconstitutional acts of individual officers," and is not meant to "deter[] . . . the conduct of a policymaking entity." *Malesko*, 534 U.S. at 71. Rather, a suit for injunctive relief against the agency "has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Id*. at 74.

Plaintiff's retaliation claims, challenging his transfer to a different institution and a disciplinary charge levied against him, are, at their core, attacks on BOP policy and the decision-making chain of BOP as a whole. Using statutory guidance from Congress, BOP employed its delegated authority to promulgate regulations and program statements that govern such claims. 28 C.F.R. §§ 522-27 (Inmate Admission, Classification, and Transfer); 28 C.F.R. § 541 (Inmate Discipline and Special Housing Units); Program Statement 5270.09, Inmate Discipline Program, p. 45 (eff. Aug. 1, 2011), publicly available at www.bop.gov/policy/progstat/5270_009.pdf. Simply because lower-level federal employees implement and execute these policies does not make a *Bivens* suit the

47

proper vehicle for plaintiff's retaliation claims. *Cf. Meyer*, 510 U.S. at 485 ("If we were to imply a damages action directly against federal agencies, there would be no reason for aggrieved parties to bring damages actions against individual officers."). In this regard, the record notably reflects Plaintiff's admission that the USP Tucson Warden, not defendant Mendez, "ultimately made the call as to his transfer." (CR 110, ¶ 40; SER2 196.) Also, the record establishes that the disciplinary charge against Diehl was referred by a "Unit Disciplinary Committee" to a "Disciplinary Hearing Officer," and was reduced a lower-level charge for unauthorized contacts with the public. (CR 110, ¶ 16; SER2 192.) These facts elucidate that Diehl's retaliation claims are an improper attack under *Bivens* on BOP policies and the actions of the agency with respect to his transfer and discipline. This Court should therefore decline to extend a *Bivens* remedy.

> 4) <u>Practical considerations weigh against courts implying a *Bivens* remedy here because of the absence of clear standards to create a workable cause of action.</u>

"When determining whether traditional equitable powers suffice to give necessary constitutional protection — or whether, in addition, a damages remedy is necessary — there are a number of economic and governmental concerns to consider." *Abbasi*, 137 S. Ct. at 1856. "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in

the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation," because "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations system wide." *Abbasi*, 137 S. Ct. at 1858. "Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon . . . employees of the Federal Government." *Id*. at 1856. Congress "can tailor any remedy to the problem perceived," and is "in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." *Wilkie*, 551 U.S. at 562.

Here, practical concerns of extending a *Bivens* remedy for Diehl's retaliation claims present "a serious difficulty of devising a workable cause of action" that would be "endlessly knotty to work out[.]" *Id*. Retaliation claims that are "less amenable to summary disposition than other types of claims against government officials" because they often "turn on improper intent," which is "easy to allege and hard to disprove[.]" *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998) ("[Retaliation] claims therefore implicate[] obvious concerns with the social costs of subjecting public officials to discovery and trial, as well as liability for damages."). In this vein, courts have recognized, "[r]etaliation claims by *prisoners*

49

are '*prone to abuse*' since prisoners can claim retaliation for *every decision they dislike*." *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1154 (E.D. Wash. 2014) (emphasis added) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *Davis v. Powell*, 901 F. Supp. 2d 1196, 1213 (S.D. Cal. 2012) (same). Thus, too easily can one of the 183, 830 federal prisoners devise a retaliation claim against one of the more than 37,120 BOP employees by connecting the employees' benign discretionary decisions to the prisoner's claims of protected speech. *See* https://www.bop.gov/about/agency/ (last visited Apr. 25, 2018). The sheer volume of the sorts of complaints that could be brought under these types of *Bivens* claims create an unusual "burden and demand" that "might well prevent" prison officials "from devoting the time and effort required for the proper discharge of their duties." *Abbasi*, 137 S. Ct. at 1860. The "costs and consequences to the Government itself" that arise from suits like these, *id.* at 1858, has led at least one court, post-*Abbasi*, to decline to imply a *Bivens* remedy for inmate retaliation claims. *See Gonzalez v. Bendt*, No. 4:16-CV-04038-KES, 2018 WL 1524752, at *4 (D.S.D. Mar. 28, 2018) (declining to extend *Bivens* because "the cost, time, and energy associated with defending a *Bivens* action [under such circumstances] . . . are significant").

Prison officials are charged with a variety of tasks that involve substantial discretion. The actions of which plaintiff complains — involving his transfer and discipline — are the kinds of tasks that should give this Court pause before

permitting a personal capacity suit for damages against prison officials. Courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To permit a damages remedy where these prison officials have been afforded such latitude would not serve *Bivens*' "core purpose": "deterring individual officers from engaging in unconstitutional wrongdoing." *Malesko*, 534 U.S. at 74.

Here, the alleged actions of defendants were decisions that occurred against the backdrop of an extended decision-making web of individuals, and pursuant to BOP policies that afforded discretion in transferring and disciplining inmates to preserve the safety and security of federal prisons. Prison officials like defendants should not have to worry about personal liability and whether their personal assets are at stake when executing such routine decisions that are part and parcel of the ordinary workings of federal prisons. As the Supreme Court has recognized, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions," and "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and *execution* of policies and

51

practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. (emphasis added).

The present case does not present circumstances that warrant this Court's intervention at all, let alone for it to take the extraordinary step of creating a new *Bivens* damages remedy for plaintiff's retaliation claims. Before extending *Bivens*, this Court must consider "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself[.]" *Abbasi*, 137 S. Ct. at 1858. These practical considerations are best weighed by Congress, not this Court.

\* \* \* \*

Special factors are "[t]aken together" and considered in the aggregate. *See Chappell*, 462 U.S. at 304. Here, the alternative processes to which Diehl can avail himself, along with the multitude of other special factors presented in the context of federal prisons, counsel against implying the non-statutory, personal damages remedy that plaintiff seeks.

**C.** **ALTERNATIVELY, THE JUDGMENT SHOULD BE AFFIRMED BECAUSE THE DIEHL CANNOT ESTABLISH THE ELEMENTS OF HIS CLAIM AND BECAUSE DEFENDANTS HANSEN AND MENDEZ ARE ENTITLED TO QUALIFIED IMMUNITY.**

1.    Standard of Review

This Court reviews de novo a district court's grant of summary judgment. *Soto*, 882 F.3d at 869. The Court may affirm based on any ground supported by the record. *Vega*, 881 F.3d at 1152.

2.    Argument

In his first amended complaint, Diehl alleged that defendant Mendez retaliated against him for filing this *Bivens* action by having him transferred to another facility. (CR 28, p. 17; SER1 154.) He alleged that defendant Hansen wrote an untimely disciplinary charge against him in retaliation after the plaintiff succeeded in the Texas state court case regarding contact with his son. (CR 28, p. 18, SER1 155.)

a.    Plaintiff Cannot Establish Retaliation

To establish a claim for First Amendment retaliation, an inmate must demonstrate: (1) that a state actor took some adverse action against the prisoner (2) because of (3) the prisoner's protected conduct and that such action (4) chilled the prisoner's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-58 (9th Cir. 2005).

53

This Court has "made clear that the prisoner plaintiff 'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.'" *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)). Retaliation claims must be evaluated in light of the concerns of excessive judicial involvement in day-to-day prison management, and courts must therefore "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. *Pratt*, 65 F.3d at 807.

Regarding the legitimate penological reasons at issue, it must be noted that officials at USP Tucson were operating the only high security Sex Offender Management Program ("SOMP") in the Bureau of Prisons. The primary goal of SOMP institutions is to reduce the need to place sexual offenders in protective custody, and to create an institution climate conducive to voluntary participation in treatment. Risk management services in SOMPs are designed to reduce the likelihood that sexual offenders engage in future acts of sexually offensive nature. (CR 110, ¶¶ 20-21; SER2 193.)

As to defendant Mendez, it is temporally impossible for the plaintiff's transfer to be in retaliation for plaintiff's filing of the current suit. That is, prison staff received reports that the plaintiff had an altercation with another inmate, and an additional inmate complained that the plaintiff was sexually harassing him and

54

another. (CR 110, ¶¶ 32-33.) After considering this information, the plaintiff's Unit Team submitted a Request for Transfer to the Warden. The request stated that if Plaintiff "returned to general population, the potential for him to continue his behavior would jeopardize the mission of [the] institution and it was recommended that he be transferred to another facility." (CR 110, ¶ 35; SER2 195.) The transfer request was approved by the Warden on November 19, 2013. (CR 110, ¶ 35; SER2 195.) The plaintiff ultimately was transferred from USP Tucson to USP Atwater on December 3, 2013. (CR 110, ¶ 36; SER2 195.) The original Complaint in this matter was filed by Plaintiff on December 2, 2013. (CR1.)

As to defendant Hansen, the evidence demonstrates that he did not author the incident report that is the subject of the plaintiff's claim. (CR 110; ¶ 16.)[18] In any event, the evidence conclusively demonstrates that the incident report served a legitimate penological purpose, as demonstrated by the following sequence of events:

7/29/2011    A Texas state court issued an order permitting plaintiff to contact his son, by telephone at 6:00 p.m. Central Standard Time on the first, third, and fifth Sunday of each month. (CR 110, ¶ 7; SER2 190.)

7/6/2012    The U.S. Probation Office advised a prison official that the plaintiff was not permitted to contact his son by phone, mail or email. (CR 110, ¶ 11; SER2 191.)

---

[18] Defendant Hansen was a unit manager at the time. (CR 110, ¶ 6; SER2 190.) But, there is no *respondeat superior* liability in a *Bivens* action. *Iqbal*, 556 U.S. at 676.

| | |
|---|---|
| 7/12/2012 | In response to the plaintiff's action in state court, the plaintiff's ex-wife sent a letter to BOP advising that she consented to the unblocking of her telephone number consistent with the Texas court order. The letter also noted that previously, the plaintiff was making multiple phone calls to her and their son outside the authorized schedule. (CR 110; ¶ 12; SER2 191.) |
| 7/24/2012 | A multidisciplinary team at the prison met. They discussed the complaint of the plaintiff's ex-wife that he was calling outside the authorized time, ██████████████████████████ ████████████████████████████████ ████████████████████████████████ █████ (CR 110, ¶ 14; SER2 191.) |
| 7/24/2012 | The plaintiff's case manager reviewed telephone records and determined that the plaintiff had called outside of the time authorized by the state court, and in violation of the federal court orders, based on information from the probation office. (CR 110-1; Exh. 2, Att. 11; SER2 182.) |
| 7/25/2012 | Plaintiff received an incident report, authored by his Case Manager for violation of Code 197, Use of the Telephone for Illegal Purposes. The charge was eventually reduced to a violation of Code 327, Contacting the Public Without Authorization. (CR 110, ¶ 16; SER2 192.) |

Based on this sequence of events, there can be no genuine dispute that the incident report served a legitimate penological interest. The court's judgment can be affirmed on that basis.

### b. The Defendants are Entitled to Qualified Immunity

Officers are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

56

To be "clearly established," existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The "clearly established" standard requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. *Id.* at 590. "The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 589 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018).

This Court has recognized that an inmate's "general right against retaliatory punishment [is] clearly established." *Shepard v. Quillen*, 840 F.3d 686, 693 (9th Cir. 2016). It is also "clearly established that prison officials may not abuse a valid procedure 'as a cover or a ruse to silence and punish' an inmate." *Id.* at 694 (quoting *Bruce*, 351 F.3d at 1289).

When Mendez's and Hansen's conduct is evaluated considering the detailed facts that they were confronted with, it would not be clear to reasonable officers that they were violating the plaintiff's rights by taking actions for legitimate penological reasons, particularly considering the limited roles they played in the actions at issue.

Moreover, the plaintiff has not established that there is a genuine dispute that these legitimate penological reasons were a ruse. Thus, qualified immunity provides an independent basis for upholding the district court's decision.

# VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the judgment should be affirmed.

ELIZABETH A. STRANGE
First Assistant U.S. Attorney
District of Arizona


*s/ Robert L. Miskell*
CONNOR HACKERT                    ROBERT L. MISKELL
Trial Attorney                    Assistant U.S. Attorney
U.S. Department of Justice        Chief, Appellate Section
Civil Division
Constitutional and Specialized Torts

59

## IX.  <u>STATEMENT OF RELATED CASES</u>

To the knowledge of counsel, there are no related cases pending.

## X.  CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case No. 17-16852

I certify that: (check appropriate option(s))

☐   This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.  The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒   This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is 13,521 words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐   This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is_____ words, or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐   This brief complies with the longer length limit authorized by court order dated _____.
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is _____words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐   This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2(a) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

Certificate of Compliance
Page 2

☐     This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2(c)(2) or (3) and is _____words or _____pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐     This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief is words or pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

April 27, 2018               *s/Robert L. Miskell*
Date                      ROBERT L. MISKELL
                             Assistant U.S. Attorney

62

## XI.  CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2018, I electronically filed the

Brief of Appellee with the Clerk of the Court for the United States Court of Appeals

for the Ninth Circuit by using the appellate CM/ECF system.  Participants in the case

who are registered CM/ECF users will be served by the appellate CM/ECF system.

In addition, a copy was mailed, postage prepaid to the pro se plaintiff:

   David A. Diehl, No. 53214-018
   USP Coleman II
   U.S. Penitentiary
   P.O. Box 1034
   Coleman, FL  33521


      *s/ Robert L. Miskell*
      ROBERT L. MISKELL
      Assistant U.S. Attorney


RLM/geq