## C.A. No. 17-16852

---
D. Ct. No. CV 13-1996-TUC-JAS
---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DAVID A. DIEHL,

Plaintiff-Appellant,

v.

UNKNOWN MENDEZ, et. al.,

Defendants-Appellees.

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ARIZONA

-----------------------------------------------------------

## APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME I

-----------------------------------------------------------

ELIZABETH A. STRANGE
First Assistant U.S. Attorney
District of Arizona

ROBERT L. MISKELL
Chief, Appellate Section
405 West Congress, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Attorneys for Appellee

Date Electronically Filed: April 27, 2018

# TABLE OF CONTENTS

| CR | VOLUME I | Page |
|----|----------|------|
| 142 | Notice of Appeal, filed September 11, 2017 | 1 |
| 140 | Judgment in a Civil Case, filed August 29, 2017 | 2 |
| 126 | Plaintiffs Brief in Opposition to Defendant's Summary Judgment Motion, filed May 30, 2017 | 3 - 127 |
| 125 | Response to Defendant's Summary Judgment Motion, filed May 30, 2017 | 128 - 137 |
| 28 | First Amended Complaint by a Prisoner, filed September 26, 2014 | 138 - 161 |
| | U.S. District Court Civil Docket | 162 - 176 |

## VOLUME II
## (FILED UNDER SEAL)

| | | |
|----|----------|------|
| 138-1 | Order granting Defendant's Motion for Leave to File Excess Pages, filed August 29, 2017 | 177 - 186 |
| 110 | Statement of Facts in Support of Defendant's Motion for Summary Judgment (Filed Under Seal), filed April 4, 2017 | 187 – 197 |
| 110-1 | Exhibits to Statement of Facts in Support of Defendant's Motion for Summary Judgment (Filed Under Seal), filed April 4, 2017 | 198 - 379 |
| | Certificate of Service | |

In The United States District Court
For The District of Arizona

David A. Diehl
          Plaintiff

v.                                    4:13-CV-1996-TUC-JAS

Mendez, et al
          Defendants

FILED _____ LODGED
RECEIVED _____ COPY

SEP 11 2017

CLERK U.S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

Notice    of    Appeal

     Notice is hereby given that David A. Diehl
Plaintiff in the above named case hereby
appeal to the United States Court of Appeals
for the 9th Circuit from the final judgment
and older entered in this action on   8-29-17.

                              Respectfully,

                              David A Diehl
                              David A. Diehl
                              Pro - Se
                              9-7-17

1

1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                        **FOR THE DISTRICT OF ARIZONA**
8
9    David A Diehl,                                  **NO. CV-13-01996-TUC-JAS**
10                    Plaintiff,
                                                     **JUDGMENT IN A CIVIL CASE**
11   v.
12   Unknown Cooper, et al.,
13                    Defendants.
14

15       **Decision by Court.**  This action came for consideration before the Court.   The

16   issues have been considered and a decision has been rendered.

17       **IT IS ORDERED AND ADJUDGED** pursuant to the Court's Order filed August

18   29, 2017, which granted the Motion for Summary Judgment, judgment is entered and the

19   action is terminated without prejudice for failure to exhaust administrative remedies.

20                                      Brian D. Karth
                                        District Court Executive/Clerk of Court
21

22   August 29, 2017

23                                      s/ M Rodriguez
                              By        Deputy Clerk
24
25
26
27
28

Case 4:13-cv-01996-JAS   Document 126   Filed 05/30/17   Page 1 of 125

```
                                              FILED      _____ LODGED
                                           ___ RECEIVED  _____ COPY
                                          ┌─────────────────────────┐
                                          │     MAY 3 0 2017         │
                                          │                         │
                                          └─────────────────────────┘
                                           CLERK U S DISTRICT COURT
                                             DISTRICT OF ARIZONA
                                          BY_____ DEPUTY
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

David A. Diehl                    )
            Plaintiff             )
                                  )
v.                                )   No. CV 13-1996-TUC-JAS
A. Mendez, et al.                 )
            Defendants            )

---

## PLAINTIFFS BRIEF IN OPPOSITION TO DEFENDANTS SUMMARY JUDGMENT MOTION

### STATEMENT OF THE CASE

This is a Bivens action filed by a prisoner at USP Coleman II seeking damages for retaliation. Defendants have filed a Motion For Summary Judgment as to plaintiffs retaliation claim against defendants Mendez and Hansen.f

### STATEMENT OF FACTS

In the plaintiff's Declaration of Disputed Facts plaintiff takes exception to most of the defendants facts. Plaintiff hereby states his statement of facts:

1. Plaintiff had a legal right to contact his son by telephone, mail, and email per a domestic court order of the 353rd district court, Austin Texas. This court created the order subsequent to plaintiffs federal charges, with full knowledge of those charges. The United States attorney and FBI attended the hearing and posed no objections to the courts finding.

2, The actual call schedule was set as a convienance to both parties and could be modified without returning to court by mutual consent. Both parties did consent to modify the order and this is self evident by the call records. Neither party would dispute this fact.
Enforcement of the order is the responsibility of the family court.

3. That family court at no time found plaintiff violated the courts order.

4. The federal court that convicted plaintiff impossed no restrictions

3

on his ability to contact his biological son.

5. Around December 25, 2011 defendants caused the telephone number plaintiff used to contact his son to become blocked.

6. The defendants followed no BOP procedure when blocking the phone, and failed to even notify the plaintiff in this case.

7. Plaintiff went through the remedy process to get the phone unblocked. Plaintiff in fact completly exhausted the blockage when he sent BOP central a BP-11 by certified mail.

8. Because USP Tucson refused to unblock the phone, Plaintiff took his ex-wife back to family court. Plaintiff at that point discovered that his ex wife had been put into a Victim Notification System by a BOP central employee.

9. The family court judge ordered Plaintiffs ex-wife to write the warden to get the phone number unblocked.

10. When the unit team received the letter they filed a incident report against plaintiff and took his phone privilages among other sanctions.

11. During this time period the defendants also wrote plaintiff a seperate incident for sending mail to his son.

12. Plaintiff was eventually successful in getting the sanctions overturned, but the defendants refused to restore his phone privelages.

13. On September 5, 2013 plaintiff and his cell mate were accused of fighting and put in special housing (SHU).

14. Following an investigation plaintiff was released from the SHU only to be put back in the SHU the next day. No reason was given.

15. On 9-12-2013 plaintiffs phone was to be turned back on, but staff refused to turn it back on.

16. On 12-2-13 the District Court Of Arizona received plaintiffs Bivens.

17. On 12-3-13 plaintiff was transferred to USP Atwater.

ARGUMENT 1 – PLAINTIFF DID EXHAUST ADMIN REMEDIES

As explained in detail in the plaintiffs Statement Of Disputed Facts
3 and 4, the phone and mail shots were fully exhausted. Once the
phone charge had been reduced to a 397, it was futile to exhaust
further. It was also not possible to exhaust further since BOP
employee Owen took the administrative remedy coordinators late letter
and threw it away. See page six of plaintiff's First Amended
Complaint, page 6.

   A court may waive an exhaustion requirement where administrative
remedies are inadequate, futile, or pursuit of them would cause
irreperable harm, Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir.
2004). This exception applies to retaliation claims against the
defendants themselves. Page 9 of plaintiffs complaint says that
defendants threatened to put the plaintiff in danger if he filed on
them or brought a law suit against them, "Plaintiffs life would
surely be in jeopordy if such a transfer took place."

   Courts have found that threats or other intimidating conduct
may make administrative remedies in general, or the usual grievance
remedy in particular unavailable to a prisoner both before Woodward
and afterward. See Hemphill v. New York, 380 F.3d 680, 686-90 (
2d Cir. 2004); accord Kaba v. Stepp, 458 F.3d 678, 684-86 (7th Cir.
2006) (adopting Hemphill analysis after Woodward). These courts
have specifically observed that threats or other intimidation might
deter prisoner from filing an internal grievance, but not from
appealing directly to persons in higher authority such as state or
federal courts, so the grievance system would be unavailable, but
other remedies might be available).

   Here, plaintiff filed a sensitive 9 against LT Cooper ( a
person dropped from the initial complaint). The sensitive 9 was
denied so Plaintiff chose not to file retaliation complants
directly to USP Tucson. Plaintiff did ask FBI liazon Mendez to
speak directly to the FBI. See Exhibit E9 – E11. See Ziemba v.
Wezner, 366 F.3d 161, 164 (2d Cir. 2003) (directing district court
to consider whether complaint to the FBI and subsequent investigation
could amount to exhaustion by plaintiff subjected to threats ....

ARGUMENT 2 – PLAINTIFF CAN NOT ESTABLISH THE ELEMENTS
OF THE FIRST AMENDMENT RETALIATION CLAIM AGAINST
DEFENDANT MENDEZ

Defendant Mendez argues that the "special investigative
supervisor" mentioned in the supporting BP-10 documentation sent
to Region, concerning remedy 67440-A1 (See Exhibit 12) is not him.
There is no proof however that it is not him, since Mendez was
involved in the investigation of the phone block from the start,
and he is a FBI liazon. According to SIS (their initial statements)
the FBI was involved in the blockage of Plaintiff's ex-wifes phone.
See First Amended Complaint "the FBI didn't like what you were
saying on the phone, and so we blocked the number." Comment made on
January 9, 2012.

Defendant Mendez also argues that Plaintiff's transfer could
not have been retaliatory based, but was instead a result of a
fight and accusations of sexual harrassment. Plaintiff disputes
these accusations and because of their importance, urges the court
to consider them material facts in this case.

Defendant Mendez argues that becaues Warden Winn Jr. approved
the transfer instead of him, and that the transfer was approved
before Plaintiff filed his Bivens action, the transfer can not
warrant retaliation. As already argued, it was well known the Bivens
suit was in process before the decision to transfer was made. Also,
the Warden transfers inmates based on **the recomen**dation of Unit Team,
and SIS. Despite Mendez's denials, he was a major influence in
SIS investigations, and recomendations.  See exhibit E9 and E10 to
see the level of interaction Mendez had in the matter of Plaintiffs
phone block. Also see Exhibit E33 which is a chronology of events
occurring with regard to the phone block.

6

ARGUMENT 3 - PLAINTIFF CANT ESTABLISH ELEMENTS OF
FIRST AMENDMENT RETALIATION CLAIM AGAINST
DEFENDANT HANSEN

Each individual statement of fact in the defendants MSJ has been addressed in Plaintiffs Statement Of Disputed Fact section, and therefore will not be addressed here.

Most relevant to the First Amendment Retaliation claim here is the timing of actions taken against the plaintiff while at USP Tucson. Of relevance is that all the information, including plaintiffs domestic court order, the PSI, the federal court judgement, time and date of telephone calls to plaintiffs ex-wife, and actually the voice recordings themselves, where available to unit team and SIS from the initial date when plaintiff filed a BP-8 on the phone number block.  When the phone was blocked in December plaintiff was not charged with any infractions. In fact until plaintiff took  his ex wife back to family court for contempt, plaintiff was incident free. However, once plaintiffs ex-wife was ordered to write a letter to the warden to have her number unblocked, the defendants took immediate action against plaintiff in a most serious way.

Defendants argue that they first became aware that Plaintiff had violated the law September 2012, nine months after the phone calls to plaintiffs son were made. This is a material fact in this retaliation claim, and summary judgment should be denied.

The defendants actually unblocked the blocked telephone number for a period of 24 hours so they could say they conformed to the court order, and to keep plaintiff's ex wife out of trouble. The just discovered argument was used to circumvent the 24 hour statute of limitations regarding incidents.

Retaliation claims are most commonly proved based on the chronology of events that follow the protected conduct. Cain v. Lain, 857 F.2d 1139, 1143 (7th Cir. 1988). There only need be a causual relationship between protected speech and adverse action, Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004); Muhammad v. Close, 379 F.3d 413, 417-18 (6th Cir. 2004) (stating that temporal proximity alone may be significant enough to constitute direct evidence of retaliatory motive); Brude v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (Citing suspect timing of gang validation "that

7

closely followed plaintiffs success in grievances"); Gayle v. Gonyear,
313 F.3d 677, 683 (2d Cir. 2002) (disciplanary charge filed six days
after plaintiff filed a grievance); Harriss v. Fleming, 839 F.2d 1232
,1236-38 (7th Cir. 1988); Rodriguez v. McClenning, 399 F.supp.2d
228, 239-40 (S.D. N.Y. 2005) (disciplanary charges following a
grievance); Bennet v. Goard, 343 F.3d 133, 138-39 (2d Cir. 2003)
(claim that the discipline was retaliatory was supported by the fact
all relevant disciplanary actions were later round unjustified)

In the present case, all the incidents were written following
plaintiffs success in state court. As discussed in the exhaustion
portion of this brief, all disciplanary actions were later found to
be unjustified, and were overturned. Excluded from this statement
is the fight and sexual harrassment acusations, which will be
discussed independantly below.

See also Kounelis v. Sherrer, 396 F.Supp.2d 525, 531 (D.N.J.
2005) (claim that searches were retaliatorywas supporte by the fact
that resulting disiplanary charges were dismissed); Bakerville v.
Bott, 224 F.Supp.2d 723, 733 (W.D.N.Y. 2005) (holding that the fact
the alleged retaliatory disciplanary charges were dismissed,
supported a claim of retaliation despite passage of three years
before retaliation acts.) Finally, in Farid v. Goold, 200 F.Supp.2d
220, 237-38 (W.D.N.Y. 2002) (retaliation claim was supported by the
evidence that gravity of disciplanary charges was grossly disparate
to evidence supporting them.)

In the present case, the 197 (illegal use of the phone) calls
to plaintiffs son, on the supposed wrong days, included a loss
of all telephone privilages for two years. Note this punishment
punished the child also. The punishment also included 60 days of
segregatoin time, 41 days loss of good time, 40 days dissallow
good time, and a $100.00 monetary fine. Once the shot was reduced
to a 299, little changed. For example the phone block remained at
two years. This is a major descrepancy to the national average.
Consider Butler v. Gill, 2015 U.S. Dist. LEXIS 84215 (E. Dist. CA,
2015) (297 code, loss of phone, three months); Arellanao v.
Benov, 2014 U.S. Dist. LEXIS 41736 (E. Dist. CA, 2014) (297 code,
no phone loss).

There is no need for the adverse action taken against an inmate to impose "a typical and significant hardship," Sandin v. Conner, 515 U.S. 472, 484 (1995) (Actions supporting retaliation claims include threats); Burges v. Moore, 39 F.3d 216, 218 (8th Cir. 1994); Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978 );

Placement in segregated confinement without cause is also considered retaliation, Trobaugh v. Hall, 176 F.3d 1087, 1088 ( 8th Cir. 1999) (Three days in isolatoin for persisting in pursueing grievances violated First Amendment); Brown v. Crowley, 312 F.3d 782, 789 (6th Cir. 2002) (holding discilanary charges that were dismissed were sufficiently adverse because they subjected (plaintiff) to the risk of significant sanctions); Hart v. Harrison, 343 F.3d 762, 764 (5th Cir. 2003) (discipline resulting in 27 days loss of privileges was adverse.)

In the present case Region overrode the 197 and 297 shots. The 396 mail shot was expunged, the family court did not find Plaintiff violated the custody order, and the federal district judge did not find that plaintiff violated any "supervized release" terms. Plaififfs ex-wife testified in family court that she never asked Tucson staff to block her phone, but rather she inquired into the capability of blocking the phone on certain days only.

Some courts have found that a defendant must prove that the punishment would have occurred even if the protected conduct had not occurred. See Adams v. Wainwright, 875 F.2d 1536, 1537 (11th Cir. 1989) (per curium) (rejecting the "but for" burden on plaintiff).

Prior to plaintiff's success in family court, the defendants were content with just blocking his ex-wifes phone number. The defendants showed no interest in investigating claims of wrong doing, despite having access to all the information required to conduct such an investigation. See Exhibit E2, which is the original BP-8;

It seems obvious that the defendants counted on influencing the family court judge by putting Keri Jenkins in the Victim Notification System just prior to the contempt hearing. See Exhibit E1, and E23 ( "it was all to be handled"). But when that did not work (See E35, Jenkins attorney's letter asking the block to be removed), the defendants met and retaliated. See E42 (Nink's alleged contact with

the Austin Texas probation officer), and E43 the SOMP Administrator
note outlining the group meeting where it was decided to over-ride
the state judge.

Seperately, the defendants argue that plaintiff's transfer was
the result of a fight with his cellmate, Odell Golden, and the result
of another inmate, Mitch Brokab (spelling ?) accussing plaintiff of
some form of harrassment. In addition, ex-defendant Shean Nink says
inmate Golden himself at one point accused the plaintiff of sexual
harrassment.

In the plaintiffs decleration of disputed facts, he  highlights
the complete lack of any credible evidence supporting these harrassment
allegations. Plaintiff herein argues that these sought after
allegations, which are key disputed material facts, justify a trial
and should not be accepted by this court as non-material to the
retaliation claim.

Plaintiff again asks the court to consider the timing of these
allegations and the so called investigation into them. On Septermber
5, 2013 plaintiff and his cellmate were accussed of fighting and
taken to special housing. Both inmates denied fighting, and Golden
in fact accussed officer Cota of assault. Officer Cota in return
accussed Golden of spitting on him, assault. See Exhibit E40 page
4/9 (Alverez interviews Cota.)

After approximately 34 days in the SHU, which is standard,
the plaintiff was released back to general population. Since the DHO
hearing was postponed there were no penalties assigned for the
fight arrest. Importantly though, since the original phone shot of
197 had been reduced twice, and as of 9-12-13 was a 397, the phone
should have been reset. See Exhibit 3C, plaintiffs inquiry to DHO.
What is clear, based on information release following discovery, is
that the defendants had no intentions of unblocking the phone -
despite region. See Exhibit 23, letter from Hansen to Nink.

It was not until 10-10-13, the day plaintiff was released from
the SHU that he was even notified of the 397 code correction. To
prevent inmates ability to communicate, the defendants re-locked the
plaintiff up in the SHU the next day for no a threat investigation.

As of plaintiffs release from the SHU, it appears suddenly two different inmates felt threatened. The first inmate was plaintiffs ex-cellie Golden who on October 10, 2013 supposedly submitted a cop-out to ex defendant Nink. See exhibit 40, page 3/9. See also October 16, 2013 interview with Alvarez where Golden says "nothing happened between them (plaintiff and Golden)." See E40 page 5/9. See also Goldens hand written note to Plaintiff while in the SHU, E 14. With regard to the allegations of Brokab, a seperate inmate who made allegations, the defendants submitted a memorandum dated 10-17-13. See Exhibit 40 page 4/9. In the memorandum it says that "Nink submitted by email" a letter saying in part " "at the end of August, 2013, (plaintiff) was making passive remarks ... Hansen made notifications at the time." The email also says: "(Nink) attached a copy of (Goldens) copout from 10-10-13" and "(nink) recommends transfer." See Exhibit 40, page 4/9 dated 10-17-13. On November 19, 2013 a transfer order from Warden Louis Win Jr. to Jose Santana states: "The unit team recommends a transfer to any USP appropriate with Diehl's custody and programming needs." The transfer order is signed by both Nink and Unit manager Hansen. See Exhibit 30. No documentation has been provided which includes the original cop-out of Golden, or any writings or emails from Brokab.

On page 9/9 of defendants disclosure, Plaintiff Exhibit 40 is a fight report, or atleast what appears to be the fight report. In the report which recommends transfer it says in part: "the greater weight of the evidence shows that inmate Diehl was sexually harrassing inmates xxxx and xxxx ...." The next paragraph is most important as it concludes: "inmates refusing to actively associate with sex offenders are not to be placed in general population due to the amount of sex offenders that are currently housed at the facility .... There is a high probability thatinmates Diehl and xxx will retaliate and seriously assault another person if they return back to general population."

This reports findings have nothing in common with the allegations of either inmate Brokab or Golden. Furthermore to believe the nonsence defies common sense since plaintiff is a high profile sex offender. These material facts that plaintiff disputes are relevant to the summary judgement.

11

No fight report contains this important information. See those reports dated 3-20-13, 11-27-13, 4-11-13, and 6-3-14 at Exhibit E15. This is why plaintiff says this information is manufactured or contrived.

Note that inmate Golden was never going to be returned to general population because of his assault on staff charge, so he surely was no factor in plaintiffs transfer. Plaintiff had already been released back to general population. Any testimony of inmate Brokab should have been thouroughly investigated for several reason. First he is a mental patient who has a history of false reporting on other inmates. See Exhibit 22 submitted by Steve Chapman. The defendants accuse plaintiff of failing to take part in an investigation; this could not be further from the truth. See Exhibit E40 page 6/9. Once plaintiff found out informally (never was notified by the defendants) that Brokab had raised accusations against him plaintiff became very pro-active, insisting on an investigation. See Exhibit E16 - E21. Plaintiff knew exactly what staffs intentions were. No investigation was made to the best of Plaintiffs knowledge. Note that PREA requires a formal investigation. See Wilenson v. Austra, 545 U.S. 209, 223-24 (2005) (transfer was more like an administrative segregation due process case than the usual transfer case); Marriss v. Powell, 449 F.3d 682, 687 (5th Cir. 2006) (Transfer to a more dangerous prison was retaliation); Rizzo v. Dawson, 778 F.2d 527 (9th Cir. 1985) (holding prison officials could not transfer an inmate to another prison in retaliton for the inmates excercize of his First Amendment right to puruse federal litigation. Id at 53); Shroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995) (must prove retaliatory action did not advance legitimate goals of the correctional institute or was tailored narrowly enough to achieve such goals .Id 532)

ARGUMENT 4 DEFENDANTS MENDEZ AND HANSEN ARE ENTITLED TO QUALIFIED
IMMUNITY

Plaintiff had a clearly established right to seek redress of
his grievance through the court system without suffering retaliation
for his success. In the present case it was the success that
triggered the mallicous and intentional retaliation. Qualiffied
Immunity will not suffice to protect the defendants here.
Plaintiffs ex-wife could have always blocked her own number if
that had been her intent. She could have also returned to the court
who had jurisdiction of the matter for corrective action if she
had wanted to; she did neither. Keri Jenkins is not a victim
in any regard, neither is Plaintiffs son. The defendants misused
the VNS system to try and determine the outcome of the family
court. The VNS system is primarily used to notify victims of a
inmates release. See C.F.R Title 28, Ch V, Sub Ch. C Part 551,
Subpart M section 551.152. Any request will be referred to the
United States Attorney for approval. See United States v. Ingrassia,
392 F.Supp. 2d 493 (VNS compliance in general).

Furthermore, the defendants undoubtably had enough information
to investigate any phone violation prior to the family courts
instructions for Keri Jenkins to write a letter to the warden to
have the phone unblocked. Plaintiff filed grievances on the phone
issue, and against LT Cooper (prior defendant) for attempting to
force plaintiff back to state and federal court. Many emails were
sent to the Warden indicatnig the problem. All call logs and in
fact voice recordings of these were available from December 2012
onward. Plaintiffs PSI and court records were of course available.
The defendants admit that they sought no legal assistance. See
Hansens answeres to plaintiffs interrogatory, number 3. Plaintiff
on the other hand spent over $10,000 for the initial custody order
to protect his sons interests, and an additional $2500 to enforce
the order.

After region overrode all sanctions, the defendants refused to
unblock the phone and instead transferred  the plaintiff on false
allegations.

13

There are many other indicators of mallicous intent here including the continual interfearance of plaintiffs emails. See E27 where the plaintiff was trying to get his son back in school.

There are also many facts that are material to the validity of the defendants arguments. For instance why did the defendants unblock plaintiffs ex-wifes phone number for 24 hours after receiving Keri Jenkins unblock request, if plaintiff committed a criminal use of a phone. And, if Mrs. Jenkins only became a victim via VNS before domestic court, then how were the calls from January illegal ? How can the plaintiff have violated "supervized release" by sending mail to his son, when the warden in his emails to the plaintiff, assured the plaintiff that he "still" had access to mail and email ?

The defendants motion for summary judgment should be denied, and this case should move on to trial.

## CONCLUSION

There are genuine issues of material fact that preclude the appropriatness of a summary judgment. Summary judgment is to be granted only if the record before the court shows "that there is no geniune issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R.C.P. A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

The declaration of the plaintiff and the defendants are squarely contradictory as to the claim of First Amendment Retaliation. The plaintiff in this case relying one facts that if believe, show a wanton disregard for the plaintiffs right to have meaningful redress through the court system.

Plaintiff has shown a timeline of events that support his retaliation claim. The defendants motion for summary judgment should be denied.

Plaintiff has also directly associated defendant Hansen and Mendez to the retaliatory actions made against plaintiff. Defendant Hansen was part of the committee who authorized the 197 phone charge; the fact he did not sign off on the second modification to the recommendation means nothing. It was a clerical correction, no new relevant facts were changed. Defendant Hansen also signed off on plaintiffs transfer based on evidence that had no credibility, where no real investigation took place.

Ir Mendezes interrogatory he says he took no part in plaintiffs phone block or transfer. Evidence has been provided herein showing that Mendez was a part of the entire retaliatory scheme. Although it was LT Cooper who sought to further punish Plaintiff initially by forcing him back to federal and state court, as well as terminating his ability to communicate with his child, it was Mendez that investigates staff. Mendez did not stop Cooper from proceeding with the harrassment, he endorsed it and allowed it to continue, this is cleary the case, and the evidence supports it.

When plaintiff asked Mendez to talk with the FBI, and brought this Bivens claim, Mendez saw to it that Plaintiff was promptly transferred to a life threating yard, just like he said he would.

David A. Diehl Plaintiff   v. A. Mendez Defendant — 4:13-CV-1996-TUC_JAS

### TABLE OF EXHIBITS

E1 — Victim Notification Letter to plaintiffs ex-wife

E2 — All 674440-F1 documentation

E3 — Inquiry to DHO asking why phone privelages were not restored

E4 — BP8 of initial phone block on 1-25-12 (p.2)

E5 — USPS receipt showing that BOP Central received 674440

E6 — BP8,9 filed on Lt. Cooper

E7 — BP10 filed on Lt. Cooper

E8 — BP11 filed on Lt. Cooper

E9 — Letter to defendant Mendez 5-22-13 (Want to talk to FBI)

E10 — Letter to defendant Mendez 5-24-13          "

E11 — Leeter to Castillo 11-25-13

E12 — McFaddens letter concerning the "Special Investigative Supersor"

E13 — Fight investigation report from SIS upon arrest

E14 — Letter from ex-roomote Odell Golden to me in SHU after arrest

E15 — Fight DHO conviction along with my response

E16 — SIS investigation of SIS

E17 — Letter sent to SIS Alvarez 10-16-13 concerning Mitch Brokab

E18 —           "              11-1-13              "

E19 —           "              11-25-13             "

E20 — Affidavit to Lt Alvarez    11-14-13

E21 — Letter to Warden Win concerning Brokab on 11-26-13

E22 — Steve Chapmans affidavit concerning Mitch Brokab

E23 — Letter from defendant Hansen to ex-defendant Nink regarding
      keeping the phone locked down request from ex-wife Keri J.

E24 — Incident Report 197 7-24-12 (Criminal Use of the Phone)

E25 —           "              8-8-12

E26 — Email from ex-attorney G. Morris concerning P.O. Mrs Shiflett

E27 — Email from Anita and .Paul Combs concerning email blocking

E28 — Incident Report written for sending mail to plaintiffs son.

E29 — Arizona P.O officer's opinion on plaintiffs judgement order.

E30- Tucson transfer order

E31- Domestic family court order

E32-Defendant Mende'z interogattory, pleading complete ignorance

E33- Cronology of events

E34- Domestic family court order forcing ex-wife to clear phone

E35- Letter from ex-wifes attorney declaring ex-wife a victim

E36- Page 14 of Motion For Summary Judgement declaring that
     defendant Hansen was a part of the UDC committee that wrote
     the 197 incident against plaintiff

E37- Federal judgement order, supervized release page

E38-

E39-

E40- All SIS investigation reports Feb-9 - Sept 9 from defendants
     MSJ

E41- Time line written from plaintiff to Warden Winn

E42- SOMP administrative note from Doctor Unrue saying P.O. Jessie
     Shifflett told ex-defendant Nink there was a No-Contact between
     plaintiff and his son in place.

E43- SOMP administrativew note saying the Multidisciplanary team
     met to decide what should be done, following the receipt of
     ex-wifes letter requesting the phone be unblocked.

E44- (excluded)

E45- Criminal complaint made to US Attorney in Arizona concerning
     staff actions taken against plaintiff.

E 1

**U.S. Department of Justice**
Federal Bureau of Prisons
Central Office
320 First Street, NW
Washington, DC 20534
Phone: (202) 307-0884
Fax: (202) 514-6550

May 10, 2012

Kerry Jenkins
1616 Mentone Drive
Round Rock, TX 78664

Re: DAVID DIEHL
     Register Number: 53214-018
     Docket Number: 10-CR-00297

Dear Kerry Jenkins:

You have requested to receive notifications for Nathaniel Diehl regarding DAVID DIEHL, an inmate incarcerated at this facility. Notification is being provided via the Victim Notification System (VNS). The VNS is designed to provide you with information regarding the case as it proceeds through the criminal justice system. You may obtain current information about this matter on the Internet at WWW.Notify.USDOJ.GOV or from the VNS Call Center at 1-866-DOJ-4YOU (1-866-365-4968) (TDD/TTY: 1-866-228-4619) (International: 1-502-213-2767). In addition, you may use the Call Center or Internet to update your contact information and/or change your decision about participation in the notification program. If you update your information to include a current email address, VNS will send information to that address.

You will need the following Victim Identification Number (VIN) ▊▊▊▊ and Personal Identification Number (PIN) ▊▊▊ anytime you contact the Call Center and the first time you log on to VNS on the Internet. If you are receiving notifications with multiple victim ID/PIN codes please contact the VNS Call Center. In addition, the first time you access the VNS Internet site, you will be prompted to enter your last name (or business name) as currently contained in VNS. The name you should enter is ▊▊▊▊

This notice is to inform you that, in response to your recent inquiry, the Bureau of Prisons (Bureau) proactively takes steps to prevent inmates from contacting identified victims of their crime. Our goal is not to further punish the inmate but rather to protect victims from further victimization by the same individual who has a documented history of harming that victim. In most circumstances Bureau policy and procedures do not allow inmates to have victims on their approved telephone, email or visiting lists.

As you are aware, your son has been identified by federal authorities as a victim of inmate Diehl. Therefore, we have taken steps to prevent this inmate ▊▊ on placing him on any of the aforementioned lists. Further, based on this inmate's current conviction for ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ (on the above-referenced Docket Number) and his prior conviction for Domestic Violence, I see no reason to recommend that these privileges be extended to him.

You should be aware that this inmate will be able to send correspondence through the regular mail. Although an inmate's regular mail is subject to monitoring and may be read, if this inmate learns through other means that you are receiving notification and threatens or attempts to intimidate you in any manner, please notify both the U.S. Attorney in the district where the inmate was prosecuted and staff at the facility that he is located: currently USP Tucson, Arizona (520)663-5000).

18

If at any time you have any questions or concerns regarding this program or the offender's status, please do not hesitate to contact me at the above address or you may telephone the VNS Call Center.

Sincerely,


Roy Qualliotine
Unit Manager

Case 4:13-cv-01996-JAS   Document 126   Filed 05/30/17   Page 19 of 125   E-2   *BP-9*

*Amenastrative Remedy Form ?*

TCX 1330.13J
November 13, 2006
Page 5
Attachment A

## INFORMAL RESOLUTION FORM

NOTICE TO INMATE:  You are advised that prior to receiving, and filing a Request for
Administrative Remedy Form (BP-9), you MUST attempt to informally resolve your
complaint through your Correctional Counselor.  Briefly state the complaint below and
list what effort you have made to resolve your complaint informally.  Also, please
state names of staff contacted.

Inmate Name: David A. Diehl          Number: 53214 018     Unit: B1-101

Informal resolution form issued by Correctional Counselor ___M___    1/12/12
                                                                      (Date)

INMATE'S COMMENTS:  (Inmate MUST FILL OUT items 1-4, and signature block)

1.  Complaint: My Phone # 512 216 0956 is illegally being blocked by
this facility. The 353th District Court of Texas ruled in my
custody agreement I have a legal right to call my son at that
number. Federal Judge Yenkel Neve imposed restrictions.
2.  Efforts made by inmate to informally resolve: Talked to unit mgr. and SIS- Mr. Cooper. Emailed Warden,
talked to assistant warden.

3.  State what action you want staff to take to correct the situation: This is not
a security issue. I am not restricted. Please remove block.
Also tell me how this block was instigated.

4.  Names of staff/inmate contacted: Warden, Cooper, Pennington

Date returned to Correctional Counselor: _____

David A Diehl              53214-018              1-12-12
Inmate Signature           Number                 Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1.  Efforts made to informally resolve and staff contacted: Sent email to CSW
on 1/13/12 , no response from CSW

Date informally resolved 1/13/12    Signature ___M___
                                              Correctional Counselor

2.  Informal Resolution was not accomplished for the following reason: Inmate
wants to proceed to next process

*Unit Manager's Review and Signature*

| | BP-9 Issued to inmate | BP-9 returned to counselor | BP-9 delivered to Admin. Remedy Clerk |
|---|---|---|---|
| Date: | 1/13/12 | | |
| Time: | 9:00 a | | |
| Counselor: | M | | |

20

U.S. DEPARTMENT OF JUSTICE Case 4:08-cv-01996-JAS Document 58 Filed 07/30/18 REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| | | | |
|---|---|---|---|
| **From:** Diehl David A | 53214018 | B1 | USP Tucson |
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

I have a legitimate and valid District court order in place stating knowone is to block my phone calls to my son. The court order which has been presented to Lt. cooper also says knowone is to block my mail to him. I do not have to proove this order is valid. It is valid. My attorney has contacted the federal prosecutor Matt Devlin in my case who has confirmed there is no federal restrictions involving my family. This block represents nothing more than harrasment by the FBI. I have a right to talk to my son per court order.

1-25 2012
DATE

David a Diehl.
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____     _____
DATE                                          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 67444 0F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
                LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
DATE                                                 RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN      PRINTED ON RECYCLED PAPER      BP–229(13)
APRIL 1982

21

E2

DIEHL, David Andrew
Registration No. 53214-018

Request for Administrative Remedy
Remedy ID. No. 674440-F1

Part B - RESPONSE

This is in response to your Request for Administrative Remedy received on February 1, 2012, wherein you claim staff are prohibiting you from sending written correspondence and placing phone calls to your son. Additionally, you allege the Bureau of Prisons is in violation of a court order which prescribes mandated times you are to contact your son.

Pursuant to Program Statement 5264.08, Inmate Telephone Regulations, the Warden has the authority to restrict an inmate's regular telephone privilege when reasonable suspicion exists that an inmate has acted in a way that threatens the safety, security, or good order of the institution, or the protection of the public. Recent information/intelligence gathered from various sources has indicated you have utilized your telephone privileges in a manner which warrants restriction at this time. Moreover, 28 CFR 540.100 affords the Federal Bureau of Prisons the ability to subject inmate telephone use to limitations which are necessary to ensure the security of the institution and protection of the public. The aforementioned CFR takes precedent over the court ordered mandate of communication which you have provided documentation for thus far.

Telephone privileges are a supplemental means of maintaining community and family ties. Records reflect the Bureau of Prisons has placed no restrictions which preclude communication via written or electronic mail. Additionally, your visitation privileges are not restricted.

Based on the above, your request for Administrative Remedy is for informational purposes only. If you are dissatisfied with this response, you may appeal to the Western Regional Director. Your appeal must be received by the Regional Administrative Remedy Coordinator, Federal Bureau of Prisons, Western Regional Office, 7338 Shoreline Drive, Stockton, CA 95219, within twenty (20) calendar days from the date of this response.

_____
Craig Apker
Complex Warden

03-23-2012
Date

Received   3-31-2012
David c Diehl

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**   F2

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Diehl, David    A__   __53214018__   __B1__   __USP Tucson__
       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**   As indicated in my BP8 and BP9 my phone access to my son has been blocked by USP Tucson. The official verbal reason I was given was "you were calling on the wrong days of your custody agreement and your wife called in and asked if we could block phone access except for certain days, since we couldnt, we decided to block it, completly." Mr. Mendez, the head of SIS stated this to me Mr. Mendez further stated that my ex-wife needed to call in and indicate she wanted the phone unblocked. My ex wife has put in writing to my attorney (Attached) That

__4-2-2012__   ↓ continued...   __David A Diehl__
DATE   Attached   SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
APR 10 2012

DATE _____
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

REGIONAL DIRECTOR

CASE NUMBER: __674440-R__

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

DATE _____   (symbol)   SIGNATURE, RECIPIENT OF REGIONAL APPEAL

23

BP-230(13)

she had nothing whatsover to do with getting the block put on and feels no obligation to help unblock it. Program statement 5264.08, section 13 "Telephone restrictions imposed by warden", indicates telephone restrictions by SIS are to be used for cases where the circumstances are either 1) the inmate has a public safety factor and a history of abuse on the phone or 2) there is a pending investigation. When one of the preceeding are true the Special Investigative Supervisor will get the Wardens approval to block a particular number. A stated reason for the block should be recorded in form (BP-740.051) and this form should be provided to the inmate. Any restrictions should be designed to minimize the effect on the inmates ability to maintain relationships. If the Warden approves the restriction it should be based on "the need to protect the public". Telephone restrictions should be limited to 30 days. If additional time is needed the Warden should complete a new BP-740.052 each 30 days. Staff should make every effort to resolve the problem within 30 days. Please note the number has been blocked for 3 months with no indicated reason. The conditions of 5264.08 are not met in this case. There is no security risk to anyone and there is no reason to suspect threats or danger to anyone. SIS has listened to all my phone calls to that number. I seek to get the number unblocked and to get the BP-740.052 forms explaining what has happened. I have not talked to my son in 3 months as a result of this institutions actions.

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

E-2

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Diehl, David A     53214018     B1-101     USP-Tucson
        LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**

Concerning Remedy I.D. No. 674440 - F1.
Regional failed to Respond to the Referenced complaint
My Phone access to my son has been blocked in
Violation of a valid Texas custody court order which
indicates NO one is to interfere with our calls.
Lt Cooper instigated this block without cause and
has lied to the warden and myself about the
issue... continued on attached.

5-13-2012
      DATE                               David A Diehl
                                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

 

 

 

 

 

 

 

_____             GENERAL COUNSEL
      DATE

ORIGINAL: RETURN TO INMATE            CASE NUMBER: _____

**Part C - RECEIPT**

                                    CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____
      DATE                              SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN 1 VN                                                 BP-231(13)

25

E2

I am asking for an investigation into this matter. With the information I have, it seems highly likely that the FBI, Lt. Cooper and my ex-wife have conspired to violate a state court order for no other purpose than to cause me additional pain and anguish. In the process Lt. Cooper has violated the authority of his position, BOP policie, and state law. I am now in state court presenting this matter to a Texas State Judge for review.

I pray the BOP will take strong action against Lt. Coopers attempts to assist the FBI and my ex-wife in causing me punishment beyong what the law called for.

I have also made very clear to Lt. Cooper that as a result of what he has done, my son may be in significant danger. The attached print outs from the warden seem to indicate he is not aware of the deception Lt. Cooper has engaged in.

Sincerely,

David A. Diehl, 53214018

E 2

706307-R1
FDC SeaTac

You are requesting administrative relief regarding the decision of the Discipline Hearing Officer
(DHO) on September 7, 2012, in which you were found to have committed the prohibited act of
Phone Abuse to Further Criminal Activity, Code 197.

On appeal, the appropriate reviewing official may approve, modify, reverse, or send back with
directions, including ordering a rehearing, any discipline action of the Unit Discipline Committee
or Discipline Hearing Officer, but may not increase any valid sanction imposed.   We are
directing the DHO to reconsider this matter.

After receipt of the final report, should you wish to further appeal this action, you must first
submit your appeal to the appropriate level (institution level for UDC actions and regional office
level for DHO actions).   You should also include a copy of this response with your appeal to
explain any delay in filing.

This response is for informational purposes only.

If dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of
Prisons, 320 First Street, NW, Washington, D.C., 20534.   Your appeal must be received in the
General Counsel's Office within 30 calendar days of the date of this response.


11/27/12
Date

JUAN D. CASTILLO, Regional Director

Received   12-28

Case 4:13-cv-01996-JAS   Document 126   Filed 05/30/17   Page 26 of 125

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal

E2

*original 2nd attred*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | Diehl, David, A | 53214-018 | B-1 | USP Tucson |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**    Inmate Diehl asks the Region to expunge Incident Report #2331081 for violation of Code 197. This Incident Report was reheard on 3-14-20 folling inmate Diehl's appeal of the incident on 9-22-13, Administrative Remedy #67440-A1. This incident involves calls made to Diel's biological Son back in December, 2011.    JUSTIFICATION FOR EXPUNGEMENT:

A. Diehl was denied his hearing Rights under <u>Wolf v. McDonald</u>, 418 U.S. 539 (1974); for this new charge (Code # 299).

1. No advance notice of the Code-299 was given.

2. There was no opportunity to present a defense, (or even attend a hearing or have a staff representative appear on his behalf) for the NEW charge. See, Exhibit 1 and 2, indicating Diehl would be attending the hearing from the Warden and his case manager.

B. DHo cannot charge (or convict) under "299 most like 297" for an incident involving the phone, because 297 itself is a phone charge whose essential elements of guilt are completely unrelated to those of 197, and the facts in present case.

C. Diehl's conduct does not violate 297 in any way as Diehl never attempted

| 3-21-2013 | See, Adendum. | *David A Diehl* |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                                CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

| DATE | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |
|---|---|

UPN I VN

BP-230(13)

28

ADDENDUM

to circumvent the phone monitoring.

D.   DHO did not present any evidence, as to how Diehl's actions violated offense Code 299 or 297.   With regard to the original 197 shot:

A.   The original incident claimed "On July 24th staff became aware of the calls." all facts about the calls were known within weeks of the calls.  Six months before the shot was written Diehl filed a BP-8 on January (Exhibit 3), which went clear to the BP-11 level (#674440).  BOP procedure indicates that staff is to take action within 24 hours of becoming aware of an infraction. In this case the incident report was written on 7-25-2012, six months ofter the incident.

B.   This incident report was written two weeks after the court that has jurisdiction of Diehl's custody agreement ordered Diehl's ex-wife to request her phone be unblocked in writing to the Warden.  That court did nto find Diehl violated the court order.  After receiving the letter, councelor Ninks wrote this incident to further interfear with Diehl's right to talk with his son.

C. James Blount who is referenced as a relevant probation officer is not Diehl's probation officer and admits he has no knowledge of Diehl's case (Exhibit 4).  Diehl, not being on supervised release, doesn't have a probation officer.

D.   Supervised Release begins upon release form imprisonment as 18 U.S.C. § 3583 makes clear.  Exhibit 5, 6, and 7), as does case law.

E.   Other similarly situated inmates sentenced for 18 U.S.C. § 2251 at U.S.P. Tucson are not being subjected to this prejudicial retaliation.  Those individual's that have shown Diehl their commitment orders, and which read just like his, are permitted by THIS staff to talk with their children.

E 2

**RESPONSE TO INMATE REQUEST TO STAFF**
**INMATE: DIEHL, David**
**REGISTER NO: 53214-018**
**UNIT: 1A**

This is in response to your correspondence addressed to
the Regional Director, dated November 25, 2013, which was
forwarded to this office on December 24, 2013, for review and
response.  In your letter you request to have your phone
unblocked so you may speak with your family.

A review of this matter revealed the Disciplinary Hearing Officer
conducted a rehearing on March 13, 2013, for the prohibited act
of code 297/Use of Telephone for abuses other than Criminal, and
reduced the charge to a code 327/Contacting the Public without
Authorization.  You were sanctioned to 60 days disciplinary
segregation, one year loss of telephone, and a $100.00 monetary
fine.  On November 18, 2013, you were found to be in violation of
code 201/Fighting with Another Person and sanctioned to an
additional 180 days loss of telephone privileges.  You are
currently on phone restriction until March 5, 2015.

Paul Copenhaver, Warden                    Date  12/27/13

E3

## DHO

Mrs Phillips                                        11-5-13

I have been in the SHU since Oct 27 waiting for charges to be brought against me so I can proceed with DHO.

Staffs intention is to prevent me from ~~communication~~ communicating with the courts and my family.

I am flat asking to talk to law enforcement because the warden, SIA Mendez, Team Hansen and case manager Nink are engaged in outragous criminal acts.

1) My mail is being stolen, legal and other.
2) They refuse to allow me access to the law library
3) they refuse to restore my phone privileges.

Those mentioned above have commited crimes against me and my family and now seek to prevent a civil suit. They are ruining my direct appeal with the 5th Circuit.

I beg you to stop this assault of my constitutional rights ~~by~~ by an absolute criminal staff.

David A Diehl
53214018

31

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Diehl David A | 532 14018 | B1 | USP Tucson |
|-------|---------------|-----------|------|-----------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

I have a legitimate and valid DISTRICT court order in place stating knowone is to block my phone calls to my son, The court order which has been presented to Lt. Cooper also says knowone is to block my mail to him. I do not have to proove this order is valid. It is valid. My attorney has contacted the federal prosecutor Matt Devlin in my case who has confirmed there is no federal restrictions involving my family. This block represents nothing more than harrasment by the FBI. I have a right to talk to my son per court order.

~~1-20~~ 1-25-2017

DATE

David a Diehl

SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 1077444-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN

PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

32

The FBI was apparently contacted by my ex-wife who said I was calling to much or at the wrong time. I dont believe she mentioned any grievance that should have prompted an investigation in the first place. This fact is significant because it shows their actions are retalitory, illigitimate and harrasing. They I believe are punishing me for appealing my case.

I have never made any threats or anything that could be percieved as such during phone calls. Also my ex wife could have and should have voiced any problem of this nature to her attorney who of course would have rooted them to my attorney or the district court that has jurisdiction of this matter.

Futher the FBI and Admiral prosecutor attended my custody hearing and did not move to influence it in any way.

I hope this institution recognizes the importance of a man being able to have a relationship with his family and children.

I want to say my ex-wives motivation for this action is to prevent information flow between my son and I. Not only is she herself in contempt of court but her actions may represent a direct threat to my sons well being and safety. It appears the FBI has assisted her in this goal.

...case do not involve yourselves in this civil matter.

33

USPS.com® - Track & Confirm

A-1

Page 1 of 1

E5

English       Customer Service       USPS Mobile                                    Register / Sign In

**≡USPS.COM**

Search USPS.com or Track Packages

Quick Tools                Ship a Package       Send Mail       Manage Your Mail       Shop       Business Solutions

# Track & Confirm

GET EMAIL UPDATES      PRINT DETAILS ›

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 7012047000166768704 | | Delivered | May 21, 2012, 8:45 am | WASHINGTON, DC 20534 | Certified Mail™ |
| | | Arrival at Unit | May 21, 2012, 6:18 am | WASHINGTON, DC 20018 | |

**Check on Another Item**

What's your label (or receipt) number?

Find

LEGAL                    ON USPS.COM                 ON ABOUT.USPS.COM            OTHER USPS SITES
Privacy Policy ›          Government Services ›        About USPS Home ›            Business Customer Gateway ›
Terms of Use ›           Buy Stamps & Shop ›          Newsroom ›                   Postal Inspectors ›
FOIA ›                  Print a Label with Postage ›  Mail Service Updates ›       Inspector General ›
No FEAR Act EEO Data ›   Customer Service ›           Forms & Publications ›       Postal Explorer ›
                         Site Index ›                 Careers ›

Copyright© 2012 USPS. All Rights Reserved.

✱ refile — original phone shot



Exhibit 11

E 52
4

Remedy Coordinator
F.B.O.P.
Bureau of Prisons

320 First St. N.W.

Washington D.C. 20534

— Legal Mail —

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

7011 1150 0000 0262 7737
7011 1150 0000 0262 7737

Sent To
Remedy Coordinator
Federal Bureau of Prison
Street, Apt. No.; or PO Box No. 320 First St. N.W.
City, State, ZIP+4 Washington, DC 20534

PS Form 3800, August 2006    See Reverse for Instructions

Z 857734
45550

35

A2-5

BP-A0148
JUNE 10                          INMATE REQUEST TO STAFF CDFRM          Cooper

U.S. DEPARTMENT OF JUSTICE                           FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: 3-20-2012 |
|---|---|
| Mr. Peninston | |
| FROM: David Diehl | REGISTER NO.: 53214.018 |
| WORK ASSIGNMENT: | UNIT: B1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

I want to file a formal complaint
against Lt. Cooper for harasment. Please
tell me the Procedure. He has Personally
had my Phone access to my son Cancelled
without any basis whatsoever for doing so.
He is in violation of Texas State laws
and BOP Policy. He has lied Continously
has to the cause and statements made.

**(Do not write below this line)**

DISPOSITION:

| | |
|---|---|
| Signature Staff Member | Date |

Record Copy - File; Copy - Inmate

PDF                          Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Case 4:13-cv-01996-JAS   Document 1   Filed 05/2017   Page 35 of 125

10
E7

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

A2-3          Cooper

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **Diehl   David   A.**      **532 4018**    **131**    _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.         UNIT          INSTITUTION

Part A - REASON FOR APPEAL        | Sensitive |                      53214-018

Attached to this form is a email from the Warden
substantiating that the phone block to my son is __not__
a BOP Issue. Also attached is a email to my federal
appointed attorney indicating she had nothing to do
(my ex-wife)
with the phone being blocked. The reason it was block
was a Lt. Cooper and my case worker Mr. Pendleton
read my PSR and decided to punish me by taking my
son from me.

                         Continued...

**4-3-2012**                              _David A Diehl_
DATE                                      SIGNATURE OF REQUESTER

Part B - RESPONSE

_____                        _____
DATE                                   REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

Part C - RECEIPT
                                              CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION
SUBJECT: _____

_____                        _____
DATE                                   SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN IVN                                                            BP-230(13)

37

On Jan 23-2011 I had a discussion with Lt. Cooper about the phone block and he told me and my attorney on the phone that I would have to proove that my legitimate custody court order that was less than six months old was still valid. After my attorney pointed out to him that of course its still valid he changed the story to indicate it was the federal court I needed to get proof from. My attorney told him and showed him there were no limitations on me talking with my son by the federal court. Mr. Cooper has admitted he put the block on for reasons that have absolutely nothing to do with any valid application of section 5264.08. "You were calling on the wrong days". That is why he did it. Mr. Cooper is trying to enforce a domestic court order he knows absolutely nothing about and has no business interfearing with. After I filed a bp8 about this I was called into Mr. Pendletons office(my case manager) and threatened. I was told by him that I was a control freak and I wanted to control my ex-wife. I was told by him that I should leave my son in peace.

I dont think that any of this is appropriate. For 1 year in county jail I talked to my son bi-weekly and for the first month or so at USP Tucson(until the block) I did the same thing. I need this harrasement stopped or I need to be transfered out of USP Tucson. Knowone else here I know is being put through anything like this.


David A. Diehl, 53214018

Inmate:       INMATE DIEHL, David
Register #:   53214-018

This is in response to your Inmate request to staff dated April 27, 2012, wherein you allege staff misconduct.   Staff conduct is governed by Program Statement 3420.09, <u>Standards of Employee Conduct</u>.   Staff members are held to a high standard of integrity and are obligated to conduct themselves in a professional manner.   The BOP takes allegations of staff misconduct seriously.   Your allegations regarding staff misconduct have been thoroughly reviewed and have been determined to be unfounded and without merit.

I trust this addresses your concerns.

_____                    05-31-2012
Craig Apker                                Date
Complex Warden

cc:     Central File

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal   E8

A2-2                                          Cooper

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Diehl, David , A__  __532.14018__  __131__  _____
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.         UNIT         INSTITUTION

**Part A - REASON FOR APPEAL**

Enclosed is a copy of a sensitive complaint filed against Mr. Pendleton (my case worker) and Mr. Cooper (SIS). I received no response from Regional so that is why it is not included. Since the filing of the forms I have had attitional problems as indicated on the attached form.

__5-8-2012__                          __David A Diehl__
DATE                                  SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____    _____
DATE                                  GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE            CASE NUMBER: _____

**Part C - RECEIPT**                  CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____    _____
DATE                                  SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN                              ✺ PRINTED ON RECYCLED PAPER                      BP-231(13)
                                                                                      JUNE 2002

Central office Remedy Appeal          continued . . . . .

Two additional things have happened since I a filed my appeal
with regional. I was called into Mr. Pendletons office(my case
worker) in mid April and introduced to the case worked that is
taking over for him. Mr. Pendleton trashed me in front of this
man and lied about me non-stop. Mr. Pendleton started quoting
lines from my sentencing transcripts that had been sent to me
by my attorney and marked as legal mail. He clearly had opened
the legal mail and read it. I notified the Warden immediately
of this matter.

In addition I am in a civil dispute with my ex-wife for her
being in contempt of court. Based on comments from Mr.
Pendleton I believe he is conversing with her. It would be a
serious matter if he is revealing private conversations
between my attorney and my self to her.

I also strongly believe my mail to my son has been
intercepted, read and possibly not forwarded in contradiction
to court orders. This harassment has to stop. I state there is
no cause for any of this. Please assist me.

Mr. Mendez,                          5-22-2013


I would like to speak with the FBI regarding what I consider to be a criminal act committed by my Unit Manager Hansen, counselor Ninks, DHO hearing officer Mrs Unruh, and potentially other unknown individuals.


1. These individuals have conspired to violate a Texas State court order.

2. These individuals have conspired to undermine Federal court orders.

3. These individuals have knowingly mis-used the BOP remedy process to violate the law.

4. These individuals have undermined the DHO hearing process, and lied to the DHO officer about the nature of the charges against me.

5. These individuals have likely stolen my United States mail

6. These individuals have interfered with my ability to email my family and other individuals for no reason other than harassment.

7. These individuals have knowingly, with recklessness and malicious intent interfered with my constitutional right to due process including access to the courts.

8. These individuals may have interfered with my ability to conduct personal finances, thereby causing a forclosure on my house.


A Bivens law suite is not the proper mechanism for relief. A crime has been committed against the state of Texas,

E 10

Mr. Mendez,                          5-24-2013

    You asked me to write you a letter concerning why I
want to talk with the FBI. I want to state for the record that
I am in no danger, and I don't protection. The matter I need
to discuss with the FBI impacts my case in a significant
manner and is very time sensitive. It is a private matter, and
I prefer not to disclose any details.

David A. Diehl, 53214018

E11

United States Department of Justice
Federal Bureau of Prison
Western Regional Office
7338 Shore line Dr.
Stockton, CA 95219

Mr Juan D. Castillo,

    Sir on 9-16-13 you ordered Remedy Id
737198-R1 changed from a 297 to a 397.
My phone privelages were taken for 2 years
based on the 297.
Staff, team in particular has had well over a
month to unblock the phone and restore my
loss of good time and fine. They have not.
Its very sad what staff have done here. They
accused my wife of asking for the black in the
first place which turned out to be a lie. They
then refused to unblock it after a state judge
forced my ex to write a letter to fix the
problem. I cant believe how corrupt the staff
is here. I include case manager Nink, unit
manager Hansen and SIA supervisor Mendez
in that remark. They abuse their power and
position and have caused me and my family
a great deal of harm.
I hope you can stop the harrassment I have
been put through since arriving here. I

44

E 11-2

further ~~than~~ your will will be carried out
and they will unblock my phone. My son
has not talked to me in two years as a
result of this nonsense.
It has also seriously impacted my direct appeal
with the Fifth Circuit.

Sincerely,
David Diehl, 53214-018
USP Tucson
PO Box 24550
Tucson, AZ 85734.

E12

674440-R1
USP Tucson

This is in response to your Administrative Remedy Appeal of the
Warden's decision dated March 23, 2012, in which you claim staff
are prohibiting you from having contact with your son.
Specifically, you allege that staff have blocked the telephone
number to your ex-wife who has custody of your son.  You contend
that staff actions are in violation of your court order which
designates the times you can call your son.

Your appeal has been investigated.  Our review of this matter
reveals the Warden adequately addressed your complaints in his
response.  Though a specific number has been blocked, you are
not on telephone restriction. Program Statement 5264.08, Inmate
Telephone Regulations, states, "The Associate Warden has
authority to block a number on an inmate account in a case-by-
case determination.  In such cases, the Associate Warden or
designee must notify the inmate of an administrative block,
ordinarily within five calendar days following the denial or
removal of the number."  Documentation has been provided by the
Special Investigative Supervisor from the United State
Penitentiary, Tucson, AZ, which confirms that your calls were
blocked at the request of your son's legal guardian.  Further,
evidence shows that your calls were of a nature which threatened
the safety, security or the protection of the public.  Contact
with your son has not been prohibited as you possess other means
of communication.  This response is provided for informational
purposes only.

If dissatisfied with this response, you may appeal to the Office
of the General Counsel, Bureau of Prisons, 320 First Street,
N.W., Washington, D.C., 20534.  Your appeal must be received in
the General Counsel's Office within 30 calendar days of the date

_5/2/12_
Date

Robert E. McFadden, Regional Director

**FILED UNDER SEAL**

46

E13

| BP-A0308 | **ADMINISTRATIVE DETENTION ORDER** | **U.S. DEPARTMENT OF JUSTICE** |
|---|---|---|
| AUG 11 | | **FEDERAL BUREAU OF PRISONS** |

TUCSON USP
Institution

Date/Time:   08-28-2013 03:19

TO     : Special Housing Unit Officer

FROM   : SYLVIA, LIEUTENANT _____, (Name/Title)

SUBJECT : Placement of _____ DIEHL, DAVID ANDREW _____, Reg. No. 53214-018 _____, in Administrative Detention

___X___ (a) Is Pending a hearing for a violation of Bureau regulations;

_____ (b) Is Pending investigation of a violation of Bureau regulations;

_____ (c) Is Pending investigation or trial for a criminal act;

_____ (d) Is to be admitted to Administrative Detention

        _____ (1)   Since the inmate has requested admission for protection;

        I hearby request placement in Administrative Detention for my own protection.

        Inmate Signature/Register No.:_____

        Staff Witness Printed Name Signature:_____

        _____ (2)   Since a serious threat exists to individual's safety as perceived by staff, although person

                has not requested admission; referral of the necessary information will be forwarded to the

                UDC/DHO for appropriate hearing.

_____ (e) Is Pending transfer or is in holdover status during transfer.

_____ (f) Is Pending classification; or

_____ (g) Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative

        Detention by the Warden's designee.

It is this Correctional Supervisor's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because*

SIS INVESTIGATION (POSSIBLE FIGHT) _____

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy
of this Order on

(date/time) _9-5-13 wop__

Staff Witness Signature/Printed Name _____     Date _5-5-3_

* In the case of DHO action, reference to that order is sufficient. In other cases, the Correctional supervisor will make an independent review and decision, which is documented here.
Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy - Central File

Prescribed by P5270     (Replaces BP-308(52) of JAN 1988.)

①                                                                          E14

DD I am sorry all this is gowing bad for
You! but You been knowing the kind of sorry!
Mother fuckers You are dealling With on this
Camp! I think Hason foundout about Your Ordeal
By a snitch in the dorm and he lived real close
To Your Room at the dorm. Hanson Went in a legal
Mail I had sent to tuson Federal Court house asking
For a investigation on the asult by the officer. In
The letter had Your last kite to me! for the DA to
look at. Hanson told Me he read and then gave it
To Mendez SIS. They took the part! You said! I
thought You was hart! and put it in the Warden
Report! becouse I wrote Cota up! for this asult. the
Took the middle of Your sentence and maid it out
Like You! was saying We got in a fight to counter
React the BP-9 Asult I put on Cota. I cussed
Hanson at for gowing in my legal! It had a full
Report and pictures of the door oF B-1 with the
Camera Next to the door that I hand drew!
Pino! will not bring no! BP-9's to me now! and
I Just cussed him out also! They are gowing in my
Mail and stoped a latter! I sent to my Old Jaydie
About the asult also! One of my Ex cellies from
My Room in the shu was given a letter to read
To those in the Dorm (white boys!) Telling how!
You and I did not get into a fight! and it told
How! Brokab droped a kite to the police on
You! Your Main Concern is hason! him! and
Mendez. is leins and pulling all they can to

E14

Get You! and Me! off! this camp and
That is What is next. Nink told Me! they!
Are gowing to transfer me! by Janvary! and
By the way things are gowing for You! It looks
Like YOU! will be on the Same bus ride!.
They may be trying to send me to a prison to get
Me stabed becouse of me! having to be on this
Prison grounds they know! if it is a political prison
Then I will have to fight for my life! and I will!
Do! Just that!.. I sent a letter to the American
Cival Union in New York asking for a lawsuite
about my gun Case and a law suite on this cota
Asult!. becouse they are refusing to bring me my
Next step on the asult and will not let me write
up! Hanson or Mendeze for gowing in my legal
Mail. they hald a fake DHO Hearring on me! with that
Vglay nasty looking short bitch! they would not show!
The outside video!! of B1 at the door way Glass!
And they would not let me question Cota and the
other witness I called. Lt brown! lied and said he!
Did not recall much! He said that to the DHO misget!
Laydie!. she maid me wait in the hall way as she talked
To Lt brown and would not allow! me to ask him
Nothing!. They found me guilty of a threat first on
Cota with out any proof at all, Just what cota said! and
Now! they have me on the fighting with another Inma
Charge and You! Know! they will make that stick also!.
They want me off this Camp becouse I am not takeins
Ther shit and I'm writeting them! up also. So! that
Is about it. They all dodge me, door on walk threw Now! ..49

It Just may be the best thing for us! to be Sent away from this Prison! to talk to wind about it. he may have help!

It got Nothing! out of me for his ASS!. He knows Mendeze will not talk to me.! They are after Mail. Union fits on this Gun and this Cota.

E 15

BP-S288.052
SEP 05

**INCIDENT REPORT** B 129

CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

## Part I – Incident Report

| 1. Institution: | | | |
|---|---|---|---|
| 2. Inmate's Name<br>Diehl, David Andrew | 3. Register Number<br>53214-018 | 4. Date of Incident<br>08-27-2013 | 5. Time<br>10:45 P.M. |
| 6. Place of Incident<br>Unit B-1, cell B01-215 | 7. Assignment<br>Unassigned | 8. Unit<br>Unit B | |
| 9. Incident:<br><br>Fighting with another person | | 10. Prohibited Act Code<br><br>201 | |

11. Description of Incident: (Date: <u>10-22-13</u>  Time: <u>10:21 AM</u>  Staff became aware of incident)
1 On August 27, 2013, at approximately 10:45 p.m., Staff assigned to Units B-1 and B-2,
2 responded to a Medical Duress alarm, activated from cell B01-215, occupied by inmates
3 David Andrew Diehl, Reg. No. 53214-018, and Odell Gene Golden, Reg. No. 28415-057. Inmate
4 Diehl was standing at the door and inmate Golden was on the upper bunk underneath a
5 blanket. Staff detected bruising and what appeared to be dried blood on inmate Golden's
6 face and hair. Blood was also discovered on the blanket, on a makeshift string, and on
7 the floor. Both inmates, who were placed in hand restraints, ultimately complied with
8 staff orders, and escorted to the SHU. On August 28, 2013, inmates Diehl and Golden were
9 medically assessed, and treated with first aid for minor injuries. Inmate Diehl was noted
10 having a scratch on his abdomen and inmate Golden was noted having a blackened right eye,
11 a minor laceration on his forehead, and a minor laceration to the top right of his right
12 shoulder. On October 22, 2013, at 10:21 a.m., a comprehensive SIS investigation concluded
13 that on August 27, 2013, at 10:45 p.m., inmates Diehl and Golden fought with each other
14 over a disrespectful issue. This was based on inmates Diehl and Golden both providing
15 conflicting statements, inmate Diehl's initial statement that they were "horsing around
16 and wrestling", supporting memorandums, e-mails, photographs and medical assessment forms
17 reflecting injuries indicative and consistent with two persons being involved in a fight.

| 12. Signature of Reporting Employee | Date and Time<br>10-22-2013 / 10:31 AM | 13. Name and Title<br>F. Alvarez, SIS Lieutenant |
|---|---|---|
| 14. Incident Report Delivered to above Inmate By<br>(Type Name/Signature) | 15. Date Incident<br>Report Delivered<br>10-22-13 | 16. Time Incident<br>Report Delivered<br>1015 |

## Part II – Committee Action

17. Comments of Inmate to Committee Regarding above Incident


18. A. It is the finding of the Committee that you:

___ Committed the Prohibited Act as charged.

___ Did not Commit a Prohibited Act.

___ Committed Prohibited Act Code(s) _____

B. ___ The Committee is referring the charge(s) to the DHO for further Hearing.

C. ___ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision Based on Specific Evidence as Follows:


20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)


21. Date and Time of Action _____ (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceeding.)


Chairman (Typed Name and Signature)        Member (Typed Name)        Member (Typed Name)

Original – Central File Record; Yellow – DHO; Blue – Inmate After UDC Action; Pink – Inmate within 24 Hours of Part I Preparation

New one E15
Signed 3-20-13

# DISCIPLINE HEARING REPORT
## USP TUCSON

| INCIDENT REPORT NO.: 2331081 | HEARING DATE AND TIME: 09-07-2012 1445 hours | |
|---|---|---|
| INMATE NAME: Diehl, David | REG. NO.: 53214-018 | UNIT: B-1 |
| OFFENSE CODE(S): 197 | DATE OF OFFENSE: 11-23-2011 | |

SUMMARY OF CHARGE(S):
   Use of the Phone for Illegal Purpose

## I.   INVESTIGATION-NOTICE OF CHARGES

Copy of the Incident Report (Advance Notice) was given to the inmate :

| By (Staff Member):  F. Turner, Lieutenant | Date:   08-08-2012 | Time: 0950 HRS |
|---|---|---|

## II.   UDC INITIAL HEARING

UDC hearing was held and the inmate was advised of his rights  and received copy of the advisement of rights form by:

| Name: G. Cunes, Case Manager | On (Date): | 08-14-2012 | At (Time): | 1330 |
|---|---|---|---|---|

**STAFF REPRESENTATIVE:**

| Inmate requested a staff representative : | Name: | Mr. Clark, Asst. Education Supv. |
|---|---|---|

Staff Representative appeared and provided the following statement:
I question the use of 197 because it states an illegal act and he states he has a civil order allowing him contact with his son.  I don't understand the difference between phone abuse and 197.

| Staff Representative was appointed: | Name: | | |
|---|---|---|---|
| Inmate waived his right to request a staff representative: | Yes: | X | No: |

Staff Representative was unable to appear; inmate was advised of his right to postpone the hearing to obtain another staff representative with the result that:

| Proceed without staff rep. | | Postpone to obtain another staff rep. |
|---|---|---|

## III.   PRESENTATION OF EVIDENCE

**WITNESSES:**

| Inmate requested witnesses and the following witnesses provided statements: | N/A |
|---|---|

**INMATE WITNESS**
Name/Number: Tashbook, Reg. No. 00352-111 (will testify that there are no blocks on my sons phone)
Statement:  DHO determined inmate Tashbook's witness statement would be irrelevant.  After questioning Diehl further about what Tashbook would testify to, Diehl acknowledged that inmate Tashbook was not a witness to the incident, that he wanted him to testify because Tashbook handled his last appeal.  He acknowledged that Tashbook had no specific information related to this incident.

Name/Number:
Statement:

**STAFF WITNESSES**
Name/Position:
Statement:

| Unavailable witnesses provided written statements : | Yes | | No | |
|---|---|---|---|---|

51

# DISCIPLINE HEARING REPORT
## USP TUCSON

The following witnesses provided written statements:

Name:
Statement:

The following witnesses were not called for the following reasons:

## DOCUMENTARY EVIDENCE:

The following documents were considered:

Written statement claiming that he never received notice why his son's number was blocked.  He further questions that the incident report did not indicate the times and numbers called that he is being written up for.

Order in Suit to Modify Parent Child Relationship filed July 29, 2011, which provides that inmate Diehl is permitted to contact his son at 6:00 PM Central Standard Time on the 1st, 3rd, and 5th Sunday of each month by telephone.

Judgment in a Criminal Case for Sexual Exploitation of a Child/Production of Child Pornography signed October 25, 2011, which orders that Diehl is not to have contact with any of victims without prior written consent of the probation officer/or **any** child under the age of 18 except in the presence and supervision designated in writing by the probation officer.

Order on Movant's Motion for Enforcement and Motion for Contempt dated July 6, 2012, ordering Keri Jenkins to submit written correspondence to the BOP to unblock son's number.

Written correspondence dated August 8, 2012, from Jessee Shifflett, US Probation Officer stating Judge Yeakle (Criminal Judge) has agreed to defer to the civil order in reference to authorized contact with son.

Written correspondence in response to inmate Diehl's inquiry to James Blount, Supervisory U.S. Probation Office which states that conditions of supervised release take affect beginning on the day it is issued and applies while incarcerated.  The correspondence further clarifies the definition of no contact with a minor in the sentencing orders.

Copy of November and December 2011 calendars marked to identify what days he is permitted contact and what days contact was made outside the dates authorized in the civil divorce decree.  The calendar identifies what days he called and how long the call was connected.

Copy of the TRUFONE phone record

The DHO utilized no confidential information in this hearing.

## INMATE STATEMENT:

| Inmate : | Admits | | Denies | XX | Neither | |
|---|---|---|---|---|---|---|

52

# DISCIPLINE HEARING REPORT
## USP TUCSON

Inmate Diehl, David, Reg. No. 53214-018 , stated he received a copy of the incident report.  Inmate Diehl was read his rights by the DHO and stated that he received his rights by the UDC and understood his rights.  Inmate Diehl indicated he was ready to proceed with the hearing.

Inmate Diehl stated that he received his rights by the UDC and understood his rights.  Inmate Diehl stated that they investigated that he was calling his son on the wrong days against the state civil court order.  Diehl stated he was preparing to go to court on a 2241 in reference to his calls being blocked and he was unaware of the prohibition on contacting his son.  He stated he was sentenced on October 2011.  He stated at inmate Tashbook's recommendation he initiated contact with Mr. Blount in Probation for an opinion on whether terms of supervised release apply while incarcerated and received a response back.   Hearing postponed to allow inmate Diehl to obtain copy of letter from probation.

09/07/12 statement:  Inmate Tashbook was not a witness to this incident.  I called him as a witness because he assisted me on my first appeal.   None of the calls were made outside the dates I am allowed by my civil order.  I don't know why this is a 197 because this is a civil matter not criminal.   A 197 involves criminal activity.  I have an issue with the time frames which is 7 months after the calls were made.  I sought clarification from the court that I am not barred from talking to my son.  The Federal Judge in his letter deferred to the state civil order.  Yes my conviction occurred after the divorce so the civil order was prior to my conviction.  I don't have an amended court order, it was an agreement between me and my ex.  My son was not a victim and was not mentioned in the sentencing order.  Yes my defense is based on the fact that the civil order gives me permission to contact my son on the 1st, 3rd, and 5th Sunday of each month.  Inmate Diehl admitted that he had not received written permission from probation to communicate with my minor son.

| IV. | FINDINGS OF THE DHO |
|---|---|
| XX | The act was committed as charged |
|  | The following act (codes) was committed: |
|  | No prohibited act was committed: |

| V. | SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS |
|---|---|

53

# DISCIPLINE HEARING REPORT
## USP TUCSON

The DHO finds on November 23, 2011 through December 28, 2011, inmate Diehl, David, Reg. No. 53214-018, committed the prohibited act of Use of the Phone for Illegal Purposes, Code 197.   To make this finding the DHO relied on the following:

The reporting officer's written account that on July 24, 2012 at 2:30 pm staff were investigating claims made by inmate Diehl, David #53214-018 that he was unjustly being prohibited from contacting his son because he stated that he has a custody agreement with his ex-wife.  At 4pm I pulled a phone list and found that Diehl had been contacting his son outside of the times he was given in the custody agreement given to him by the civil courts.  He was also ordered in his commitment to have no contact with anyone under the age of 18.  He has also violated this order by calling his son on several occasions.  Diehl's contention is that he is abiding by the civil agreement but on November 23, 27, and 30th and December 2, 6, 11, 14, 15, 22, 25, 26, and 28 he violated the civil agreement.  He also violated the federal provisions which specifically state that he is to have no contact with any minor without written permission from his probation officer which he does not have at this time.  This is a re-write of the original incident report.

The DHO considered inmate Diehl's denial during the DHO proceedings that he is not guilty of committing Code 197 because he was authorized by the civil order to contact his son.  The DHO also considered his defense that the terms of his supervised release apply only upon his release not while he is incarcerated and furthermore he should not be charged with a Code 197 because his son was not a victim and was not mentioned in the sentencing orders.  The DHO finds his denial is without merit.  A review of the documentation shows that inmate Diehl was granted permission in his divorce decree dated July 29, 2011, to contact his son via phone on the 1st, 3rd, and 5th Sunday of the month prior to his conviction.  The Judgment in a Criminal Case signed October 25th, 2011, states in the terms of Supervised Release that inmate Diehl is to have no contact with **any** minor except in the presence and supervision of an adult specifically designated in writing by the probation officer.  The DHO finds these were the conditions in place at the time of the offense November 23, 2011.  The DHO finds by inmate Diehl's own request for clarification to the Probation Office in Arizona the terms of supervision apply while incarcerated.  The DHO also considered the written correspondence dated August 8, 2012, from Jessee Shifflett, US Probation Officer stating Judge Yeakle (Criminal Judge) has agreed to defer to the civil order in reference to authorized contact with son.  The DHO finds the decision does not apply towards this offense because it was after the date of the offense.  Regardless of the date, the DHO relied on a copy of the calendar showing the dates he made calls and finds he was outside the parameters of the civil order and the days he is allowed contact with his son.  The DHO finds inmate Diehl violated the state Civil Order and the Federal Court Order (a criminal act) when he used the phone to contact his son outside the dates contained in the civil order thereby supporting code 197.

In addition the DHO considered his staff representatives statement that he wasn't sure code 197 fit the act.  The DHO explained the reasoning that a violation of a court order is a criminal act and he used the phone to violate the court order.  The Staff Rep acknowledged the understood the charging code and stated he had no further issues.  The DHO did not call inmate Tashbook as a witness, by inmate Diehl's own statement his witness was not present and had no personal information related to this incident.  The DHO deemed his requested witness testimony that inmate Tashbook assisted him on a previous appeal irrelevant to this charge.

Based on the greater weight of the evidence, the DHO finds inmate Diehl committed the prohibited act of Phone Abuse (Criminal), Code 197.

# DISCIPLINE HEARING REPORT
## USP TUCSON

Reconsideration of the evidence dated 03/13/2013:

The DHO reconsidered the evidence in accordance with the appeal decision dated November 27, 2012. The DHO re-evaluated the existing evidence and finds the evidence supports a finding that inmate Diehl committed the prohibited act of Conduct that Disrupts or Interferes with the Security or Orderly Running of the Institution, Code 299, most like Use of the Phone for Abuses other than Illegal Purposes, code 297 when he was contacting his son in November 2011 to December 2011. As identified above, the Judgment and Commitment Order in a Criminal Case signed October 25, 2011, states that inmate Diehl is to have no contact with **any minor** except in the presence and supervision of an adult specifically designated in writing by the probation officer. Being inmate Diehl is a registered sex offender of minor children, his continued attempts to contact a minor child is considered a violation of his sentence. Specifically, inmate Diehl, a convicted sex offender of minor children, made contact with a person under the age of 18 in violation of the Judgment and Commitment Order, page 3. The DHO relied on information contained in his Judgment and Commitment Order on page 3, that he shall have no direct or indirect contact with **any victims** named in the presentence report without prior written consent of the probation officer. Even though his son was not specifically named, the DHO was aware during the initial hearing that inmate Diehl's minor son was one of his victims identified in the PSI as John Doe.

The DHO also considered and relied on the fact that inmate Diehl made contact with his minor son outside the dates approved in the civil court order. However, on August 8, 2012, the Sentencing Court advised that inmate Diehl may have contact with his son as stated in the District Court, Travis County, Texas, Civil Order dated July 29, 2011. The DHO finds that although the Sentencing Court clarified their position on inmate Diehl's contact with his minor son, it does not change the fact that inmate Diehl contacted his son outside the dates approved in the Civil Order.

The DHO further clarifies that the response to inmate Diehl's inquiry to the Probation Office addressed above in Section 5, paragraph (#3), page 4, provides that he was forbidden to contact his son as the terms of supervision apply during incarceration.

The DHO also amended the original report to correct the spelling of inmate Tashbook's name. The original report reflected Tashbrook. Another typo in section V, paragraph 3 was corrected to reflect the correct spelling of inmate Diehl's name.

Based on the greater weight of the evidence there is some evidence to support that inmate Diehl committed the prohibited act of Code 299 Conduct that Disrupts or Interferes with the Security or Orderly Running of the Institution most like Code 297, Use of the Phone for Abuses other than Illegal Purposes .

3/20/13-Amended Report to correct Monetary Fine amount from $200.00 to $100.

| VI.   SANCTION OR ACTION TAKEN |
|---|

197

D/S:  60 days
Disallow GCT:  41 days
Forfeit GCT:  40 days
Lose Phone: 2 years
Monetary Fine: $100.00

Reconsideration 3/13/2013:

299 most like 297

D/S: 60 days (already served)
Disallow GCT: 27 days
Forfeit GCT: 20 days
Lose Phone: 2 years (from date of original hearing)
Monetary Fine:  $100.00

Case 4:13-cv-01996-JAS   Document 126   Filed 05/30/17   Page 54 of 125

## DISCIPLINE HEARING REPORT
### USP TUCSON

#### VII. REASON FOR SANCTION OR ACTION TAKEN

The behavior on the part of any inmate to use the telephone to conduct criminal activity violates Federal Bureau of Prisons regulations. The use of a telephone while incarcerated is a privilege, not a right. Knowing and abiding by these procedures is incumbent upon you, if you wish to use the telephone while serving out your sentence. The DHO imposed the sanctions of Disciplinary Segregation, Monetary fine and loss of Phone due to the seriousness of the act. PLRA exemplary compliance requires the DHO to impose the disallowance/forfeiture of GCT. The sanctions imposed by the DHO were taken to let you know that you will be held responsible for your actions/behavior at all times.

#### VIII. APPEAL RIGHTS

The inmate has been advised of the findings; specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action directly to the Regional Director within 20 calendar days under the Administrative Remedy Procedures. A copy of this report has been given to the inmate.

#### XI. DISCIPLINE HEARING OFFICER

| Printed Name of DHO: | Signature of DHO: | Date: |
|---|---|---|
| V. PETRICKA, DHO | V. Petricka | 3/20/13 |

| Report delivered to inmate by: | Date: | Time: |
|---|---|---|
| S. Nink / CSO ~~Via Institution Mail~~ | 4/11/13 | ~~1600 Hours~~ 1100 |

56

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

E15

~~Fish+~~

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **Diehl David A.**    **53214018**    **SHU**    **USP Tucson**

  LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL** I am David Diehl am Appealing incident report No. 2506961. At approximately 10:45 pm, 8-27-13 I pushed the medical duress button because my cell mate, Golden was in pain from attempting to remove his own molar tooth. He had missed his dental appointment that morning (verifiable). Guards arrived, saw blood and _assumed_ there had been a fight. After repeatedly asking Golden if he fought, and getting a hostile no! officer Cota (following golden saying "Fuck off") shoved Goldens head into a structure. I had no damage at all, and <u>wasnt treated</u> by medical. I had a scratch on my abdomin from a basket ball game, days before. Further there was no comprehensive investigation, instead SIA Mendes announced to me "were shipping you", Prior to any investigation. There were no conflicting statements, golden maintained, Cota assulted him. Golden was not even under investigation for fighting, and I was

—————  **10-30-13**  See Attached    *David A. Diehl*
      DATE              SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

JAN - 3 2014

WESTERN REGIONAL OFFICE

_____        _____
     DATE                     REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: **763699-R1**

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____        _____
     DATE            SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

57

David ~~Case 4:13-~~ ... 250 6961 Attachment

~~that I was being~~ investigated for a threat assessment against a different inmate. Mitch Brokab with despite staffs missreplesentation was fired at the end of August! SIA Mendez and Unit manager Hansen, have fabricated this fight story because I filed a Habeus Corpus in the 9th District federal court for writing me a series of shots, and taking my phone unjustly as found by Region. I have been subjected to harrassment and vindiction by staff since arrival here. There simply was no fight. I didn't have a mark on me, we denied fighting, there was a reason for the blood, and Goldens injuries were caused by Cota. Golden wasnt even under investigation for fighting and Brokab reported his threat claim in August <u>NOT</u> <u>October</u>.

E15

# DHO Hearing    Nov 18, 2013

## Evidence requested, testimony denied

- I asked for the date Bolden was put under investigation for fighting and never received it. [The relevance is he said he was assaulted by Cota and that is what caused his damage.

- I asked for the date Brokab reported I threatened him. [The relevance is it was the reason I have been back here. This was communicated to me by Pino. Witness was present.

- I asked for a letter taken from my property sent to Golden by filing BP-8. [This letter proves staff altered evidence used in Goldens hearing on assault. ~~and the~~

- I have repeatedly tried to provide SIS with testimonial evidence and video evidence proving Brokab threatened me. [They are not interested in anything which proves the truth.

- Tried to get a copy of transfer requests which was entered prior to Diehl having any incidents on his record.

59

<u>Write up</u> :  Inconsistencies
In

4 "<u>Standing at door</u>" :  I was lying in bed

5 "Bruising and dried blood" :  There would be no
bruising or dried blood

7 "<u>Ultimatly complied</u>" :  Golden was assaulted.
this isnt mentioned

10 "<u>Scratch on his abdomen</u>" :  This is false, had old
scratch from basketball on
<u>Side</u>. No other damage

9-11 <u>Golden Damage</u> :  Golden claims he was assaulted.
by Cota not me.

12-13
<u>Comprehensive investigation</u> :  I wasnt interviewed,
no Physical proof. both
of us deny fighting.
Camera shows Cota assaulted
Golden

14
"Disrespect issue" :  Diehl ~~temp.~~ was trying to get
tylenol for Golden. Blood was from
tooth. He missed "Porting" appt.

15
Conflicting statements :  Golden said nothing and was
assaulted for it

17 Indicative Consistant :  Diehl had no marks, fans buzzed
wasnt experiencing Problems with Golden

60

E-15  302-139UAD
11-27-13

# DISCIPLINE HEARING REPORT
## USP TUCSON

| INCIDENT REPORT NO.: 2506961 | HEARING DATE AND TIME: 11/18/2013  12:30 P.M. | |
|---|---|---|
| INMATE NAME: Diehl, David | REG. NO.: 53214-018 | UNIT: B |
| OFFENSE CODE(S): 201 | DATE OF OFFENSE: 08/27/2013 | |

SUMMARY OF CHARGE(S): Fighting with another person.

## I.    INVESTIGATION-NOTICE OF CHARGES

Copy of the Incident Report (Advance Notice) was given to the inmate on:

| By (Staff Member): A. Gillespie, Lieutenant | Date: 10/22/2013 | Time: 5:05 P.M. |
|---|---|---|

## II.  UDC INITIAL HEARING

UDC hearing was held and the inmate was advised of his rights and received copy of the advisement of rights form by:

| Name: S. Pino | Date: 10/23/2013 | Time: 8:00 P.M. |
|---|---|---|

## STAFF REPRESENTATIVE:

| Inmate requested a staff representative : | Name: | N/A | | |
|---|---|---|---|---|

Staff Representative appeared and provided the following statement:  N/A

Staff Representative was appointed:        Name: N/A

| Inmate waived his right to request a staff representative: | Yes: | XX | No: | |
|---|---|---|---|---|

Staff Representative was unable to appear; inmate was advised of his right to postpone the hearing to obtain another staff representative with the result that:

| Proceed without staff rep. | | Postpone to obtain another staff rep. | |
|---|---|---|---|

## III. PRESENTATION OF EVIDENCE

## WITNESSES:

Inmate requested witnesses and the following witnesses provided statements:        N/A

INMATE WITNESS
Name/Number:
Statement:
STAFF WITNESSES
Name/Position:
Statement:

| Unavailable witnesses provided written statements : | Yes | | No | |
|---|---|---|---|---|

The following witnesses provided written statements:

The following witnesses were not called for the following reasons:

## DOCUMENTARY EVIDENCE:

The following documents were considered: Evidentiary photographs, medical documentation, inmate statements, SIS and staff memorandums.

The DHO utilized no confidential information in this hearing.

## INMATE STATEMENT:

| Inmate : | Admits | | Denies | XX | Neither | |
|---|---|---|---|---|---|---|

61

# DISCIPLINE HEARING REPORT
## USP TUCSON

Inmate Diehl stated he received a copy of the incident report.  Inmate Diehl was read his rights by the DHO and stated that he received his rights by the UDC and understood his rights.  Inmate Diehl indicated he was ready to proceed with the hearing.

Inmate Diehl made the following statement to the DHO; "my cellmate was trying to pull a loose tooth.  That's were the blood came from.  I didn't fight.  There is no evidence."

### IV.   FINDINGS OF THE DHO

| | |
|---|---|
| XX | The act was committed as charged. |
| | The following act (codes) was committed: |
| | No prohibited act was committed: |

### V.   SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS

The DHO finds on October 22, 2013 at 10:21 a.m., inmate Diehl, David, Register Number: 53214-018, committed the prohibited act(s) of Fighting with another person, Code 201.  To make this finding the DHO relied on the following:

*The reporting officer's written account that on August 27, 2013, at approximately 10:45 p.m., Staff assigned to Units B-1 and B-2, responded to a Medical Duress alarm, activated from cell B01-215, occupied by inmates David Andrew Diehl, Reg. No. 53214-018, and Odell Gene Golden, Reg. No. 28415-057. Inmate Diehl was standing at the door and inmate Golden was on the upper bunk underneath a blanket. Staff detected bruising and what appeared to be dried blood on inmate Golden's face and hair. Blood was also discovered on the blanket, on a makeshift string, and on the floor. Both inmates, who were placed in hand restraints, ultimately complied with staff orders, and escorted to the SHU. On August 28, 2013, inmates Diehl and Golden were medically assessed, and treated with first aid for minor injuries. Inmate Diehl was noted having a scratch on his abdomen and inmate Golden was noted having a blackened right eye, a minor laceration on his forehead, and a minor laceration to the top right of his right shoulder. On October 22, 2013, at 10:21 a.m., a comprehensive SIS investigation concluded that on August 27, 2013, at 10:45 p.m., inmates Diehl and Golden fought with each other over a disrespectful issue. This was based on inmates Diehl and Golden both providing conflicting statements, inmate Diehl's initial statement that they were "horsing around and wrestling", supporting memorandums, e-mails, photographs and medical assessment forms reflecting injuries indicative and consistent with two persons being involved in a fight.*

It is the decision of the DHO that you committed the prohibited act of fighting with another person, Code 201.  This decision is based on the statement of the reporting officer.  The DHO considered inmate Diehl's statement during the DHO proceedings that his cellmate was trying to pull a loose tooth and that's where the blood came from; there was no fight.  The DHO notes that although inmate Diehl denies the charges against him, he has provided no evidence to dispute the account of the reporting officer.  The DHO finds the staff member's statements and observations are credible and believable, as the staff members observations were made strictly in the performance of their duties and they have no reason to make up false accusations.

The DHO also reviewed and relied upon the SIS Investigation, photographs and injury assessments which note injuries to both Diehl and Golden consistent with being involved in a fight as well as staff memos all of which support the reporting officer's account of the incident.

The DHO noted no delay in your disciplinary process.

Based on the greater weight of the evidence, the DHO finds inmate Diehl, David, Register Number: 53214-018 committed the prohibited act(s) of Fighting with another person, Code(s) 201.

### VI.   SANCTION OR ACTION TAKEN

201
Disallow GCT: 27 Days
D/S: 15 Days
Lose Phone: 180 Days
Lose Commissary: 180 Days

# DISCIPLINE HEARING REPORT
## USP TUCSON

### VII.  REASON FOR SANCTION OR ACTION TAKEN

The action/behavior on the part of any inmate to become involved in a fight with any other inmate or person poses a threat to the health, safety and welfare of not only himself, but all other inmates and staff within the institution.  In the past, fights between two individuals have expanded to include others which created a larger problem for staff to resolve.  The sanctions imposed by the DHO; disciplinary segregation, loss of phone and loss of commissary were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

PLRA exemplary compliance requires the DHO disallow and forfeit GCT.

### VIII.  APPEAL RIGHTS

The inmate has been advised of the findings; specific evidence relied on, action and reasons for the action.  The inmate has been advised of his right to appeal this action directly to the Regional Director within 20 calendar days under the Administrative Remedy Procedures.  A copy of this report has been given to the inmate.

### IX.  DISCIPLINE HEARING OFFICER

| Printed Name of DHO: | Signature of DHO: | | Date: |
|---|---|---|---|
| **T. PHILLIPS, DHO** | J. Phillips | | 11-27-2013 |
| Report delivered to inmate by: | Date: | | Time: |
| Ant | 11·27·13 | | 5:00 Pm |

63

F 15

763699-R1
USP Atwater

You are requesting administrative relief regarding the decision of the Discipline Hearing Officer (DHO) on November 18, 2013, in which you were found to have committed the prohibited act of Fighting, Code 201, while confined at FCC Tucson.

On appeal, the appropriate reviewing official may approve, modify, reverse, or send back with directions, including ordering a rehearing, any discipline action of the Unit Discipline Committee or Discipline Hearing Officer, but may not increase any valid sanction imposed.  We are directing the DHO to reconsider and augment the matter referenced above.

After receipt of the final report, should you wish to further appeal this action, you must first submit your appeal to the appropriate level (institution level for UDC actions and regional office level for DHO actions).  You should also include a copy of this response with your appeal to explain any delay in filing.

This response is for informational purposes only.

If dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C., 20534.  Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

_1/10/14_
Date

JUAN D. CASTILLO, Regional Director

E | S

**U.S. Department of Justice**

**Federal Bureau of Prisons**

*Western Regional Office*

Office of the Regional Director

*Stockton, California 95219*

January 10, 2014

MEMORANDUM FOR PAUL COPENHAVEN, WARDEN
USP ATWATER

*I Recv'd  1-25-62*
*15 days later*

FROM:          Juan D. Castillo, Regional Director

SUBJECT:       David Diehl, Register No. 53214-018
               Incident Report No. 2506961
               Administrative Remedy No. 763699-R1

We are directing that the DHO reconsider and augment the matter referenced above in which inmate Diehl was found to have committed the prohibited act of <u>Fighting</u>, Code 201, while confined at FCC Tucson.

Upon our review, we found the DHO Report does not properly address the evidence presented by inmate Diehl.  Specifically, the DHO Report indicates inmate Diehl presented a written statement (documentary evidence), yet we found no evidence in the record indicating it was considered by the DHO.

In sum, the record shows the decision was based on the greater weight of the evidence without any discussion regarding the aforementioned evidence presented by inmate Diehl.  And, in light of the conflicting evidence, we find it appropriate for the DHO to address this issue. After having weighed all the evidence and rendering a decision, the DHO is to reissue a <u>new DHO report to the inmate.</u>  Inmate Diehl has been advised that the DHO will reconsider and augment his findings.

The DHO has been advised that this corrective action should be accomplished within 21 days of the date of this memorandum.

If you have any questions, please contact C. Cruz, Discipline Hearing Administrator (DHA).


cc:   T. Phillips, DHO, TCX
      C. Cruz, DHA, WXR

65

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

E15

Type or use ball-point pen. If attachments are needed, submit four copies. On copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Diehl David A.          532 14 018          1-13          USP Atwater

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**  Regarding Incident Report No. 250 6961. Region missed their deadline to respond. Please see the appeal I submitted to them for my claim. I wish to highlight that staff released me from the SHU on this "fight" shot in October then immediately re-arrested me the next day, claiming Mitch Brokab filed a "separatee" against me. This was a complete mis representation of the truth as Brokab filed the separatee in August. This shot should be dismissed as Mr. Odell was never even charged with fighting in August, and he claims he was assaulted by C/O Cota. See Region Appeal for details. The supposed fight allowed Mendez to continue to block my phone. See remedy 737 198-R1 which I have fought for 2 years. Note even after Region over road the 297 Phone shot USP Tucson refused to unblock the phone.

4-4-2014                    David A. Diehl

DATE                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
2014 APR 24  AM 9:58
WARDEN OFFICE
USP ATWATER

DATE                                          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 768699

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: Rop- Response

DATE                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

USP LVN

**66**

E15

Signed - 4-11-14

# DISCIPLINE HEARING REPORT
## USP TUCSON
### Augmented Report – Administrative Remedy 763699-R1

| | |
|---|---|
| INCIDENT REPORT NO.: 2506961 | HEARING DATE AND TIME: 11/18/2013  12:30 P.M. |

| | | |
|---|---|---|
| INMATE NAME: Diehl, David | REG. NO.: 53214-018 | UNIT:  B |
| OFFENSE CODE(S): 201 | DATE OF OFFENSE:  08/27/2013 | |

SUMMARY OF CHARGE(S): Fighting with another person.

## I.   INVESTIGATION-NOTICE OF CHARGES

Copy of the Incident Report (Advance Notice) was given to the inmate on:

| | | |
|---|---|---|
| By (Staff Member): A. Gillespie, Lieutenant | Date:  10/22/2013 | Time:  5:05 P.M. |

## II.   UDC INITIAL HEARING

UDC hearing was held and the inmate was advised of his rights  and received copy of the advisement of rights form by:

| | | |
|---|---|---|
| Name:  S. Pino | Date:  10/23/2013 | Time:  8:00 P.M. |

### STAFF REPRESENTATIVE:

| | | | | |
|---|---|---|---|---|
| Inmate requested a staff representative :  | Name:  N/A | | | |
| Staff Representative appeared and provided the following statement:  N/A | | | | |
| Staff Representative was appointed:  | Name: N/A | | | |
| Inmate waived his right to request a staff representative: | Yes: | XX | No: | |

Staff Representative was unable to appear; inmate was advised of his right to postpone the hearing to obtain another staff representative with the result that:

| | |
|---|---|
| Proceed without staff rep. | Postpone to obtain another staff rep. |

## III. PRESENTATION OF EVIDENCE

### WITNESSES:

| | |
|---|---|
| Inmate requested witnesses and the following witnesses provided statements:  | N/A |

INMATE WITNESS
Name/Number:
Statement:
STAFF WITNESSES
Name/Position:
Statement:

| | | | |
|---|---|---|---|
| Unavailable witnesses provided written statements :  | Yes | | No |

The following witnesses provided written statements:

The following witnesses were not called for the following reasons:

### DOCUMENTARY EVIDENCE:

The following documents were considered: Evidentiary photographs, medical documentation, inmate statements, SIS and staff memorandums.

The DHO utilized no confidential information in this hearing.

### INMATE STATEMENT:

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate : | Admits | | Denies | XX | Neither | |

# DISCIPLINE HEARING REPORT
## USP TUCSON
## Augmented Report – Administrative Remedy 763699-R1

Inmate Diehl stated he received a copy of the incident report. Inmate Diehl was read his rights by the DHO and stated that he received his rights by the UDC and understood his rights. Inmate Diehl indicated he was ready to proceed with the hearing.

Inmate Diehl declined to make a statement to the Investigating Lieutenant.
Inmate Diehl declined to make a statement to the UDC.
Inmate Diehl made the following statement to the DHO; "My cellmate was trying to pull a loose tooth. That's where the blood came from. I didn't fight. There is no evidence."

## IV.   FINDINGS OF THE DHO

|    |    |
|----|----|
| XX | The act was committed as charged. |
|    | The following act (codes) was committed: |
|    | No prohibited act was committed: |

## V.   SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS

Augmented Report – Administrative Remedy 763699-R1

The DHO finds on October 22, 2013 at 10:21 a.m., inmate Diehl, David, Register Number: 53214-018, committed the prohibited act(s) of Fighting with another person, Code 201. To make this finding the DHO relied on the following:

*The reporting officer's written account that on August 27, 2013, at approximately 10:45 p.m., Staff assigned to Units B-1 and B-2, responded to a Medical Duress alarm, activated from cell B01-215, occupied by inmates David Andrew Diehl, Reg. No. 53214-018, and Odell Gene Golden, Reg. No. 28415-057. Inmate Diehl was standing at the door and Inmate Golden was on the upper bunk underneath a blanket. Staff detected bruising and what appeared to be dried blood on inmate Golden's face and hair. Blood was also discovered on the blanket, on a makeshift string, and on the floor. Both inmates, who were placed in hand restraints, ultimately complied with staff orders, and escorted to the SHU. On August 28, 2013, inmates Diehl and Golden were medically assessed, and treated with first aid for minor injuries. Inmate Diehl was noted having a scratch on his abdomen and inmate Golden was noted having a blackened right eye, a minor laceration on his forehead, and a minor laceration to the top right of his right shoulder. On October 22, 2013, at 10:21 a.m., a comprehensive SIS investigation concluded that on August 27, 2013, at 10:45 p.m., Inmates Diehl and Golden fought with each other over a disrespectful issue. This was based on inmates Diehl and Golden both providing conflicting statements, Inmate Diehl's initial statement that they were "horsing around and wrestling", supporting memorandums; e-mails, photographs and medical assessment forms reflecting injuries indicative and consistent with two persons being involved in a fight.*

It is the decision of the DHO that you committed the prohibited act of fighting with another person, Code 201. This decision is based on the statement of the reporting officer. The DHO considered inmate Diehl's statement during the DHO proceedings that his cellmate was trying to pull a loose tooth and that's where the blood came from; there was no fight. The DHO notes inmate Diehl denies the charges against him. The DHO finds the staff member's statements and observations are credible and believable, as the staff members observations were made strictly in the performance of their duties and they have no reason to make up false accusations.

The DHO considered inmate Diehl's written statement/evidence he presented during the hearing. The DHO finds that the staff member's statements and observations are more credible and believable, as staff member statements and observations were made strictly in the performance of their duties and have not reason to make up false accusations.

The DHO also reviewed and relied upon the SIS Investigation, photographs and injury assessments which note injuries to both Diehl and Golden consistent with being involved in a fight as well as staff memos all of which support the reporting officer's account of the incident.

The DHO noted no delay in your disciplinary process.

Based on the greater weight of the evidence, the DHO finds inmate Diehl, David, Register Number: 53214-018 committed the prohibited act(s) of Fighting with another person, Code(s) 201.

# DISCIPLINE HEARING REPORT
## USP TUCSON
### Augmented Report – Administrative Remedy 763699-R1

### VI.   SANCTION OR ACTION TAKEN

**201**
Disallow GCT: 27 Days
D/S: 15 Days
Lose Phone: 180 Days
Lose Commissary: 180 Days

### VII.   REASON FOR SANCTION OR ACTION TAKEN

The action/behavior on the part of any inmate to become involved in a fight with any other inmate or person poses a threat to the health, safety and welfare of not only himself, but all other inmates and staff within the institution.  In the past, fights between two individuals have expanded to include others which created a larger problem for staff to resolve.  The sanctions imposed by the DHO; disciplinary segregation, loss of phone and loss of commissary were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

PLRA exemplary compliance requires the DHO disallow and forfeit GCT.

### VIII.   APPEAL RIGHTS

The inmate has been advised of the findings; specific evidence relied on, action and reasons for the action.  The inmate has been advised of his right to appeal this action directly to the Regional Director within 20 calendar days under the Administrative Remedy Procedures.  A copy of this report has been given to the inmate.  (BP-10)

### IX.   DISCIPLINE HEARING OFFICER

| Printed Name of DHO: | Signature of DHO: | Date: |
|---|---|---|
| **T. PHILLIPS, DHO** | J. Phillips | 04-11-2014 |
| Report delivered to inmate by: | Date: | Time: |
|  | C Wohld / CO | 4.12.14 @ 7am |

U.S. Department of Justice

Case 4:13-cv-01996-JAS   Document 126   Filed 05/30/17   Page 68 of 125

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

E15

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Diehl, David, A                    53214 018          B1          Atwater USP
_____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.         UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**   Second appeal concerning Incident Report 250696,
Remedy 763699-R1. The report states, "DHO finds that staff member
observations were made strictly in the performance of their duties
and they have no reason to make up false accusations." But according
Cola immediatly before the photographs of him were taken. These
claims should be in Golden's report, and according to him on camera.
Secondly, Golden was not charged with a fight shot (atleast within a month.
The fact is and the record will show that Diehl was kept in the SHU not
because of a fight but because but because a seperatee filed against him
by another inmate, Biokab. Biokab filed his seperatee the day after the
supposed fight. Tucson Staff lied to Diehl and Region about the true date
Biokab. filed that Seperatee and in fact this entire matter. This whole thing
was nothing more than an opportunity to keep Diehl Phone illegally blocked
and continued vindiction and retaliation against Diehl.

4-24-16
_____                           _____
DATE                                              SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

_____
REGIONAL DIRECTOR

SECOND COPY: RETURN TO INMATE

**Part C - RECEIPT**

CASE NUMBER: _____

CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____                           _____
DATE                                              SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN

70

Case 4:13-cv-01996-JAS   Document 126   Filed 05/30/17   Page 69 of 125 5

*signed 6-3-1*

# DISCIPLINE HEARING REPORT
## USP TUCSON
### Augmented Report — Administrative Remedy 763699-R1

| | |
|---|---|
| INCIDENT REPORT NO.: 2506961 | HEARING DATE AND TIME: 11/18/2013   12:30 P.M. |
| INMATE NAME: Diehl, David | REG. NO.: 53214-018 |
| OFFENSE CODE(S): 201 | DATE OF OFFENSE: 08/27/2013 | UNIT: B |

SUMMARY OF CHARGE(S): Fighting with another person.

## I.   INVESTIGATION–NOTICE OF CHARGES

Copy of the Incident Report (Advance Notice) was given to the inmate on:

By (Staff Member): A. Gillespie, Lieutenant

| | Date: 10/22/2013 | Time: 5:05 P.M. |
|---|---|---|

## II.   UDC INITIAL HEARING

UDC hearing was held and the inmate was advised of his rights and received copy of the advisement of rights form by:

Name: S. Pino | Date: 10/23/2013 | Time: 8:00 P.M.

### STAFF REPRESENTATIVE:

| | | |
|---|---|---|
| Inmate requested a staff representative : | Name: N/A | |
| Staff Representative appeared and provided the following statement: N/A | | |
| Staff Representative was appointed: | Name: N/A | |
| Inmate waived his right to request a staff representative: | Yes: | XX | No: |

Staff Representative was unable to appear; inmate was advised of his right to postpone the hearing to obtain another staff representative with the result that:

| Proceed without staff rep. | | Postpone to obtain another staff rep. |
|---|---|---|

## III.   PRESENTATION OF EVIDENCE

### WITNESSES:

Inmate requested witnesses and the following witnesses provided statements:   N/A

INMATE WITNESS
Name/Number:
Statement:
STAFF WITNESSES
Name/Position:
Statement:

| Unavailable witnesses provided written statements : | Yes | | | |
|---|---|---|---|---|
| The following witnesses provided written statements: | | | | No |

The following witnesses were not called for the following reasons:

### DOCUMENTARY EVIDENCE:

The following documents were considered: Evidentiary photographs, medical documentation, inmate statements, SIS and staff memorandums.  The DHO also considered a two-page handwritten statement presented by inmate Diehl.

Confidential Information: The DHO utilized no confidential information in this hearing.

### INMATE STATEMENT:

| Inmate : | Admits | | Denies | XX | Neither | |
|---|---|---|---|---|---|---|

71

# DISCIPLINE HEARING REPORT
## USP TUCSON
### Augmented Report – Administrative Remedy 763699-R1

Inmate Diehl stated he received a copy of the incident report. Inmate Diehl was read his rights by the DHO and stated that he received his rights by the UDC and understood his rights. Inmate Diehl indicated he was ready to proceed with the hearing. The DHO noted no delay in the disciplinary process.

Inmate Diehl declined to make a statement to the Investigating Lieutenant.
Inmate Diehl declined to make a statement to the UDC.
Inmate Diehl made the following statement to the DHO; "My cellmate was trying to pull a loose tooth. That's where the blood came from. I didn't fight. There is no evidence."

### IV.   FINDINGS OF THE DHO

| | |
|---|---|
| XX | The act was committed as charged. |
| | The following act (codes) was committed: |
| | No prohibited act was committed: |

### V.   SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS

Augmented Report – Administrative Remedy 763699-R1

The DHO finds on October 22, 2013 at 10:21 a.m., inmate Diehl, David, Register Number: 53214-018, committed the prohibited act(s) of Fighting with another person, Code 201.  To make this finding the DHO relied on the following:

*The reporting officer's written account that on August 27, 2013, at approximately 10:45 p.m., Staff assigned to Units B-1 and B-2, responded to a Medical Duress alarm, activated from cell B01-215, occupied by inmates David Andrew Diehl, Reg. No. 53214-018, and Odell Gene Golden, Reg. No. 28415-057. Inmate Diehl was standing at the door and inmate Golden was on the upper bunk underneath a blanket. Staff detected bruising and what appeared to be dried blood on inmate Golden's face and hair. Blood was also discovered on the blanket, on a makeshift string, and on the floor. Both inmates, who were placed in hand restraints, ultimately complied with staff orders, and escorted to the SHU. On August 28, 2013, inmates Diehl and Golden were medically assessed, and treated with first aid for minor injuries. Inmate Diehl was noted having a scratch on his abdomen and inmate Golden was noted having a blackened right eye, a minor laceration on his forehead, and a minor laceration to the top right of his right shoulder. On October 22, 2013, at 10:21 a.m., a comprehensive SIS investigation concluded that on August 27, 2013, at 10:45 p.m., inmates Diehl and Golden fought with each other over a disrespectful issue. This was based on inmates Diehl and Golden both providing conflicting statements, inmate Diehl's initial statement that they were "horsing around and wrestling", supporting memorandums, e-mails, photographs and medical assessment forms reflecting injuries indicative and consistent with two persons being involved in a fight.*

Inmate Diehl's statement during the DHO proceedings wherein he alleges his cellmate was trying to pull a loose tooth and that's where the blood came from; there was no fight. The DHO also considered a two-page handwritten statement presented by inmate Diehl.  In sum, inmate Diehl denies the charge against him and claims the evidence does not support the charge.

The SIS investigation, photographs and injury assessments which note injuries to both Diehl and Golden consistent with being involved in a fight as well as staff memos all of which support the reporting officer's account of the incident.

In sum, though inmate Diehl denied the charge, verbally and in a written statement, the evidence contained in the discipline packet leads the DHO to believe that he was more likely involved in fight, than not, as he claim. Therefore, based on the greater weight of the evidence, it is the decision of the DHO that inmate Diehl, David, Register Number 53214-018 committed the prohibited act(s) of Fighting with another person, Code(s) 201.

### VI.   SANCTION OR ACTION TAKEN

201
Disallow GCT: 27 Days
D/S: 15 Days
Lose Phone: 180 Days          6 - mo,
Lose Commissary: 180 Days

### VII. REASON FOR SANCTION OR ACTION TAKEN

The action/behavior on the part of any inmate to become involved in a fight with any other inmate or person poses a threat to the health, safety and welfare of not only himself, but all other inmates and staff within the institution. In the past, fights between two individuals have expanded to include others which created a larger problem for staff to resolve. The sanctions imposed by the DHO; disciplinary segregation, loss of phone and loss of commissary were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

PLRA exemplary compliance requires the DHO disallow and forfeit GCT.

### VIII. APPEAL RIGHTS

The inmate has been advised of the findings; specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action directly to the Regional Director within 20 calendar days under the Administrative Remedy Procedures. A copy of this report has been given to the inmate. (BP-10)

### IX. DISCIPLINE HEARING OFFICER

| Printed Name of DHO: | Signature of DHO: | | Date: |
|---|---|---|---|
| **T. PHILLIPS, DHO** | J. Phillips | | 06-03-2014 |
| Report delivered to inmate by: | | Date: | Time: |
| C. World | | 06/05/2014 | 7:30 AM |

F15

779886-R1
USP Atwater

You are requesting administrative relief regarding the decision of the Discipline Hearing Officer (DHO) on November 18, 2013, in which you were found to have committed the prohibited act of Fighting, Code 201, while confined at FCC Tucson.   You claim you are innocent and that staff engaged in misconduct. Though you do not specify what you seek for relief, it appears you seek to have the decision reversed. The Regional Director remanded the DHO to augment the record in response to Administrative Remedy Appeal No. 763699-R1.

On appeal, the appropriate reviewing authority shall consider: a. Whether the UDC or DHO substantially complied with the regulations on inmate discipline; b. Whether the UDC or DHO based its decision on some facts, and if there was conflicting evidence, whether the decision was based on the greater weight of the evidence; and c. Whether an appropriate sanction was imposed according to the severity level of the prohibited act, and other relevant circumstances.

A review of the disciplinary action indicated that you were provided due process as required by Program Statement 5270.09, Inmate Discipline Program.   You were given advanced written notice of the charge against you more than 24 hours prior to your appearance before the DHO.   You were afforded the opportunity to have staff representation and to call witnesses.   You waived both of these rights.   You were afforded the opportunity to make a statement to the DHO and present documentary evidence on your behalf. Your verbal and written statements are reflected in the record and addressed by the DHO.

The DHO report clearly indicates the basis for the finding that you committed the prohibited act and explains the purpose of imposing the sanctions which are within policy.

Bureau of Prisons policy directs the DHO to consider all evidence presented at the hearing and to make a decision based on some facts, and if there is conflicting evidence, to base the decision on the greater weight of the evidence.   It is apparent that the DHO found you guilty based on the greater weight of the evidence. Evidence weighed against you included the account of the reporting officer who conducted a preliminary investigation and became aware you were engaged in a physical altercation with another inmate while you were both housed together in your assigned cell, located in B-unit.   The DHO also relied upon other documentary evidence contained in the discipline packet, which include photos, medical reports and staff communications.   That evidence, coupled by the fact that you were unable to present credible or verifiable evidence which exonerates you from the charge, reasonably led the DHO to make a guilty finding.

You claim staff fabricated the incident report in retaliation against you.   The Bureau of Prisons takes allegations of staff misconduct seriously and they are thoroughly investigated.   However, we have not found and you have not provided credible or verifiable evidence to support your claim that staff engaged in misconduct.

The allegations presented in your request for relief have been investigated and determined to be without merit.   Thus, your request for relief from the discipline action or sanctions is denied.

If dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C., 20534.   Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

6|5|14
Date

JUAN D. CASTILLO, Regional Director

Given to me on

inmate Received on 7/6/14
CCC Atile

74

E15

Remedy Coordinator
FBOP Central Office
320 1st St. N.W.
Washington, DC 20530

12-20-2015

Regarding: Incident report 250 6961 for inmate David A. Diehl, 53214018

Dear Representative,

This is my second attempt in the last year to determine the outcome
of the above incident. Enclosed is the last submission of mine
concerning the incident.
Please if you will inform me of the status of this very overdue
determination.

Respectfully,

David A. Diehl, 53214018
Federal Correction Complex
USP Coleman II
PO Box 1034
Coleman, FL 33521

E16

BP-A0308
AUG 11

### ADMINISTRATIVE DETENTION ORDER

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

TUCSON USP
_____
Institution

Date/Time:    10-10-2013 13:43

TO      : Special Housing Unit Officer

FROM    : RIVERA, LIEUTENANT

SUBJECT : Placement of    DIEHL, DAVID ANDREW    , Reg. No.   53214-018   , in Administrative Detention
_____ , (Name/Title)

_____ (a) Is Pending a hearing for a violation of Bureau regulations;

__X___ (b) Is Pending investigation of a violation of Bureau regulations;

_____ (c) Is Pending investigation or trial for a criminal act;

_____ (d) Is to be admitted to Administrative Detention

    _____ (1)  Since the inmate has requested admission for protection;

I hearby request placement in Administrative Detention for my own protection.

    Inmate Signature/Register No.:

    Staff Witness Printed Name Signature:

    _____ (2)  Since a serious threat exists to individual's safety as perceived by staff, although person

    has not requested admission; referral of the necessary information will be forwarded to the

    UDC/DHO for appropriate hearing.

_____ (e) Is Pending transfer or is in holdover status during transfer.

_____ (f) Is Pending classification; or

_____ (g) Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative

    Detention by the Warden's designee.

It is this Correctional Supervisor's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because*

SIS THREAT ASSESSMENT

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this Order on

(date/time) 10-10-13 1200

Staff Witness Signature/Printed Name

Date   10-10-13

* In the case of DHO action, reference to that order is sufficient. In other cases, the Correctional supervisor will make an independent review and decision, which is documented here.
Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy - Central File

Prescribed by P5270    (Replaces BP-308(52) of JAN 1988.)

10/10/2013

76

E17

Sis Alverez                                    10-16-13

If you would please put in writing the allegations made against me and date and time they were made. Repeat this for any witnesses and identify the party's involved.

I will respond in detail, in writing to any allegations.

Based on certain staffs actions in the past and Mendezes announcement on 10-16-13 that I am being shipped I feel it necessary for formarty

David Biehl

77

E12

Lt. Alverez

Re: Threat Assement of Mitch Brokab and David Diehl

On October 11th or 20th at approximately

~~October 11th or 20th~~ August 24th or 25th

6:30 - 8:15 Mitch Brokab approched where I was sitting watching TV and changed the channel. I stood up and told him I was waching the program. when he pulled back his fist and anounced for all to hear "I could punch you in your neck." I wanting to avoid a fight left and returned to my room.

Some time later Mitch, without inuitaton entered Golden and I's room. Golden who was awakened noticed Brokab had a long pencil raised above his head ready to stab me. My back was turned from Brokab because I was remouing the covering from our Window.

Golden yumped down from the upper punk and forced Brokab out of the room.

This event was the only interaction I have had with Brokab.

This should all be available on camera. It was the second week of the U.S. Open on TV.

The assaut of my roomate by David David Diehl which caused his wounds should also be on video.

David Diehl

11-1-13.

78

E19

SIS                                        11-6-13

On August 24 or 25 at between 6:30 and 8:30 Mitch Brokab attempted to assault me. I turned and walked away. He later came to my room and tried to stab me with a pencil as witnessed by my Celly Golden, Golden pushed him out of our room and that was the end of it.

I deny ever threatening Brokab. Their our no grounds to transferm

All of this is on camera.

David Diehl
532 14018

79

E20

Aff, david

Lt Aluerez
RE mitch Brokab threght assesment.

On wednesday morning, in the rec yard
Cage I told Lt Aluerez Brokab threatened
me. I told him the Cameras on
Aug 24th or 25th approx 7-830 Am will show
this. I also said Brokab came to my
room and attempted to stab me with
a pencil and that Odell Golden my
roomate can attest to that. Aluerez
did not show any interest in investigating
the matter and said if you don't get
shipped we will look into it.

David Diehl
David a Deehl

11-14-13

80

Warden Winn,                                    11-26-13                    E21

Mitch Biokab filed a seperation against me the first week I was back here in August, so its been 90 days. I take it SIS doesn't intend to bring charges since Mitch is on film threatening me, not visa versa. You and I both know there is no safe place for me to go with my charges, and I have done nothing. Second, I have filed a BP-8 (Nink took it) because my mail is being stolen. This includes

- Letters to attorneys
- motions to courts
- Letters to the IRS
- Letters to family
- Letters to public officials

This is very very serious. As you are aware I have asked to the United States attorney to look into this along with investigating this outragous attack on my ability to communicate with my family, under your watch, and I am sure with your full blessing. The details of this are involved to go into heal.

Lastley my case with the Fifth circuit court of appeals has been drastically affected by this institutions criminal conduct. I have done every thing in my power to alert them to happenings here, and how its affected me.

81

①

E22

      I Steven M. Chapman 20145-045 an inmate in the Federal Bureau of Prisons housed at United States Penitentiary Coleman II in Coleman Florida 33521, wish to make a statement to the Honorable Court in regard to the case before it, as to what I saw during the time period of 15 February 2013 and January 2014.

      First I will state that I arrived at USP Tucson AZ on 15 February 2013, at which point I was assigned to B-1 housing unit cell 122. With in my first week of being in the unit I met both Mr. Brokob and Mr. Diehl.

      I would talk with Mr. Brokob almost daily due too us having a common passion for music, as Mr. Brokob played and taught people to play the guitar and I play the drums.

      I also talked with Mr. Diehl almost daily due to his legal knowledge, as I was actively fighting my case in the Army Court of Criminal Appeals.

      I would say that the only negative situation I ever saw between Mr. Brokob and Mr. Diehl, was on a Saturday morning, (Just before Mr. Diehl went to the SHU), when they had a very loud disagreement over the TV. At this time Mr. Diehl was cell mates with

Steven M. Chapman    4 April 2017

82



E22-2

Mr. Golden. Though I did not live with Mr. Brokob or Mr. Diehl while I live in B-1 housing unit, I can say with 100% Certainty that there was no type of Sexual misconduct between Mr. Brokob and Mr. Diehl. I can say with 100% Certainty because a person serving a life sentence has to stay attuned to his Surroundings in order to stay safe. As of this Writting I have been in prison for 15 years 4 months, and I have never been attacked in this time due to my observations.

Knowing Mr. Brokob as I do, had Mr. Diehl, or anyone else for that matter, approached Mr. Brokob in a sexual or any other manner, that he did not like, Mr. Brokob would have fliped out, and told any who would listen to enclude a C.O., which is why most people did not deal with Mr. Brokob outside of just in passing.

In fact during May 2014 I was in the SHU at USP Tucson, at the same time Mr. Brokob and Three others were in the SHU, because Mr. Brokob accused the other 3 men of threatening him. After 30 days all four of them were released from the SHU with out charges.

Steven M Chapman          11 April 2017

E23

Page 1 of 1

## Nink - Re: Diehl

**From:** Hansen
**To:** Nink,
**Date:** 9/20/2012 3:04 PM
**Subject:** Re: Diehl

Mrs. Jenkins stated she did NOT want inmate Diehl to contact her son via phone. She went on to state inmate Diehl wrote her son (who she said was a victim of his) and was upset that inmate Diehl stated in the letter that he would get his phone back to call him. The letter was addressed to the son. Mrs. Jenkins was very upset and said she had spoke with a man from Central Office in DC and this was to be all handled. Mrs. Jenkins also stated that Diehl is just trying to manipulate the son and she was hoping we would NOT allow him (Diehl) to contact the son, cause he is the victim. She also stated, inmate Diehl is a complete liar.

L. Hansen
B&C Unit Manager
United States Penitentiary-Tucson
9300 S. Wilmot Rd.
Tucson, AZ 85756
(520) 663-5000 Ext 5082
>>> Nink 9/20/2012 2:51 PM >>>
Hansen,

Can you send me an email about your phone conversation you had with Kerry Jenkins today 9-20-2012

NINK

file:///C:\Documents and Settings\ ... Local Settings\Temp\XPgrpwise\ ...   10/31/2012

**FILED UNDER SEAL**

84

E24

BP-S288.052                        INCIDENT REPORT      COFRM
SEP 05
U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

Part I - Incident Report # 2331081

| 1. Institution: FCC Tucson FCC | | | |
|---|---|---|---|
| 2. Inmate's Name<br>Diehl, David | 3. Register Number<br>53214-018 | 4. Date of Incident<br>11-23-2011 | 5. Time<br>12:30pm |
| 6. Place of Incident<br>B-1 | 7. Assignment<br>Unassigned | 8. Unit<br>B1 | |
| 9. Incident:<br>Use of the telephone for illegal purposes or to commit or<br>further a greatest category prohibited act. | | 10. Prohibited Act Code<br>197 | |

11. Description Of Incident (Date:07-24-2012  Time: 2:30pm   : Staff became aware of incident)
   On July 24, 2012 at 2:30pm staff were investigating claims made by inmate Diehl, David #53214-018 that
he was unjustly being prohibited from contacting his son because he stated that he has a custody agreement
with his ex-wife.  At 4pm I pulled a phone list and found that Diehl had been contacting his son outside
of the times he was given in the custody agreement given to him by the civil courts.  He was also ordered
in his commitment to have no contact with anyone under the age of 18.  He has also violated this order
by calling his son on several occasions.

| 12. Signature of Reporting Employee | Date And Time<br>7-24-2012  6:00pm | 13. NAME AND TITLE<br>Case Manager Nink |
|---|---|---|

| 14. Incident Report Delivered to Above Inmate By<br>(Type Name/Signature) | 15. Date Incident<br>Report Delivered<br>7/25/12 | 16. Time Incident<br>Report<br>Delivered 7:45Am |
|---|---|---|

Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident
   This is a civil case; my wife never asked for the phone to be blocked.

18. A. It is the finding of the committee that you:          B. _X_ The Committee is referring the
   ____ Committed the Prohibited Act as charged.                   Charge(s) to the DHO for further
   ____ Did not Commit a Prohibited Act.                           Hearing.
   ____ Committed Prohibited Act Code(s)                   C. ____ The Committee advised the inmate of
                                                                   its finding and of the right to file
                                                                   an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:
   Based on the severity of the act, sanctions are unavailable at the UDC level.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed
prohibited act)  Standard recommendation.

21. Date And Time Of Action 07-27-2012   215 Pm   (The UDC Chairman's signature certifies who sat
on the UDC and that the completed report accurately reflects the UDC proceedings.)

K. SCHROED, JR.                    S. HANSEN
Chairman (Typed Name/Signature)    Member (Typed Name)         Member (Typed Name)

Original - Central File Record; Yellow - DHO; Blue - Inmate After UDC Action;
Pink - Inmate within 24 Hours of Part I Preparation

(This Form May Be Replicated Via WP)
                                        Replaces BP-S288.052 Of MAY 94

FILED UNDER SEAL

85

E25

233102

3286.052                    INCIDENT REPORT      CDFSM
SF 05
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

Part I - Incident Report

| 1. Institution: FCC Tucson FCI | | 3. Register Number 53216-018 | 4. Date of Incident 11-23-2011 | 5. Time 12:30pm |
|---|---|---|---|---|
| 2. Inmate's Name Diehl, David | | | | |
| 6. Place of Incident B-1 | 7. Assignment Unassigned | | 8. Unit B1 | |
| 9. Incident: Use of the telephone for illegal purposes or to commit or further a greatest category prohibited act. | | | 10. Prohibited Act Code 197 | |

11. Description of Incident (Date:07-24-2012  Time: 2:30pm   Staff became aware of incident)
On July 24, 2012 at 2:30pm staff were investigating claims made by inmate Diehl, David #53214-018 that he was unjustly being prohibited from contacting his son because he stated that he has a custody agreement with his ex-wife.  At 4pm I pulled a phone list and found that Diehl had been contacting his son outside of the times he was given in the custody agreement given to him by the civil courts.  He was also ordered in his commitment to have no contact with anyone under the age of 18.  He has also violated this order by calling his son on several occasions.  Diehl's contention is that he is abiding by the civil agreement but on November 23, 27, and 30th, and December 2, 6, 11, 14, 15, 22, 25, 26, and 28 he violated the civil agreement.  He also violated the federal provisions which specifically state that he is to have no contact with any minor without written permission from his probation officer which he does not have at this time. This is a re-write of the original incident report.

| 12. Signature of Reporting Employee | Date And Time 8-8-2012  9:50am | 13. NAME AND TITLE Case Manager Rink |
|---|---|---|

| 14. Incident Report Delivered to Above Inmate By (Type and Signature) | 15. Date Incident Report Delivered 8-8-12 | 16. Time Incident Report Delivered 6:00pm |
|---|---|---|

Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident
(I'm stated " 4 or w/ex wife, not given the times and phone Numbers"  I/m is requesting hearing out to Region.

18. A. It is the finding of the committee that you:
___ Committed the Prohibited Act as charged.
___ Did not Commit a Prohibited Act.
___ Committed Prohibited Act Code(s)

B. [X] The Committee is referring the Charge(s) to the DHO for further Hearing.
C. ___ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:
Based on Report of incident, refer to DHO.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)
DS time / loss GCT

21. Date And Time Of Action 8-14-12  1330  (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)
Chairman (Typed Name/Signature)          Member (Typed Name)          Member (Typed Name)

Original - Central File Record; Yellow - DHO; Blue - Inmate After UDC Action

**FILED UNDER SEAL**

86

TRULINCS 53214018 - DIEHL, DAVID ANDREW - Unit: TCP-B-A                    F26

---------------------------------------------------------------------------------

FROM: Morris, Gerry
TO: 53214018
SUBJECT: Re: RE: Re: Need something from Devlin or the court in
DATE: 07/17/2012 05:00:32 PM

David:

I'm in the middle of my trial so I don't have a lot of time to elaborate, but here are the basics:

Shifflet has talked with Devlin and the BOP attorney's.  Shifflet and Devlin have told the BOP attorney's that your son was not a victim and that if the judge is ok with it, they have no problem with you speaking to your son in accordance with the state court order.  Shifflet said that she never told anyone at your institution that the federal court order prohibited you from talking to your son.  She told then that the no contact provision only apply after you are released.

Here's what is supposed to happen:



Shifflet is to get a copy of the state court order and show it to the judge..  She will recommnend that you be able to talk with your son according to the schedule stated in the state court order.

As long as the judge approves it (which there is no reason to think that he won't) she will send you a letter stating that you can call Archie according to the schedule int he state court order.

You will have to adhere to the schedule in the state court order as to the time and frequency of the calls.

DAVID ANDREW DIEHL on 7/13/2012 8:08:35 PM wrote:
Well if it comes to that we have no choice. In fact I already filed a motion with the court to clarify the order and re-vise the PSR. I need to get you a copy.
To me its clear.
1) I was never charged with any conduct against either my son or my - ex-wife
2) its not in the stippulation
3) The judge never put any resrictions in the sentenceing orders
4) Jessie has no power therfor to comment on it. She is not my probation officer, she simply prepared a PSR for the court. She has no authority whatsoever on this

You can rest assured that if the court would have wanted restrictions Devlin would have made that clear to Bastrop county and this institution long before this. Also, I have talked to many may people here who have simular charges and its just matter of fact if you didnt abuse your family (prooven in court) there are no restrictions. I have clearly been singled out. I feel sure that if push came to shove Yeakel would rule in my favor however as far as I am concerned he already did but not putting restrictions on my which he didnt. Like I said the people that have restrictions here dont have any doubt about it. It cleary says you are not to talk with your kids. This is simply never done unless the parent abused them and it was proven in court.

David
-----Morris, Gerry on 7/13/2012 1:00 PM wrote:

>

David:

Your memory in not accurate on my conversation with Devlin.  He told me that he had not intstigaged any action to prevent you from contacting your son.  He told me that your son was not specifically mentioned in the judgment but that there was a provision that stated that you were to have no contact with any victim.  He told me that your son was arguably a victim because of the incident with him in the bath tub. (Paragraph 27 of the PSR)  That's the reason I told you that it might not be a good idea to go back to Judge Yeakel and litigate the issue because he might decide that your son was a victim and specially order you not to have contact.

That was when I called your institution to try to get them to tell me why they wouldn't let you talk to your son.  They told me it had to do with the state court order.  That is when we started talking about getting a lawyer to go to state court and get the state rder reaffirmed..

TRULINCS 53214018 - DIEHL, DAVID ANDREW - Unit: TCP-B-A

--------------------------------------------------------------------------------

FROM: Combs, Anita
TO: 53214018                                                    *Revoked*
SUBJECT: RE: Payments to Archie
DATE: 01/01/2013 08:37:04 PM

david, I just got 4 messages returned to me because they say they
jeopardized you or someone associated with your confinement. There was
nothing I could see why they were returned. They did get the checks from
you and there were 4 checks deleivered to them. I have answered each
and every question and the prison system keeps rejecting them and I do
not know why because there is nothing in them that I would know of that
would keep them from being delieivered...

DAVID ANDREW DIEHL on 1/1/2013 8:20:56 PM wrote
I got the exact dates of the checks sent out to him. All except one were sent from the UNITED STATES. The one that wasnt
was sent from my lawyer for about $400.00. That one was sent somewhere around August.
The others were

8/22/2012 – $40.00
10/2/2012 – $80.00
11/2/2012 – $80.00

They all required his endorsement. I will need to trace them if he didnt receive them.

Tell Archie I love him,

p.s.
Still waiting on many responses from email including did you get my permission for him to enroll in school there ? The original
one I sent ? I will resend one specifying Anita. They say our ID Badges here suffice as notary, but I will try and get it notorized
also. I can also send a letter directly to the school if you give me their address. Whatever I have to do. Keri is definatly the best
source though if you can get her to move on it. Also, I hope she sends his raquets and our pictures and anything else he
ownes. Let me know when you get the $1000 I sent, he will need that.

David

88

BP-S288.052 INCIDENT REPORT CDFRM
MAY 1994    Case 4:13-cv-01996-JAS    Document 126    Filed 05/30/17    Page 87 of BP-101  E28
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

1. Name Of Institution: USP Tucson, Arizona

Part I - Incident Report

| 2. Name Of Inmate DIEHL, DAVID | 3. Register Number 53214-018 | 4. Date Of Incident 06-25-2012 | 5. Time 1130 |
|---|---|---|---|
| 6. Place Of Incident MAIL ROOM OPEN HOUSE | 7. Assignment UNASSIGNED | 8. Unit B-1 | |

9. Incident
USE OF MAIL FOR ABUSES OTHER THAN CRIMINAL ACTIVITY    (CODE 396)

11. Description Of Incident (Date: 06-25-12 Time: 1130 Staff become aware of incident)
ON JUNE 25, 2012, AT APPROXIMATELY 1130, INMATE DIEHL APPROACHED THE OPEN HOUSE WINDOW TO
SEND A CERTIFIED PIECE OF MAIL TO AN "ARCHIE DIEHL." I ASKED WHO THIS PERSON WAS, AND HE
SAID, "OH, IT'S MY SON." I ASKED IF HIS SON WAS INCARCERATED, AND HE SAID, "NO, NO, HE'S
ONLY 15." I ACCEPTED THIS PIECE OF MAIL AT THE OPEN HOUSE WINDOW BECAUSE IT WAS CERTIFIED,
EVEN THOUGH IT WAS NOT LEGAL MAIL.
UPON REVIEW OF INMATE DIEHL'S PSI, THE FOLLOWING INFORMATION WAS LOCATED IN REGARDS TO ARCHIE
DIEHL, PAGE 25, PARAGRAPH 158: "HE [DIEHL] HAS NOT HAD CONTACT WITH HIM SINCE DECEMBER
2010, PER THE COURT'S INSTRUCTIONS." THUS, INMATE DIEHL IS NOT AUTHORIZED TO CORRESPOND
WITH ARCHIE DIEHL.

| 12. Signature Of Reporting Employee | Date And Time 06-25-2012 1530 | 13. Name And Title (Printed) A. BLAKE, CSO |
|---|---|---|

| 14. Incident Report Delivered To Above Inmate By | 15. Date Incident Report Delivered 06-25-2012 | 16. time Incident Report Delivered 8:54 pm |
|---|---|---|

Part II - Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident


18. A. It Is The Finding Of The Committee That You:
_____ Committed The Following Prohibited Act.

_____ Did Not Commit A Prohibited Act.

B. _____ The Committee Is Referring
The Charge(s) To The DHO For Further
Hearing.

C. _____ The Committee Advised The
Inmate Of Its Finding And Of The Right
To File An Appeal Within 15 Calendar
Days.

19. Committee Decision Is Based On The Following Information


20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding
inmate committed prohibited act)


21. Date And Time Of Action _____ (The UDC Chairman's Signature Next To
His Name Certifies Who Sat On The UDC And That The Completed Report Accurately Reflects
The UDC Proceedings.)

Chairman (Typed Name/signature) _____ Member (Typed Name) _____ Member (Typed Name)

ecord Copy - Central File Record;  Copy - DHO;  Copy - Inmate After UDC Action;  Copy - Inmate
ithin 24 Hours Of Part I Preparation
This Form May Be Replicated Via WP)

Replaces BP-288(52) Of Jan 88

89

E28

DIEHL, David
Reg. No. 53214-018

Request for Administrative Remedy
Remedy ID No. 698475-F1

Part B – RESPONSE

This is in response to your Request for Administrative Remedy received on July 27, 2012 wherein you claim staff is in contempt of Texas District Court for preventing contact with your biological son. You claim further that the court has switched positions and has ordered to re-instate mail and phone contact with your biological son. As a relief, you request incident report number 2319802 be expunged.

An investigation into this matter reveals you received an incident report on June 25, 2012 for Code 396, USE OF MAIL FOR ABUSES OTHER THAN CRIMINAL ACTIVITY. Upon review of your PSI, the following information was located in regards to Archie Diehl, page 25, and paragraph 158: "He has not had contact with him since December 2010, per the courts's instructions." Therefore, inmate Diehl is not authorized to correspond with Archie Diehl. The charge for Code 396 within incident report number 2282891 is deemed appropriate and upheld.

Based on the above, your request for Administrative Remedy is denied. If you are dissatisfied with this response, you may appeal to the Western Regional Director. Your appeal must be received by the Regional Administrative Remedy Coordinator, Federal Bureau of Prisons, Western Regional Office, 7338 Shoreline Drive, Stockton, CA 95219, within twenty (20) calendar days from the date of this response.

_____
Louis W. Winn, Jr.
Complex Warden

10-23-12
Date

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

E28

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Mr Nink | DATE: 4-8-13 |
|---|---|
| FROM: David Diehl | REGISTER NO.: 53214018 |
| WORK ASSIGNMENT: Legal | UNIT:B-1  215 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.   Continue
on back, if necessary.  Your failure to be specific may result in no action being taken.
If necessary, you will be interviewed in order to successfully respond to your request.)

Can I get the DHO response
regarding the Mail Shot.
Mr Patrica didn't have any recollection
of it at lunch Friday.

_____

(Do not write below this line)

DISPOSITION:

This incident Report
396 - MAIL Abuse has been expunged

Signature Staff Member

| Date 4/8/13 |
|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 AFR 94

E29

7-18

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
PROBATION OFFICE

**MARIO MORENO**
*Chief U.S. Probation Officer*
*405 W. Congress, Suite 2400*
*Tucson, Arizona 85701-5022*
*(520) 205-4400*

*Respond to:*
*405 W. Congress*
*Suite 2400*
*Tucson, Arizona 85701-5022*
*(520) 205-4400 (Tel)*
*(520) 205-4429 (Fax)*

*Visit our website at www.azd.uscourts.gov*

July 18, 2012

David A. Diehl
Reg. No.: 53214-018
United States Penitentiary Tucson
P.O. Box 24550
Tucson, AZ 85734

Dear Mr. Diehl:

RE:   CONTACT WITH YOUR SON WHILE INCARCERATED

Thank you for your letter, hopefully, I can answer some of your concerns, but I am afraid they may not be what you want to read. As I said at my pre-release class, your conditions of supervised release do take effect upon your release from custody and the start of supervision. However, they are also a Federal Court order which is in effect from the day it is issued and the BOP must follow those orders regardless.

Since I cannot, and really should not, have access to what happened in your case, it is not easy to see what actually happened in your case. But giving the nature of your letter, I suspect you are also restricted from being in contact with *ANY MINOR* without specific permission. Additionally, when the Court orders no contact, that means by sight, sound, or correspondence. I suspect that is why you were disciplined when you contacted your minor son without clearance or authorization. Please sit down and review your sentencing orders (J&C) with your case manager to see about what if any provisions can be made with you in regards to your contacting your son. Is there any way you are able to obtain and supply the Court order from Travis County, Austin I believe, allowing you to have unrestricted contact with your son? Also keep in mind you will need to work closely with your sentencing district, Texas Western, in getting the matter of contact with your son cleared.

Sincerely,

James M. Blount
Supervisory U.S. Probation Officer

E30

EMS-409.051 REQUEST FOR TRANSFER/APPLICATION OF MANAGEMENT VARIABLE CDFRM
SEP 2006
**U.S. DEPARTMENT OF JUSTICE**                                          **FEDERAL BUREAU OF PRISONS**

| From: (Warden/Superintendent) Louis W. Winn, Jr., Complex Warden | Facility FCC Tucson, Arizona (USP) | Date 12-19-13 |
|---|---|---|

Inmate's Name: Diehl, David                                   Register No.: 53214-018

To: Jose A. Santana, Chief
Designations and Sentence Computation Center

__X__ Transfer to:  Any appropriate high security facility 323 (Close Supervision)

_____ Apply Management Variable(s)

_____ Update Management Variable Expiration Date.  (New Date):

**1.  Inmate's Medical Status:**

Diehl is a Care Level 1 inmate assigned to regular duty status with no medical restrictions. He is cleared
for work in food service.

**2.  Institution Adjustment:**  (Include a brief description of the inmate's adjustment during this
period of incarceration with emphasis on recent adjustment.)

Diehl arrived at USP Tucson on November 17, 2011 as an initial designation. He has difficulty accepting
staff directions and has resulted in him being placed in SHU on several occasions. His institutional
adjustment is considered poor.

**3.  Rationale for Referral:**  (For Marial Cuban Detainees, include availability of community
resources and status of INS review process in this section.)

Diehl was placed in Special Housing due to an incident that occurred with his cell mate. While he was
housed in SHU another inmate also made allegations that inmate Diehl was sexually harassing him. The
threat assessment concluded that if he returned to general population, the potential for him to continue
his behavior would jeopardize the mission of this institution and it was recommended that he be transferred
to another facility. He currently has release date of October 28, 2053. The unit team recommends a
transfer to any USP appropriate with Diehl's custody and programming needs.

| 4a.  Parole Hearing Scheduled: | _____ Yes | __X__ No | b.  If yes, when: N/A |
|---|---|---|---|

**5.**  Note any past or present behavior and/or management/inmate concerns:

Diehl has a CIN assignment of Separation.

**6.**  BP337/BP338 Discrepancies:

There is one discrepancy noted between the BP337 and BP338.  On the BP337 it was noted he had a detainer.
Since no formal detainer was lodged as of this date, those points have been removed on his current BP338.

Staff have checked the following SENTRY Programs to ensure that they are correct and current:

Inmate Profile                          CIM Clearance and Separatee Data
Inmate Load Data                        Custody Classification Form
Sentence Computation                    Chronological Disciplinary Record

| Prepared by: | Unit Manager Signature: |
|---|---|
| S. Nink, Case Manager | S. Hansen, Unit Manager |

If the transfer is approved, a Progress Report will be completed prior to transfer.
*For Marial Cuban Detainees - Staff have entered the CMA Assignment of ACRP RV DT@ to indicate the need
for a Cuban Review Panel Hearing four months from his/her Roll-Over Date.

(This form may be replicated via WP)                    This form replaces EMS-409 of DEC 99

FOI
EXEMPT

**FILED UNDER SEAL**

*Page 6*                                           7-#11

## NO. D-1-FM-10-005993

| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| NATHANIEL ARCHIBALD DIEHL | § | 353 JUDICIAL DISTRICT |
| | § | |
| A CHILD | § | TRAVIS COUNTY, TEXAS |

### ORDER IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP

On June 2, 2011 the Court heard this case.

*Appearances*

Petitioner, Kerry L. Jenkins, appeared in person and through attorney of record, Cynthia Dyar, and announced ready for trial.

Respondent, David Diehl, appeared in person and through attorney of record, James Evans, and announced ready for trial.

Also appearing was Leslie Massad, appointed by the Court as guardian ad litem of the child the subject of this suit. The guardian ad litem has agreed to the terms of this order, as evidenced by the signature of the guardian ad litem below.

*Consent by Person with Right to Designate Primary Residence*

Kerry L. Jenkins, who has the exclusive right to designate the primary residence of the child, has consented to the terms of this order as evidenced by her signature below.

*Jurisdiction*

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction of this case and of all the parties under sections 152.201 and 152.203 of the Texas Family Code. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and all questions of fact and of law were submitted to the Court.

Page 1 of 17

Filed in The District Court
of Travis County, Texas

JUL 29 2011

At_____ M.
Amalia Rodriguez-Mendoza, Clerk

1   JOHN S. LEONARDO
    United States Attorney
2   District of Arizona
    J. COLE HERNANDEZ
3   Assistant U.S. Attorney
    Arizona State Bar No. 018802
4   405 W. Congress, Suite 4800
    Tucson, Arizona 85701-5040
5   Telephone: (520) 620-7300
    Email: cole.hernandez@usdoj.gov
6   Attorneys for Defendants

7              **IN THE UNITED STATES DISTRICT COURT**

8                **FOR THE DISTRICT OF ARIZONA**

9
    David A. Diehl,                          **4:13-CV-1996-TUC-JAS**
10
              Plaintiff,              **DEFENDANT MENDEZ'S**
11                                    **OBJECTIONS AND ANSWERS TO**
              v.                      **PLAINTIFF'S 1ST SET OF**
12                                    **NON-UNIFORM INTERROGATORIES**
    A. Mendez, et al.,
13
              Defendants.         \
14

15         Under the authority of Rule 33, Federal Rules of Civil Procedure, Defendant

16   Mendez hereby submits his objections and answers to Plaintiff's 1st Non-Uniform

17   Interrogatories as follows:

18                **1ST SET OF NON-UNIFORM INTERROGATORIES**

19         1.  Please identify the date Mitch Brokab filed a separatee against Petitioner.

20         RESPONSE:    Defendant Mendez is not aware of Inmate Brokab filing

21   documentation against Plaintiff.

22

23         2. Please describe in detail your complete roll in blocking Petitioners phone, mail,

24   email, and in investigating the Petitioners fight with inmate Odell Gene Golden. See

25   incident No. 28415~057. Please also indicate what roll you played in the investigation of

26   the seperatee filed by Mitch Brokab.

27         RESPONSE:  Defendant Mendez had no involvement in the alleged blocking of

28   Plaintiff's communications.  As a Special Investigative Agent (SIA), Defendant Mendez is

1  involved in investigations regarding allegations of staff misconduct and is not involved in

2  day-to-day inmate issues unless it involves a "high profile" inmate.   Plaintiff was not

3  considered a "high profile" inmate.

4

5      3. Please describe in detail your recommendations on Petitioners transfer from USP

6  Tucson.

7      RESPONSE: As a SIA, Defendant Mendez did not have any input on Plaintiff's

8  transfer.

9

10     4. Please identify each person known to you and not otherwise identified in your

11  answers to these interrogatories who has provided any information, or assistance of

12  whatever nature or description, relating to any of your answers to these interrogatories.

13     RESPONSE:   Other than communications with Defendant's counsel which are

14  privileged, there are none.

15

16     5. Please identify each person who has made to you sworn or unsworn statements

17  or provided information for affidavits or statements that relate to the allegations made in

18  Plaintiffs complaint, and state what information was provided.

19     RESPONSE:   Other than communications with Defendant's counsel which are

20  privileged, no one has provided Defendant Mendez with statements, information or

21  affidavits pertaining to Plaintiff.

22     Respectfully submitted this 27th day of July, 2016.

23
                                  JOHN S. LEONARDO
24                                United States Attorney
                                  District of Arizona
25

26                                s/ J Cole Hernandez
                                  J. COLE HERNANDEZ
27                                Assistant U/S Attorney

28

- 2 -

96

1

Copy of the foregoing marked "Special Mail" and
mailed this this 27ᵗʰ day of July, 2016, to:

2

3

David A. Diehl
Fed. Reg. No. #53214-018
USP Coleman II
P.O. Box 1034
Coleman, FL  33521
Prisoner Pro Se

4

5

6

*s/Mary McClain*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



This is a log of my interaction with the staff here

Cooper is a security agent who involved himself directly with this from the start. I think he is a liar.

1-1-2012

Warden says phone not blocked by BOP. Trust fund who manages phones said line was blocked at request of party

1-9-2012

Cooper calls me to his office and says FBI called and said I was harassing Keri. He said it was jail who blocked the calls in response.

→ BPE on cooper filed

1-13-2012

Cooper says they are investigating harassment

1-20-2012

My federal attorney Gerry Morris calls in and talks to Cooper. Cooper tells Gerry to petition court and prove my custody order is still valid. He seemed to indicate that he thought I was harrasing her because "I called allot around Christmas"

1-27-2012

Gerry talks to cooper and seems to think their plan is to get the judge to re-hear the case. [this represents clearly a conspiracy at this point between keri, FBI and prison to punish me and take my son]

E 33-2

help me anymore. Said State judge and Federal judge have no power here.


2-9-2012

Talked to Warden. He says I need to prove I have a right to talk to my son. [He is going off what Cooper has said to him]


3-5-2012

Called to my unit managers office. Says "called on the wrong days". Thats all there is to it. Said if I keep up with grievance they will send me to Terra Hut where I will be killed. Told me to forget about my son


✱ 3-12-2012

Warden and head of security Mendez meet with me. Warden tells him to give me the facts.
Mendez says "We are waiting on a call from your wife to restore your communications." Keri called regional and said I was harassing her so they blocked the phone".


✱ 3-18-2012

Talked to my sister(Amy Diehl 850 287 2195) She said she talked to Keri who admitted she caused the block on the phone.


4-11-2012

Met with Cooper, Mendez and other man.
They had a letter I wrote to Keri telling her that she needs to call in to straighten things out. They tell me if I write

E33

This is a log of my interaction with the staff here

Cooper is a security agent who involved himself directly with this from the start. I think he is a liar.

1-1-2012
Warden says phone not blocked by BOP. Trust fund who manages phones said line was blocked at request of party

1-9-2012
Cooper calls me to his office and says FBI called and said I was harassing Keri. He said it was jail who blocked the calls in response.

→  BPE on cooper filed

1-13-2012
Cooper says they are investigating harassment

1-20-2012
My federal attorney Gerry Morris calls in and talks to Cooper. Cooper tells Gerry to petition court and prove my custody order is still valid. He seemed to indicate that he thought I was harrasing her because "I called allot around Christmas"

1-27-2012
Gerry talks to cooper and seems to think their plan is to get the judge to re-hear the case. [this represents clearly a conspiracy at this point between keri, FBI and prison to punish me and take my son]

E 33-2

help me anymore. Said State judge and Federal judge have no
power here.


2-9-2012

Talked to Warden. He says I need to prove I have a right to
talk to my son. [He is going off what Cooper has said to him]


3-5-2012

Called to my unit managers office. Says "called on the wrong
days". Thats all there is to it. Said if I keep up with
grievance they will send me to Terra Hut where I will be
killed. Told me to forget about my son


3-12-2012

Warden and head of security Mendez meet with me. Warden tells
him to give me the facts.
Mendez says "We are waiting on a call from your wife to
restore your communications." Keri called regional and said I
was harassing her so they blocked the phone".


3-18-2012

Talked to my sister(Amy Diehl 850 287 2195) She said she
talked to Keri who admitted she caused the block on the phone.


4-11-2012

Met with Cooper, Mendez and other man.
They had a letter I wrote to Keri telling her that she needs
to call in to straighten things out. They tell me if I write

E34

CAUSE NO. D-1-FM-10-005993

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| NATHANIEL ARCHIBALD DIEHL | § | |
| | § | |
| | § | 353RD JUDICIAL DISTRICT |
| A CHILD | § | |
| | § | TRAVIS COUNTY, TEXAS |

## ORDER ON MOVANT'S MOTION
## FOR ENFORCEMENT AND MOTION FOR CONTEMPT

On June 21, 2012, the Court heard *Movant David Diehl's Motion for Enforcement & Motion for Contempt*, and, after reviewing the motion, the response, if any, evidence and arguments, the Court finds as follows:

(1) Respondent Keri Jenkins is ordered, within 10 days of the signing of this order, to submit written correspondence to the United States Penitentiary Tucson and the Federal Bureau of Prisons stating that she consents to the removal of the call block she previously requested that prohibited Movant David Diehl's ability to communicate by telephone with the child Nathaniel Archibald Diehl;

(2) Respondent Keri Jenkins is to submit the above correspondence to the following locations:

USP Tucson
U.S. Penitentiary
ATTN: Warden Apher
9300 S. Wilmot Road
Tucson, AZ 85706

U.S. Department of Justice
Federal Bureau of Prisons
Central Office
302 First Street, NW
Washington, DC 20534

(3) Respondent Keri Jenkins is ordered to reference Movant David Diehl, Inmate Number 53214018, in the correspondence referenced above.

SIGNED ON _July 10_____, 2012

_____
JUDGE PRESIDING

*Order on Movant's Motion for Enforcement and Motion for Contempt*
*ITIO: Diehl, A Child*
*Cause No. D1-FM-10-005993*
*353RD Judicial District, Travis County, Texas*

1 of 4

E3S

# VICARS
**Victims Initiative for Counseling Advocacy & Restoration of the Southwest**
*Protecting the rights of crime victims in Texas*

July 12, 2012

USP Tucson
U.S. Penitentiary
ATTN: Warden Aplher
9300 S. Wilmot Rd.
Tucson, AZ 85706
CMRRR#7008-1830-0000-0347-0740

U.S. Department of Justice
Federal Bureau of Prisons
Central Office
302 First St., NW
Washington, DC 20534
CMRRR#7008-1830-0000-0347-0733

Re:   David Diehl, Inmate Number 53214018

To Whom It May Concern:

I am writing on behalf of Kerry Jenkins, victim of the above-referenced offender.  On July 6, 2012, a state court in Travis County, Texas ordered Ms. Jenkins to "submit written correspondence to the United States Penitentiary Tucson and the Federal Bureau of Prisons stating she consents to the removal of the call block she previously requested that prohibited Movant David Diehl's ability to communicate by telephone with the child Nathaniel Archibald Diehl." A copy of the order is attached for your convenience. Accordingly, to the extent that a call block was requested by her, Ms. Jenkins consents to the removal of the call block at the following times: 6:00 p.m. Central Standard Time on the first, third, and fifth Sunday of each month consistent with the visitation orders in Cause No. D-1-FM-10-005993.  The telephone number affected is 512-216-0956.

Calls from Inmate Diehl received at any time outside 6:00 p.m. Central Standard Time on the first, third, and fifth Sundays will not be answered. Prior to the block being placed by the BOP, Inmate Diehl was making multiple phone calls to Ms. Jenkins and the child outside the court ordered visitation schedule including one day when upwards of 15 calls were made after the child refused to speak to Inmate Diehl.  Multiple calls from Inmate Diehl outside the state court approved times will be considered to be harassment of the victims.  Additionally, the state court's visitation order says, "If Nathaniel Archibald Diehl does not wish to speak to David Diehl, he is permitted to disconnect the call."  In other words, the minor child does not have to speak to the inmate.

It should be noted that our understanding was that Inmate Diehl's calls to the minor child, Nathaniel Archibald Diehl, were blocked not because of an outside request but because both Ms. Jenkins and the child are listed as victims of Inmate Diehl in the records of the federal criminal court proceeding. Since Federal Bureau of Prisons (BOP) regulations prohibit Mr. Diehl from contacting his victims, we understood that the calls were blocked pursuant to federal BOP policy which states; "Telephone numbers for Victims and Witnesses (as defined in 28 C.F.R. § 151-151 a. & b.) that have requested notification regarding an inmate at a Bureau facility will be blocked

815 Brazos, Suite 1100, Austin, Texas 78701 ♦ Toll free: 888-343-4414 ♦ FAX: 512-477-6576 ♦ www.idvictim.org
*A program of Texas Legal Services Center*

103

E35-2

Page 2

*who put them there*
*and on what basis*

at the facility where the inmate is housed." The victims are in the federal victim notification system. However, Inmate Diehl produced a letter to the state court signed by Robert E. McFadden, Regional Director, and dated May 8, 2012 saying, "your [Diehl's] calls were blocked at the request of your son's legal guardian." Director McFadden's letter also states, "Further, evidence shows that your [Diehl's] calls were of a nature which threatened the safety, security or the protection of the public."

In conclusion, to the extent that the call block was placed at the request of Inmate Diehl's victim Kerry Jenkins instead of pursuant to Federal BOP regulations for the safety and security of victims, Ms. Jenkins consents to unblocking 512-216-0956 on the first, third, and fifth Sundays of the month at 6:00 p.m. Central Standard Time for the purpose of Inmate Diehl to contact his son/victim Nathaniel Archibald Diehl. The purpose of this letter is to comply with an order of the 353rd Judicial District Court of Travis County, Texas on a Motion for Contempt that Inmate Diehl filed against his victim Kerry Jenkins.

If you have any questions or concerns about this matter, please do not hesitate to contact me at 1-888-343-4414.

Sincerely,

*Paula Pierce*

Paula Pierce
*Attorney for Kerry Jenkins*

cc:     Lucio A. Del Toro
        Victim Witness Coordinator/CMC

1   investigation, Case Manager Nink was informed by U.S. Probation, that Plaintiff was not
2   permitted to contact his son by phone, mail or email. (SOF 11.)
3          On July 24, 2012, a multidisciplinary team met to discuss Plaintiff's complaints
4   regarding not being able to contact his son, which developed after his ex-wife, Kerry
5   Jenkins, contacted SIS staff requesting his phone calls to be restricted. According to Ms.
6   Jenkins, Plaintiff was calling multiple times per day, and calling outside the times
7   authorized by the state court. The group also discussed information provided to the unit
8   team by the U.S. Probation Office indicating that Plaintiff's son, although not officially
9   listed as a victim, was the three-year-old John Doe described in Plaintiff's pre-sentence
10  report. (SOF 14.)
11         It should be noted that Defendant Hansen was part of the Unit Disciplinary
12  Committee ("UDC") that referred the July 25, 2012, incident to the Disciplinary Hearing
13  Officer ("DHO"). However, Plaintiff was provided with a re-written incident report that
14  included additional details of the violation on August 8, 2012. Although the UDC again
15  referred the matter to the DHO, Defendant Hansen was not part of the committee referring
16  the matter to the DHO. (SOF 16.) More importantly, it was not until sometime after
17  August 8, 2012, that U.S. Probation informed Plaintiff that the sentencing judge, U.S.
18  District Judge Yeakel, had agreed to follow Plaintiff's July 29, 2011, order from the state
19  court permitting contact between Plaintiff and his son on the dates specified in the order.
20  (SOF 17.)   Finally, in light of the information provided to Case Manager Nink, the block
21  on Plaintiff's calls to his son advanced a legitimate correction goal in BOP's Sex Offender
22  Management Program. (SOF 20 & 21.) Because Plaintiff cannot establish the elements of
23  a First Amendment retaliation claim as to Defendant Hansen personally, summary
24  judgment should be granted in Defendant Hansen's favor.
25
26
27
28

- 14 -

105

AO 245 B (Rev. 09/08)(W.D.TX.) - Supervised Release

Defendant: DAVID ANDREW DIEHL
Case Number: A-10-CR-207(01)-LY

Judgment—Page 3

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of FIVE (5) YEARS.  This term consists of 5 years on each of Counts SS1 through SS10 to be served concurrently.

While on supervised release, the defendant shall comply with the mandatory, standard and if applicable, the special conditions that have been adopted by this Court as set forth on pages 4 and 5 of this judgment.

The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.

The defendant shall comply with the following special conditions:

The defendant shall have no direct or indirect contact with any victims named within the presentence report, to include Jane Doe #1, Jane Doe #2 and Jane Doe #3, without the prior written consent of the probation officer.

The defendant shall attend and participate in a sex offender treatment program operated by a Licensed Sex Offender Treatment Provider (LSOTP) and/or other sex offender treatment program approved by the probation officer. The defendant shall abide by all program rules, requirements and conditions of the sex offender treatment program, including submission to polygraph examinations, to determine if the defendant is in compliance with the conditions of release. The defendant may be required to contribute to the cost of services rendered (copayment) in an amount to be determined by the probation officer, based on the defendant's ability to pay.

The defendant shall follow all other lifestyle restrictions or treatment requirements imposed by the therapist, and continue those restrictions as they pertain to avoiding risk situations throughout the course of supervision. This includes not residing or going to places where a minor or minors are known to frequent without prior approval of the probation officer.

The defendant shall not associate with any child or children under the age of 18 except in the presence and supervision of an adult specifically designated in writing by the probation officer. The probation officer will notify the designated adult of risks occasioned by the defendant's criminal record or personal history or characteristics. The defendant shall permit the probation officer to make such notifications.

The defendant shall reside in a residence approved, in advance, by the probation officer. Any changes in the residence must be pre-approved by the probation officer.

The defendant shall not reside within 1,000 feet of the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, university or playground or a housing authority owned by a public housing authority or within 100 feet of a public or private youth center, public swimming pool or video arcade facility, without prior approval of the probation officer.

**FILED UNDER SEAL**

E40

**Summary:**

On August 27, 2013, at approximately 10:45 p.m., Staff assigned to Units B-1 and B-2, responded to a Medical Duress alarm, activated from cell B01-215, occupied by inmates David Andrew Diehl, Reg. No. 53214-018, and ███████████, Reg. No. ████████ Inmate Diehl was standing at the door and inmate ███ was under his blanket on the upper bunk. Staff ordered inmate ███████ to the door. Staff detected bruising and what appeared to be dried blood on inmate ███'s face and hair. Both inmates were placed in hand restraints, and ultimately complied with staff orders. Subsequently, inmate ███ received an incident report for threatening staff. Medical Staff were not available (off duty); therefore upon photos being taken, the inmates were placed in Administrative Detention without further incident.

Both Can fited from inmate Golden sex crime (1 wo)

**Inmate Data:**



Biored

| | |
|---|---|
| **Name:** ███████████ | |
| **Role:** Victim | **Age:** 45   **Race:** WHITE |
| **Security Level:** HIGH | **Custody Level:** IN |
| **Facility Arrival Date:** 7/31/2009 | **Projected Release Date:** 5/21/2026 |

**Charges:**

| Description | Sentencing District |
|---|---|
| 18:2252A(A)(2) RECEIPT OF CHILD PORNOGRAPHY | NEW YORK, WESTERN DISTRICT |

| STGs: | CIMs: |
|---|---|
| SEX OFFENDER | No CIMs Found |



| | |
|---|---|
| **Name:** 53214018 - DIEHL, DAVID | |
| **Role:** Suspect | **Age:** 51   **Race:** WHITE |
| **Security Level:** HIGH | **Custody Level:** IN |
| **Facility Arrival Date:** 11/18/2011 | **Projected Release Date:** 10/28/2053 |

**Charges:**

| Description | Sentencing District |
|---|---|
| 18:2251(1) SEXUAL EXPLOITATION OF A CHILD. PRODUCTION OF CHILD PORNOGRAPHY. | TEXAS, WESTERN DISTRICT |

| STGs: | CIMs: |
|---|---|
| SEX OFFENDER | No CIMs Found |

SBU - Sensitive But Unclassified          Page 2 of 9          F.O.I. EXEMPT   FOIA Exempt

**FILED UNDER SEAL**

107

Name: ███████████████

Role:  Suspect                                              Age: 47    Race: WHITE

Security Level:  HIGH                            Custody Level:  IN

Facility Arrival Date: 4/25/2013          Projected Release Date: 11/30/2025

Charges:

Description                                                 Sentencing District

18:922(G)(1) & 924(E); FELON IN        NORTH CAROLINA, MIDDLE DISTRIC
POSSESSION OF A FIREARM.

STGs:                                                        CIMs:

SEX OFFENDER                                      SEPARATION

**Victim Statements:**

Date: 10/10/2013 2:00 PM                          Location:

Interviewer: Whitten                                    Title:

Interviewee: ████████████████████

Inmate ████████ Reg. No. ████████ submitted an Inmate Request to Staff (Cop-Out), addressed to Case Manager S. Nink, with the following complaint/concern: "I hereby swear to this statement, that I ████████ am writing. David Diehl is constantly harassing me with I believe to be of a sexual nature and threatening me with physical violence. He was in the SHU and now he's out. I fear for my safety and want a separatise put on him."

Date: 10/15/2013 9:55 AM                          Location: Lieutenant's Office

Interviewer: Alvarez, F.                              Title: SIS Lieutenant

Interviewee: ████████████████████

Inmate ████████ Reg. No. ████████ who is a Care Level-2 (Stable, Chronic Care and Mental Health), was interviewed, and stated that inmate David Andrew Diehl, Reg. No. 53214-018, has been a constant threat towards him, as Diehl is persistent, and continuously puts pressure on him by verbally telling him that he wants to have sex ████████ stated he has told Diehl to stop harassing him, but, that Diehl just ignores him. ████ stated that inmate ████████ Reg. No. ████████ was in a similar predicament as Diehl, however ████████ only harasses other people in a disrespectful manner ████ stated that ████ finally stood up to Diehl, and that's the reason they fought and are now both in the Special Housing Unit ████ stated that Diehl has never touched him ████ but, that it's getting to the point that they are going to end up fighting if Diehl continues his sexual proposals and passive remarks ████ stated that he hasn't confronted Diehl in an aggressive or defensive manner, because he is on Psych medications and doesn't want to jeopardize his treatments.

**Assailant Statements:**

\*\*No information was found for the given criteria.\*\*

SBU - Sensitive But Unclassified                    Page 3 of 9

F.O.I. EXEMPT

FOIA Exempt

**FILED UNDER SEAL**

**Other Statements:**

Date: 10/18/2013 10:39 AM                         Location: Lieutenant's Office

Interviewer: Alvarez, F.                          Title: SIS Lieutenant

Interviewee: Brown, T.                            Title: Admin Lieutenant

Lieutenant T. Brown was interviewed and stated he submitted a memorandum that on August 27, 2013, at approximately 10:45 p.m., Staff assigned to Units B-1 and B-2, responded to a Medical Duress alarm, activated from cell B01-216, occupied by Inmates David Andrew Diehl, Reg. No. 53214-018, and ▇▇▇▇▇▇▇▇▇ Reg. No ▇▇▇▇▇▇ Inmate Diehl was standing at the door and Inmate ▇▇▇▇▇ was under his blanket on the upper bunk. Staff ordered Inmate ▇▇▇▇ to the door. Staff detected bruising and what appeared to be dried blood on Inmate ▇▇▇▇ face and hair. Both Inmates complied with staff orders, and were placed in hand restraints. During the move to the Special Housing Unit, Inmate ▇▇▇▇ alleged that staff had caused the injuries to his head and face when they "slammed" his head into the glass in the front of the cell. Inmate Diehl stated that he and his cellmate ▇▇▇▇▇ had been "horsing around and wrestling". Diehl stated that staff had not inflicted any of the marks on him or his cellmate. Lieutenant Brown concluded that there was no staff involved in a use of force as both Inmates complied with staff orders while being placed in restraints. However, Medical Staff were not available (off duty); therefore upon photos being taken, the Inmates were placed in Administrative Detention without further incident, and the medical assessments were done on the following day. Lieutenant Brown stated that based on Inmate Diehl admitting to wrestling, he felt both Inmates fought, however, did not have enough evidence, such as medical assessments to complete Incident reports.

Date: 10/21/2013 1:37 PM                          Location: Outside Environs

Interviewer: Alvarez, F.                          Title: SIS Lieutenant

Interviewee: Cota, I.                             Title: Senior Officer Specialist

Senior Officer Specialist I. Cota, was interviewed, and stated that on August 27, 2013, at about 10:45 p.m., he and Senior Officer S. Sanchez-Garcia responded to a duress alarm triggered from cell B01-215, assigned to Inmates David Andrew Diehl, Reg. No. 53214-018, and ▇▇▇▇▇▇▇▇ Reg. No. ▇▇▇▇▇▇ Cota stated that as they initially arrived at the cell, the room was dark, and he ordered the Inmates to turn on the light. Cota stated that Diehl turned on the light and ▇▇▇▇ was covered with a blanket. Cota stated that once other responding staff arrived, they entered the cell, and noticed that both Inmates were breathing profusely, similar to two persons either completing to exercise, or being involved in a physical altercation, and that ▇▇▇▇ had blood on his face. Cota stated that he wrote an Incident report on Inmate ▇▇▇▇ for violating code 206 (Making Sexual Proposals or Threats to Another); however, during the UDC/DHO hearing, the charge was changed/corrected to 203 (Threatening with Bodily Harm). Cota stated that after applying hand restraints on Inmate ▇▇▇▇ he questioned him ▇▇▇ of the Incident asking place, and that ▇▇▇▇ stated, "Don't fucken talk to me. Take the hand cuffs off. I'm going to fuck you up". Cota stated he then felt threatened, and decided to place Inmate ▇▇▇▇ up against the wall, but, that ▇▇▇ then pushed away from the wall, and attempted to spit on him (Cota). Cota stated that on other instances prior to this incident, he has ordered Inmate ▇▇▇ to back away from his personnel space, as he ▇▇▇ has no respect towards staff. Cota stated he fears for his safety that ▇▇▇ will retaliate against him if he is released from the Special Housing Unit.

Date: 10/17/2013 10:14 AM                         Location:

Interviewer: Written                              Title:

Interviewee: Nink, S.                             Title: Case Manager

Case Manager S. Nink submitted a memorandum via e-mail, with the following information: "At the end of August 2013, Inmate ▇▇▇▇ approached Unit Manager Hansen about a PREA allegation. Hansen called me in the office and Inmate ▇▇▇▇ expressed some concerns regarding Inmate David Diehl 53214-018. He stated that he was making passive comments and suggested comments that made him feel uncomfortable. Hansen made notifications at that time. Diehl was released from SHU due to his investigation being completed with Inmate ▇▇▇▇▇ stated to some of the other Inmates that he was getting looks from Diehl which made him think he may try something and that he may have to defend himself if it came down to that. ▇▇▇ came and reported to staff again due to the fact that he was not trying to be disgusted or to have to do something that would end up with him in SHU and maybe getting transferred. I have attached a copy of the Inmate request to staff that ▇▇▇ wrote after I spoke to him on October 10, 2013. I spoke with Inmate Diehl during my SHU rounds and he brought up his investigation. I told him that I was not able to give him any information and he told me that he knew it was ▇▇▇ that had him in the SHU and he said it was over the TV sets and that a program was going to be coming on TV in the near future and he knew that he would want to watch so he made false accusations to get Diehl out of the way. It seemed like an unlikely story but I believe that there is tension between the two and I would recommend transferring Inmate Diehl to a facility commensurate to his programming and security needs."

SBU – Sensitive But Unclassified          Page 4 of 9                    FOIA Exempt

**FILED UNDER SEAL**

109

Date: 10/16/2013 10:15 AM

Location: Housing Unit, Special (SHU)

Interviewer: Alvarez, F.

Title: SIS Lieutenant

Interviewee: Renteria, T.

Title: Correctional Officer

Correctional Officer T. Renteria, assigned as the Special Housing Unit #3 Officer, stated that Inmate David Andrew Diehl, Reg. No. 53214-018, refused to be escorted from his cell to the SHU Lieutenants Office for an interview stating, "I'm not going to fucking come out. If he (Lieutenant F. Alvarez) wants to talk to me, he can come over here."

Date: 10/22/2013 8:44 AM

Location: Outside Environs

Interviewer: Alvarez, F.

Title: SIS Lieutenant

Interviewee: Sanchez-Garcia, S.

Title: Senior Officer

Senior Officer S. Sanchez-Garcia was interviewed, and stated that on August 27, 2013, at about 10:45 p.m., he and Senior Officer Specialist I. Cota had completed the official count, when they responded to a duress alarm in Unit B-1. Sanchez-Garcia stated that once arriving to cell B01-215, assigned to inmates ██████████████ and David Andrew Diehl, Reg. No. 53214-018, he heard someone yelling out that they had accidentally hit the duress alarm. Sanchez-Garcia stated that Inmate Diehl, who turned on the light, appeared to be out of breath; and that Inmate Golden was on the upper bunk bleeding from his face. Sanchez-Garcia stated he placed hand restraints on Inmate Diehl, and that Officer Cota took care of Inmate ██████ and that both inmates appeared to be nervous and in a bad mood. Sanchez-Garcia stated that from past experiences, he felt inmates Diehl and ██████████ were involved in a physical altercation. Sanchez-Garcia stated he did not witness the incident between Officer Cota and Inmate ██████ as he was already escorting Inmate Diehl out into the common area. Sanchez-Garcia stated that Cota later informed him that ██████████ attempted to spit on him, and that he had been having previous problems with Golden prior to this incident taking place.

Date: 10/17/2013 12:19 PM

Location: Compound

Interviewer: Alvarez, F.

Title: SIS Lieutenant

Interviewee: ████████████████████

Inmate ████████████, Reg. No. ████████, was interviewed, and stated that inmates David Andrew Diehl, Reg. No. 53214-018, and ██████████ Reg. No. ████████, are not very well liked on the Compound, especially after their incident which opened up some discussions concerning both inmates being very disrespect to other inmates including staff. ██████ stated that no one witnessed the incident, but, that word on the compound was that Diehl is going to get hurt if he returns to general population. ██████████ stated that ████████ is crazy, and not sure if it is okay for ██████ to be released back to the compound, as no one wants to be his cellmate.

Date: 10/18/2013 11:12 AM

Location: Compound

Interviewer: Alvarez, F.

Title: SIS Lieutenant

Interviewee: ████████████████████

Inmate ████████████ Reg. No. ████████████ was interviewed, and he stated that inmates David Andrew Diehl, Reg. No. 53214-018, and ██████████ Reg. No. ████████, fought with each other due to disrespect issues. ██████ stated that most inmates in the unit were content after both Diehl and ██████████ were escorted to the Special Housing Unit (SHU), and that hopefully they will not return. ██████ stated that ████████████ is an irrational, disrespectful, and unpredictable person, especially towards staff members and directly was constantly disrespecting and harassing people. ██████ stated that Diehl was mostly harassing inmates. ██████ Reg. No. ████████ and is surprised Diehl and ██████████ haven't fought sooner. ██████ stated that ██████████ were afraid to defend himself due to regulation concerns arising from Diehl. ██████ stated that after Diehl and ██████████ were placed in the SHU, ██████ felt safe, and now has comfortably been reporting his allegations against Diehl. ██████ stated that Diehl and ██████████ stated he never witnessed any physical sexual contact or behavior from Diehl and other inmates, but, that Diehl had a routine of making sexual comments or harassing remarks, especially towards ██████ ██████ stated that Diehl and ██████████ were frequently arguing with each other, and that ██████ finally had enough and stood his ground.

Date: 10/16/2013 9:55 AM

Location: Housing Unit, Special (SHU)

Interviewer: Alvarez, F.

Title: SIS Lieutenant

Interviewee: ████████████████████

Inmate ████████████, Reg. No, ████████, who is a Care Level-1 (Mental Health), and Care Level-2 (Stable, Chronic Care), was interviewed, and stated that the incident with Inmate David Andrew Diehl, Reg. No. 53214-018, was over, and that nothing ever happened between them. ██████ then refused to give a reason, but, requested not to ever be housed with Diehl. ██████ then changed the subject matter, and stated his injuries were mostly caused by staff. When asked if he had been injured by Inmate Diehl, ██████ expressed a poor attitude stating he had nothing more to say.

SBU - Sensitive But Unclassified

Page 8 of 9

F.O.I. EXEMPT

Date: 10/16/2013 10:17 AM

Location: Housing Unit, Special (SHU)

Interviewer: Alvarez, F.

Title: SIS Lieutenant

Interviewee: 63214016 - DIEHL, DAVID

Repeat

Inmate David Andrew Diehl, Reg. No. 63214-018, who refused to be interviewed in the confines of the SHU Lieutenants Office, and conveyed a poor attitude by yelling out that he had nothing to hide. Diehl stated there was nothing sensitive concerning the allegations made against him, and he did not need any privacy. Diehl stated that he didn't care for a private area, and that the interview could be done in the presence of other inmates. Diehl then became uncooperative, and refused to come out of his cell.

Factual Findings:

**No item information was found for the given criteria.**

SBU – Sensitive But Unclassified

Page 6 of 9

F.O.I. EXEMPT

FOIA Exempt

**FILED UNDER SEAL**

111

| Type | Subtype | File Name | Original Entered By |
|---|---|---|---|
| Medical | Inmate Assessments | Clinical Encounter for Inmate Diehl.pdf | TF36419 |
| Clinical Encounter for Inmate Diehl | | | |
| Medical | Inmate Assessments | Clinical Encounter for Inmate ▆▆.pdf | TF36419 |
| Clinical Encounter for Inmate ▆▆ | | | |
| Communications | Non-Inmate Email | e-mail from CaseManager S Nink.pdf | TF36419 |
| e-mail from CaseManager S Nink | | | |
| Communications | Non-Inmate Email | e-mail from Lt T Brown 08 28 2013.pdf | TF36419 |
| e-mail from Lt T Brown 08 28 2013 | | | |
| Logs | Correctional Services | EW Roster 08 27 2013.pdf | TF36419 |
| EW Roster 08 27 2013 | | | |
| TRU-related Documents | TRUINTEL | GlobalInmateSearchReport ▆▆.pdf | TF36419 |
| GlobalInmateSearchReport ▆▆ | | | |
| TRU-related Documents | TRUINTEL | GlobalInmateSearchReport Diehl.pdf | TF36419 |
| GlobalInmateSearchReport Diehl | | | |
| TRU-related Documents | TRUINTEL | GlobalInmateSearchReport ▆▆.pdf | TF36419 |
| GlobalInmateSearchReport ▆▆ | | | |
| Inmate Discipline | Incident Report | Incident Report 201 Diehl.pdf | TF36419 |
| Incident Report 201 Diehl | | | |
| Inmate Discipline | Incident Report | Incident Report 201 ▆▆.pdf | TF36419 |
| Incident Report 201 ▆▆ | | | |
| Inmate Discipline | Incident Report | Incident Report 206 changed to 203 08 27 2013.pdf | TF36419 |
| Incident Report 206 changed to 203 ▆▆ 08-27-2013 | | | |
| Communications | Inmate Request to Staff | Inmate Request To Staff Cop Out 10 10 2013.pdf | TF36419 |
| Inmate Request To Staff Cop Out ▆▆ 10 10 2013 | | | |
| Logs | Lieutenant's | Lts Daily Log EW 08 27 2013.pdf | TF36419 |
| Lts Daily Log EW 08 27 2013 | | | |
| Statements & Written Memorandums | Staff Provided | Memo from CaseManager S Nink.PDF | TF36419 |
| Memo from CaseManager S Nink | | | |

SBU - Sensitive But Unclassified                    Page 7 of 9

F.O.I. EXEMPT

**FILED UNDER SEAL**

112

| Statements & Written Memorandums | Operation's Lieutenant | Memo Ops Lieutenant.pdf | TF36419 |
| Memo Ops Lieutenant | | | |
| Statements & Written Memorandums | Staff Provided | Memo from SIS for UDC-DHO.pdf | TF36419 |
| Memo from SIS for UDC-DHO | | | |
| Photographs | Photo Spread | Photos Cell B01 215 Area and Window.pdf | TF36419 |
| Photos Cell B01 215 Area and Window | | | |
| Photographs | Inmate Injury | Photos Inmate Diehl.pdf | TF36419 |
| Photos Inmate Diehl | | | |
| Photographs | Inmate Injury | Photos Inmate ██████ pdf | TF36419 |
| Photos Inmate Golden | | | |
| Communications | Inmate Request to Staff | Request for Administrative Remedy BP 9 Inmate ██████ pdf | TF36419 |

Request for Administrative Remedy BP 9 Inmate Golden

Conclusion:
On August 27, 2013, at approximately 10:45 p.m., Staff assigned to Units B-1 and B-2, responded to a Medical Duress alarm, activated from cell B01-215, occupied by Inmates David Andrew Diehl, Reg. No. 63214-018, and ██████ Reg. No. ██████ Inmate Diehl was standing at the door and Inmate ██████ was under his blanket on the upper bunk. Staff ordered Inmate ██████ to the door. Staff detected bruising and what appeared to be dried blood on Inmate ██████ face and hair. Both inmates were placed in hand restraints, and ultimately complied with staff orders. Subsequently, Inmate ██████ received an incident report for threatening staff. Medical Staff were not available (off duty); therefore upon photos being taken, the inmates were placed in Administrative Detention without further incident.

On August 28, 2013, during the move to the Special Housing Unit, and on the following day during medical assessments; both inmates made conflicting statements towards staff. ██████ alleged that staff had caused the injuries to his head and face when they "slammed" his head into the glass in the front of the unit. Diehl stated that he and his cellmate ██████ had been "horsing around and wrestling". Diehl stated that staff had not inflicted any of the marks on him or his cellmate. On August 28, 2013, Inmates Diehl and ██████ received medical attention, and treated with first aid for minor injuries. Inmate Diehl, who was noted, having a minor scratch on his abdomen; stated to medical staff that he injured himself while playing basketball, and hit the panic button because his cellmate was in pain. Inmate ██████ who was noted, having a blackened right eye, a minor laceration on his forehead, and a minor laceration to the top right of his right shoulder, stated to medical staff that the Officers beat him up.

Photos taken inside the cell, show blood stains on a blanket, blood stains on a makeshift string, and a blood stain on the floor. Also, photos of both inmates show injuries sustained being indicative and/or consistent with two persons being involved in a physical altercation.

On August 28, 2013, Inmate ██████ Re. No. ██████ submitted a Request for Administrative Remedy (BP-9, Case No. 748326F-1) alleging staff assaulted him on August 27, 2013, however, denied based on the allegations being determined to be unfounded, and without merit.

Upon the initiation of this investigation, the CCTV was reviewed with negative results. However, based on Inmate Diehl's refusal to cooperate with the investigation, conflicting statements made by both inmates, to include Diehl's initial statement that he was "horsing around and wrestling", an incident report written on ██████ for threatening staff, other factors of this investigation, interviews, circumstances, photos and medical assessment indicative and/or consistent with two persons being involved in a physical altercation, it has been determined that inmates Diehl and ██████ both had a misunderstanding over harassment and disrespect issues, resulting with both inmates fighting

F.O.I. EXEMPT

**FILED UNDER SEAL**

with each other in cell B01-215, occurring on August 27, 2013, at approximately 10:45 p.m. Furthermore, a greater weight of evidence shows that inmate Diehl was sexually harassing inmates ████████ and ████████, Reg. No. ████████. There are concerns from staff and inmates on the Compound if inmates ████ and Diehl return back to general population.

Based on the institutional mission at USP Tucson, inmates refusing to actively associate with sex offenders are not to be placed in general population due to the amount of sex offenders that are currently housed at the facility. Inmates with this type of mentality pose a threat to the orderly running of the institution, other inmates, and themselves. In addition, USP Tucson is a High Security Sex Offender Management site and provides inmates with sex offender histories the opportunity to receive treatment. Inmates unwilling to participate with sex offenders are known to assault sex offenders on sight and their presence in general population is a danger to inmates in the Sex Offender Management Program (SOMP) that is offered at our facility. There is a high probability that inmates Diehl and ████████ will retaliate and seriously assault another person if they return back to general population.

**Recommendation:**

Based on information obtained during the investigation, and due to inmates David Andrew Diehl, Reg. No. 58214-018, and ████████, Reg. No. ████████ providing conflicting and/or false statements, inmate Diehl refusing to cooperate with the investigation, and to ensure the safety of staff and for inmate ████████ Reg. No. ████████ (currently assigned to Unit B-1, cell B01-104L) from any retaliation concerns, it is strongly believed and recommended by this investigator that inmates Diehl and ████████ remain in the Special Housing Unit, until they can be transferred to an institution commensurate with their security and programming needs, and that inmate Diehl be formally separated from inmates ████████ and ████████.

F.O.I. EXEMPT

**FILED UNDER SEAL**

114

E 41

Warden Winn,                          2-11-2013

Below is the timeline you asked for.

1. I had full custody of my son until my arrest two years ago.
He is now 16 and was raised very well.
2. In March 2010 I was arrested for 11 year old events so
custody had to be changed. The court entered an order on Jun
2, 2011 indicating primary custody was granted to my wife, and
I was to retain rights to visit, call, and write letter.
Because my ex-wife didn't want to be "bugged" the court
indicated I should call on the 1st, 3rd, and 5th Sunday at
6:00 pm of each month. That schedule was not based on
anything, but my ex-wives request. It wasn't based on anything
sinister like molestation. The federal government placed no re
strictions on my son at all. This has been clarified in
numerous ways.
3. Several months into the custody schedule, whereby it wasn't
practical for many reasons, including time zones, dinner
schedule, her schedule, my wife, not I, suggested we change
the calling schedule. I spoke with my attorney cleared who
assured me if she was in agreement it would be ok with the
court.
4. After being told during a conversation with my son that
someone was taking pictures of him with his cloths off at the
nudist camp she refuses to give up, in December 2011, and
confronting my ex wife about the issue, she decided to call
into USP Tucson and claim I was calling her on the wrong days.

Her call was a clear attempt to get Tucson staff to violate the court order, so she would not be held in contempt for blocking the phone herself. She maintains however that she did NOT request the phone to be blocked. Lt. Cooper confirmed this. She testified in court to it.

5. After USP Tucson blocked the phone I took my ex-wife back to court in July 2012 for contempt. The judge heard all facts regarding the calls, and told her to request to the Warden to have the phone un-blocked.

The court, abreast of all details, and with jurisdiction of the matter, did not find I called on the wrong days. This is clear from the order. During that hearing my attorney and I learned that Roy Qualatine at BOP central enrolled her in the Victim Notification System, weeks before the hearing in a clear attempt to aid her in violating the court order. This is illegal, as the only person authorized to enter someone in VNS is the United States Attorney in the district of the case. She also was not a Victim according to federal law.

After receiving the letter from the court, your staff held a meeting where I guess they decided to accuse me of "use of a telephone to further criminal activity". I am not guilty of any infraction, let alone "criminal activity".

At this point my ability to call my son per the court order has been taken for 1 year. In that time my son has been left in serious jeopardy. It is obvious to me based on many discussions with staff here, including Mendez, Pendelton and Ninks that this institution thinks I should have no relationship with children including my own, and they, on their own have decided to terminate my relationship with my

116

son. The PSR which is being appealed has numerous false accusations, and has led them to take matters into their own hands and attempt to override court orders. They have admitted this with statements such as "we dont have to listen to state and federal courts". And they are certain they don't. They would be Cooper, and Penndelton in particular. Also Mendez has made comments about my wife being 17 when I married her and in his head this justifies me not talking to her. I was told by him if I mail her, which I have a legal right to do he will have me shipped and I will likely be killed! My marriage was completely legal and frankly it is none of his business. What has happened in my situation here is out of control.

I hope you will assist me in putting an end to this. I can not get a hold of my attorney by phone, and this has seriously effected my direct appeal which has been postponed 3 times. I cant contact at all my 80 year old dad, my sister who has cancer, or my son. The staff here has put me through enough. I am asking you to get involved as I have for the last six months.

David Diehl, 53214018



**SENSITIVE BUT UNCLASSIFIED**



**Federal Bureau of Prisons
Psychology Data System**

Date-Title: 07-06-2012 - SOMP Administrative Note
Reg Number-Name: 53214-018 - DIEHL, DAVID A.    Unit/Qtrs: UNIT 3, B01-215U
Author: LISA B. UNRUH PARKER, SEX OFFENDER PROG PSYCH
Institution: TCP - TUCSON USP

The following information was forwarded to SOMP staff by Inmate Diehl's case manager. Based on the following information, Inmate Diehl is not permitted to contact his son.

The case manager reported in an email (full email attached):

"I talked to his probation officer today trying to find out if he was allowed contact with his son. According to her the judge ordered that he have no contact with anyone under the age of 18 without written permission from the probation officer. She has stated that he is to have NO contact (mail, phone, email) with his son at this time and if he wants to take it up with her he can write a letter to the judge or his probation officer."

**SENSITIVE BUT UNCLASSIFIED**

SUBJECT TO PRIVACY ACT PROTECTIVE ORDER      Diehl 399

E43

**SUBJECT TO PRIVACY ACT PROTECTIVE ORDER**

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***



**Federal Bureau of Prisons**
**Psychology Data System**

**Date-Title:** 07-24-2012 - SOMP Administrative Note
**Reg Number-Name:** 53214-018 - DIEHL, DAVID A.   **Unit/Qtrs:** UNIT B, B01-21SU
**Author:** LISA B. UNRUH PARKER, SEX OFFENDER PROG PSYCH
**Institution:** TCP - TUCSON USP

Multidisciplinary team met to discuss Inmate Diehl's complaints about not being able to contact his son. Unit team, SOMP Coordinator, Complex Attorney, Mail room, and Trust Fund participated in the meeting. Inmate Diehl complained his phone was restricted and he was unable to contact his son as permitted by the family court. According to information provided by the probation to unit team, Inmate Diehl's son was a victim in his instant offense. The PSI describes a 3 year old male who was also victimized, but was not listed officially as a victim. The complex attorney advised his son was not included in the current charges due to an agreement between the prosecution and defense.

Problems developed when Inmate Diehl's ex-wife contacted SIS staff asking that his phone calls to their son be restricted to the specified times. She stated Inmate Diehl was calling multiple times a day and calling outside the scheduled times. Unit team provided a list of phone calls to support her statements. At that time, SIS staff fully restricted Inmate Diehl from calling that number. Inmate Diehl filed a grievance stating he should be allowed to call his son. He was informed he was restricted at his ex-wife's request. Inmate Diehl then filed paperwork with the family court saying his ex-wife was violating the court's order. His ex-wife was then ordered by the court to remove the restriction. She submitted a request through her victim advocate asking he be restricted from calling the number outside of the specified times, but that he be permitted to call.

Inmate Diehl's son is listed as a victim under Victim Notification. The probation officer was meeting with the Federal Judge to determine if the judge wanted the son listed as a victim in the case. If not, Unit Team will contact VNS to discuss this information and revise victim notification. If he is not identified as a victim, he will be permitted to call his son at the appointed times. If he deviates from the appointed times, he will be issued disciplinary for abusing the phone system. The team decided he had also abused the phone system previously, as the telephone logs were reviewed. Unit team stated he will be issued disciplinary for that behavior.

If his son is identified by the court as a victim, he will not be allowed to have contact with his son unless approved by the Warden. Unit team will provide an update to meeting team members when additional information from the probation officer is available.

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

E 45

## Criminal Complaint

David A. Diehl is filing a criminal complaint naming the following individuals:

SIA Supervisor : M. Mendez
Unit Managers : Pennington and Hansen
Case Manager : Pendleton and Wink
DHO Agents : Patrika and Phillips
Mailroom Manager : Molinar
Wardens : Apker and Winn
BOP Central Unit Mgr : Roy Quahatine
Unknown SIS Staff :
Unknown FBI Agent :

Count 1      Computer and Wire Fraud

In July 2011 SIA Mendez who seems to have orchestrated this entire matter, conspired with members of Diehls unit team along with a BOP Central unit manager - Roy Avalantine to defraud a Travis County Texas judge. Staff conspired to defraud the judge by entering Diehls ex-wife, Keri Jenkins into the federal Victim Notification system (VNS) just prior to a court hearing where Mrs Jenkins was facing contempt charges for accusedly causing her phone to become blocked from Mr Diehls access.

By entering Mrs Jenkins into VNS Staff hoped to deceive the judge into believing their were federal restrictions in place that justified the block. This was knowingly false.

Count 2   Fraud

SIA Mendez falsified information on a BP-10 response sent to Region by falsley accusing Diehls ex-wife of asking for her phone number to be blocked. This action has resulted (in part) in a bench warrant being issued against Keri Jenkins for contempt. Keri Jenkins never asked for her phone to be blocked, she could have blocked her own phone at any time as the BOP phone system presents that option on every call.

121

Count 3   Computer-wire fraud

SIA Mendez along with Unit team committed fraud when they met and conspired to knowingly falsify an incident report logged against Diehl. The incident was designed to undermine the authority and jurisdiction of the state judge by effectively justifying continuing the phone block. The incident was written on the six month old phone calls.

These individuals further conspired with DHO agent Patrika to take Diehls phone privileges for two years. A year and one half later after the Regional office overturned the fraudulent shot, staff refused to unblock the phone, and transfered Diehl.

Count 4   Fraud; Obstruction of justice

Instead of turning Diehls phone privileges on, SIA Mendez took a threat assesment report and misrepresented evidence, holding a mock investigation where Diehl was never interviewed, video evidence was ignored, and Diehl was shipped out of USP Tucson without any due process. This action resulted in a complete shut down of Diehls ability to proceed on his direct appeal with the Fifth Circuit as well as his pending remedy appeals and Bivens case with the Ninth district court in

122

Count 5      Federal mail tampering

SIA Mendez, Unit team and the mailroom staff conspired to further undermine Diehls custody agreement by taking Diehls mail which was adressed to his son. To accomplish this act staff knowingly wrote a false incident report. This incident report accused Diehl of illegally contacting his son. After the fradulent incident was overturned staff would not return the letter. Staff also stole a federal tort claim sent to Region and consistently took mail sent to Central and Regional offices in an effort to undermine the Prison Litigation Reform Acts exhaustion requirements. A BP-11 was stolen which had been sent to Central to exhaust the false phone shot. A BP 10 appeal sent to Region, appealing a light shot was stolen.

Count 6     Mail tampering, Obstruction

SIA Mendez put Diehl on mail monitoring without notice and without cause. This action was taken to delay all mail, and provide the FBI access to Diehls legal correspondence with the courts, attorneys and the Media.

123

Count 7.    Electronic Mail tampering

SIA Mendez and SIS Continually interfeared with Diehls email, blocking any email that contained Diehls sons name. These acts caused Diehls Trust Fund account to innapropriaty billed. The acts also caused Diehls families emails to be obstructed causing them a great deal of frustration.

Count 8    Obstruction of Justice

By interfearing with Diehl's ability to exhaust his administrative remedy's Staff interfeared with the PLRA and therefor due process. This affected Diehl's 1 USC § 2241, USC. Bivens Claim and his Tort Claims. Most Costly has been the effect of staffs actions on Diehl's direct appeal with the Fifth Circuit. Diehl was put in isolation for months during his direct appeal without cause. This action resulted in Costly delays to his appeal. Staff has taken all of Diehls legal materials on multiple occasions. Diehl has been denied phone access to his attorney. Diehl has been denied access to Certified mail. USP Tucson staff have done every thing in their power to prevent Diehls appeal where he is innocent of all charges against him.

124

E45

Denise Ann Faulk,                                    11-11-13

Today Nov 11th, 2013 I am writing you
because I have become the victim of crimes
propogated by federal officials acting under
the color of federal law here at USP
Tucson.
I have asked the Warden on multiple
occassions to speak with either the FBI
of a representative of the Office of
Internal Affairs -- he has refused my
requests.
I have mailed the Inspector Generals office
and OIA. I do not believe those letters
were allowed to leave USP Tucson.
   The Warden, SIA mendez, Unit Team Mgr
Hansen, and Case manager Nink have conspired
to violate federal law, to deceive a state
judge, to misrepresent my commitment order,
they have misrepresented the terms of my
family custody order ①, they have mis-used
the remedy process, ② VNS, committed fraud by

1. Resulting in a contempt hearing against my
     ex-wife and a significant loss of money.
2. Part of the PLRA and there for due process  125

Inspector General or Assistant Inspector General
Investigative Division
950 Pennsylvania Ave NW, Room 4706
Washington, DC 20530

*mailed 9-12-2013?*

I David A. Diehl, inmate at United States Penitentiary, Tucson AZ, 53214018 wish to file a criminal complaint against certain individuals as identified below. Although civil remedies may be available to inmate Diehl through a civil rights action in this case, that does not preclude criminal prosecution for activity that violate the law. The following accusations present evidence that a crime has been committed by BOP employees against the state of Texas, the United States, and the BOP itself,

STATUTES VIOLATED

1) The above individuals violated 18 U.S.C. §1343 (Fraud by wire) when they used internal computer system to further a fraud.
2) The above individuals violated 18 U.S.C. §371 (Conspiracy)
3) The above individuals violated 18 U.S.C. §343 (scheme to deprive another of the intangible right of honest service)
4) The above individuals have tampered with inmate Diehl's email in an attempt to further interfere with Texas state court orders
5) The above individuals have most likely interfered with inmate Diehl's mail in violation of federal law.
6) The above individuals conspired to undermine a state judges authority, jurisdiction and orders.

In an attempt to terminate inmate David A. Diehl's relationship with his biological son, USP Tucson SIA Mendez, Unit Manager Hansen, Case Manager Nink, SIS Lieutenant Cooper and Case Manager Pendelton committed the following criminal acts (an unknown Austin Texas FBI agent is also directly involved in this matter.)

RELEVANT FACTS:

1) On 6-2-2011 judge Sheppard of the 353rd Travis County, Texas district family court ordered that no one was to interfere with Diehl's legal right to communicate with his son. This order included Diehl's ex-wife.

2) At some point around December 2011 (six months latter) the FBI and inmate Diehl's ex-wife formed a plan to circumvent that court order. The FBI called into USP Tucson (or had Keri Jenkins do so) and talked to SIS Lieutenant Cooper. Shortly thereafter Cooper caused Keri Jenkins phone number (used for defendant to call his son) to be blocked.
        Statements made by Lt Cooper to Diehl's federal attorney Gerry Morris led Mr. Morris to conclude that Cooper intended to force Diehl back to both state and federal court to re-litigate the state custody order and the federal commitment order. Keri Jenkins denies having asked for her phone to be blocked and could always have blocked the phone herself at any time simply by following the instructions proceeding every call from the BOP.
        USP Tucson Warden Apker was apparently deceived about Lt Coopers objectives as he continued to maintain in three separate emails to Diehl that USP Tucson was not responsible for blocking the phone number and acknowledged that there was no federal restriction on Diehl's contact with his family.

3. Following Keri Jenkins phone number becoming blocked, inmate Diehl (at considerable expense) was forced to take the matter back to family court in Travis County. On 6-21-2012 the Travis county judge ordered Keri Jenkins to write a letter to Warden Craig Apker indicating she wanted the phone unblocked.

4. Just prior to the contempt hearing Diehl and his attorney learned that Keri Jenkins had been entered into the Victim Notification System (a federal database intended for inmate release notification) by Unit Manager Roy Qualantine (Washington DC). A letter provided to Diehl's by Jenkins attorney shows that she was declared to be a "victim" on 5-10-2012 (4 weeks prior to the contempt hearing). USP staff were well aware of the contempt hearing approaching as they were monitoring all of Diehl's emails and were in apparent contact with Keri Jenkins. Keri Jenkins appointed attorney used the VNS entry to try and convince the State judge that Jenkins had a valid reason to violate the courts custody order.

5.     Keri Jenkins is not a victim under title §3663 (Victim and Witness protection Act) definition. Furthermore only the United States attorney in the district where the federal crime was committed can categorize someone as a victim. That person would be Robert Pitman and policy states notification would be provided to the inmate if this action took place. The VNS is not intended to be used for the purpose of circumventing state court orders and terminating family relationships.

6. On 7-6-2012 Keri Jenkins was found to be in contempt of the family court order and on 7-12-2012 Keri followed the courts instructions to send a letter to Warden Apker asking for her phone to be unblocked.     However In yet a further attempt to conspire to undermine the Travis courts intention, the letter pointed out that Keri Jenkins was a "victim" because she was in VNS

126

, implying that the phone should not be unblocked for that reason.

7. On 8-8-2012 shortly after receiving Keri Jenkins letter a meeting took place at USP Tucson where a plan was developed to find a new way to take inmate Diehl's phone. The nature of the meeting was communicated to Diehl by Mrs UnRue a psychologist at USP Tucson. The plan it seems was to write Diehl a very serious incident report where he was accused of using the phone to "further a criminal act." This "shot" usually reserved for escapes and other criminal acts led to Diehl immediately being put in the isolation unit. Diehl remained in isolation for the next four months causing major issues with his direct appeal (pro se) to the Fifth Circuit Court of Appeals. Staff was so brazen as to unblock Diehl's phone for a 24 hour period so that they could declare they "complied" with the state court order.

8. A few weeks later at a MOCK DHO hearing DHO representative Mrs Petrika conveniently took Diehl's phone privileges for TWO YEARS. Region officials have since over-rode the DHO findings and ordered a rehearing. In response, and after another 3 months, DHO simply changed the incident code to 297 (circumventing the phone) and kept the phone restriction. Inmate Diehl was not allowed to attend the reconsideration hearing to present any evidence and no one has ever accused him of circumventing the phone.

9. Diehl's emails have been systematically blocked whenever they contained his sons name. This has resulted in additional financial costs to inmate Diehl as each email costs money.

10. Inmate Diehl has strong reason to believe his legal mail to family attorney's in Austin Texas has been interfered with. Diehl has sent 5 separate family attorneys simple offer letters, to represent him in family court. These letters were sent twice. No response was ever received and the chances of receiving no response from five different highly recommended attorney's is pretty low. There is other significant evidence of tampering and other inmates are experiencing the same thing.

11. Diehl believes the actions taken against him, Texas and the BOP was orchestrated under the instruction of SIA Mendez on behalf of the Austin Texas FBI. These actions have contributed to the delay of Mr. Diehl's appeal where he is pro-se. The Appeal has been delayed well over a year, five times infact. Also Diehl's ability to defend the case has been hampered significantly by these actions.

CONCLUSION

If USP Tucson staff are allowed to get away with this assault on an inmates family and basic due process rights they will be assured in the future of being able to determine who should and should not have their constitutional rights terminated, IN SPITE OF JUDICIAL ORDERS and without ANY valid cause. They will be able to mis-use federal computer systems to accomplish their crime. They will be able to drastically effect an inmates ability to represent himself on appeal. These individuals actions have aided the prosecution and hindered Mr. Diehl's defense.

David A. Diehl

_____

David A. Diehl
United States Penitentiary Tucson
PO Box 24550
Tucson, AZ 85734

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

David A. Diehl )
        Plaintiff, )
v. )  No. CV 13-1996-TUC-JAS
A. Mendez, et al. )
        Defendants )

FILED _____ LODGED
RECEIVED _____ COPY

MAY 3 0 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

## RESPONSE TO DEFENDANT'S SUMMARY JUDGMENT MOTION

A. Declaration In Opposition To Defendant's Motion For Summary
   Judgment (MSJ)

    David A. Diehl, Plaintiff hereby states:

    1. I am the plaintiff in the above titled case. I make this
       declaration in opposition to defendant's Motion For Summary
       Judgment on my claims of First Amendment retaliation against
       me by defendants Mendez and Hansen.

    2. The defendants affidavit claims in summary that Plaintiff
       failed to exhaust his administrative remedies, that the
       elements of a retaliation claim can not be proven against
       the defendants, and that both defendants are entitled to
       qualified immunity.

    3. That the defendants are NOT entitled to summary judgment
       because there are genuine issues of material fact to be
       resolved. The issues are identified in the accompanying
       Statement Of Disputed Factual Issues filed by the Plaintiff
       pursuent to Local Rule 56.1(b) of this district court. The
       relevant facts are set out in this declaration.

    4. The foregoing factual allegations create a genuine issue
       of material fact and will if proved at trial, support a
       judgment in plaintiffs favor, as explained in the legal
       brief submitted with this declaration.

Pursuant to 28 U.S.C. ß1746, I declare under penalty of perjury
that the foregoing is true and correct.

DATE: 5-25-17   Signature _David A Diehl_
David A. Diehl, 53214018
Federal Correctional Complex
USP Coleman II
Coleman, FL 33521

128

## B. STATEMENT OF DISPUTED FACTS

Defendants have moved for summary judgment on the Plaintiff's claim concerning First Amendment retaliation. Pursuant to local rules of this court, the plaintiff submits the following list of genuine issues of material fact that require the denial of the defendant's motion.

Note that since the defendants did not submit a seperate list of factual issues, plaintiff has done the best possible to seperate them out of defendants MSJ.

Statement Of Fact    Description

3, MSJ 5:3           Plaintiff has only properly exhausted two requests for administrative remedies.

Plaintiff exhausted four seperate remedies (shots) all of which were issued in retaliation to Plaintiffs success in a state family court where his custody order was upheld.

Plaintiff exhausted 706307-R1 (Criminal use of a telephone) when that charge was changed from code 197 to 297 on March 3, 2013. It was debatable whether further efforts to exhaust would have been futile since BOP Central had made Plaintiff's ex-wife a "victim" via the Victim Notification Program just prior to the domestic court hearing that took place on May 10, 2012. See Exhibit E-1.

Never the less, Plaintiff continued exhaustion procedures and on September 12, 2013 the 297 penalty was reduced by Region to a 397 penalty. See Exhibit 2. At this point based on the 397's penalty (case law shows the penalty for 397 is usually less than 30 days) of one year, the Plaintiff's phone privilages should have been restored. Further exhaustion would have been futile from a practical point of view. Plaintiff was also not notified that Region had reduced the shot from 297 to 397 until October 10, 2013 in answer to a copout by case manager Nink. At this point 23 months had accumulated from the point Plaintiffs ex-wifes phone was initially blocked.

Note that despite Regions override, the Defendants, trust fund, and in fact DHO refused to unblock the blocked number. See Exhibit 3.

Furthermore, on June 25, 2012 Plaintiff's ability to send mail to his son became hindered when mail room clerk (Mrs. Blake) issued Plaintiff an incident code 396. See 698475-F1. On April 8, 2013 Plaintiff was notified that 698475-F1 was completly expunged. The retaliatory mail shot was at that point exhausted. See Exhibit 28. See also Exhibit 31, the domestic court order that led to the retaliation against plaintiff.

Plaintiff also fully exhausted his initial complaint on the blockage of his ex-wifes phone number. This block did not result in any penalty against plaintiff. In fact USP Tucson personal did not notify plaintiff of the block, and followed no BOP procedures regarding the blockage. On January 12, 2012 plaintiff filed a BP-8 and received a response on 1-13-2012. See remedy id 674440-F1 and Exhibit 4. On January 25, 2012 plaintiff filed a BP-9 and received a response to that on March 23, 2012. On April 2, 2012 Plaintiff filed a BP-11 which arrived at Central (per USPS status) on May 21-2012. See Exhibit 5. See also the defendant's MSJ at page 5, line 12 where they aregue the BP-11 did not arrive at BOP Central until December 10, 2012. In fact the December arrival was a re-send.

Defendants make issue of the fact plaintiff did not file administrative remedies against the two defendants in this case in particular. Plaintiff chose not to take such actions following threats from defendants after plaintiff filed a BP-8 against previous defendant LT. Cooper. See exhibit 6,7,8 where plaintiff filed a BP-8,9,10, and 11 against Lt Cooper. See also the exhaustion section of plaintiff's accompanying legal brief.

Statement Of Fact    Description

4, MSJ 5:13           Remedy 674440-A2 was not exhausted

See SOF 3 above. The remedy was exhausted when BOP Central received the BP-11. The USPS delivery receipt shows that they received the complaint. Plaintiff can not force them to take action. Whats more is that BOP Central Unit Manager Qualliotine (previous defendant) was in the process of entering Plaintiff's ex-wife into the VNS system as a victim so exhaustion was futile.


8, MSJ 10:18          Plaintiffs federal judgment order says he is
                      to have no contact with anyone under 18

The judgment order says plaintiff is to have no contact with anyone under 18 years of age upon release. Plaintiff has not been released. See plaintiff's accompanying legal memorandum and Exhibit 37 which is the Judgement and Comittment Order. The federal court imposed no limitations on Plaintiff's ability to communicate with his son. The United States asked for no such limitation. Plaintiff was not charged with any offense involving his son. When asked to verify this fact, the District judge did so without hessitation. The United States attorney attended Plaintiff's family court hearing, post conviction, and raised no objections to plaintiff's ability to communicate with his son.


9; MSJ 10:24          Plaintiff's ex-wife says that he was making
                      harrassing phone calls to her.

Plaintiff's ex-wife denies under oath to a state court judge ever asking BOP personel to block her phone number. It is not clear what she said to the defendants, or whether it was even she who talked to the defendants. The defendants have oscillated between saying they talked to the FBI and Keri Jenkins.


11, MSJ 11:4          The probation officer advised defendant Nink
                      that plaintiff was not permitted to contact
                      his son by phone, mail, or email

There is no evidence the Austin Texas probation officer ever communicated with the defendants or any USP Tucson personel. The PO officer, Jessie Shifflet denied talking to case Manager Nink when asked by defendants attorney who asked her. See Exhibit 26 which is an email from plaintiffs attorney Gerry Morris.

131

Jessie Shifflet did send a letter to defendant saying that the District judge would honor the family court schedule, after, plaintiff was unnecessarily forced back to his court to get verification. Again, plaintiff was not on probation and the terms of judgement apply upon release. Many USP Tucson inmates with sex offenses communicate with their non-victim family members without staff interfearance.

12, MSJ 11:12          Plaintiff called 15 times after their son refused
                       to speak to plaintiff.

     Plaintiff dissagrees with this statement. The statement was made in a letter sent to the Tucson Warden by plaintiff's ex-wifes attorney. See Exhibit 35, Paula Pierce attorney. Plaintiff's son did not refuse to speak to him. The Texas family court did not find upon reviewing the case after Plaintiff filed a contempt motion, that plaintiff violated any aspect of the custody order.
In the letter Paula Pierce says plaintiff's ex wife did not ask for her phone to be blocked.

13, MSJ 11:13          On July 18, 2012 a District of Arizona P.O.
                       notified plaintiff that the no contact orders
                       in the supervised release portion of his commitment
                       order were in effect from the day it was issued.

     The defendants opened Plaintiffs legal mail to read this comment which was qualified by the disclaimer that the Arizona PO did not know the details of plaintiffs case, and does not have access to that information. See Exhibit 29, PO Bouts letter. Also, 18 U.S.C B3583 is clear that the Supervised Release section of a committment order only applies upon release.  Case law is in allignment with B3583.

14, MSJ 11:22          XXXXXX although not listed as a victim was
                       described in the PSI.

     Plaintiff was not charged with any offense against his son. If plaintiff had been charged with a criminal offense against his son it would have resulted in a completely different trial strategy. Plaintiff can find no case law showing communications of inmates being limited by PSI remarks. More importantly to this case the defendants always had access to this information and so the retaliation claim is not effected

16, MSJ 12:7          Defendant Hansen was not part of the second
                      DCO hearing.

This statement seems irrelevent. Defendant Hansen was a part
of the first hearing which approved bringing forth the 197
incident charges against plaintiff. The only thing done in the
second hearing was a slight modification to the report which included
adding phone call details. See Exhibit 36 and Motion for summary
judgment P.14 where Hansen admits being part of the committee
approving the shot.


17, MSJ 12:10         On August 8, 2012 the United States Probation
                      office of the Western District of Texas
                      notified plaintiff that they would follow the
                      state custody order.

This is a mischaracterization of what Judge Yeakel did.
Plaintiff was unnecessarily forced back to federal court to get
clarification that no restraints existed prohibiting plaintiff
from communicating with his son. The judge just agreed to follow
a state court order that had full jurisdiction of the call schedule
and all other aspects of the custody agreement. Being forced back
to federal court was just more retaliation for plaintiffs access
and success in the family court. The law was clear on conditions
of supervized release. The United States attorney had never objected
to Plaintiff communicating with his son.


20, MSJ 12:15         USP Tucson is the only high-security SOMP
                      facility in the BOP

Plaintiff agrees, and Plaintiff is a sex offender. There should
have been serious justification for sending Plaintiff to any other
USP where its a known fact he could not walk the yard. In fact the
only reason the Plaintiff is at a USP is becaues judge Yeakel
gave a thirty year upward variance on as of 2010, ten year old
offenses. Plaintiffs custody points are LOW points. Defendants
retaliation literally put plaintiffs life at risk which they
acknowleged. That was in fact their intent.

Take note that Plaintiff is on appeal right now with a compelling
argument of false arrest.

21, MSJ 12:21          BOP policy imposes restrictions on sex offender
                       communications

     Plaintiff dissagrees. The BOP does not arbitrarily or selectivly
impose restrictions on inmates communications. The BOP in general
promotes family relationships. Defendants reference no BOP policy
to support their claim.


22, MSJ 13:1           On August 27, 2013 plaintiff was involved inta
                       fight with his cellmate, Odell Golden.

     Dissagreed. Plaintiff was charged and convicted of a fight.
Both inmates dissagreed with the findings. Plaintiffs cellmate
brought assault charges against the gaurd Cota that he says caused
his injuries. It is not clear Golden was even charged with a fight.
In any case a fight is not relevant to this case as explained in
the memorandum of law section of this filing.


23, MSJ 13:5           Another inmate, inmate Brokab, said Plaintiffs
                       fight with his cellie (Golden) was sexual
                       harrassment based.

     Dissagreed. There is no evidence that inmate Brokab said this.
Its also not clear how Brokab would know this even if it was true
since Plaintiff and his cellie were taken to the SHU and Golden
never returned to population. Brokab also has a history of false
accusations against other inmates. See Exhibit E22, an affidavit
of Steve Chapman who knows Brokab well. See Odell Goldens letter
to plaintiff while back in the special housing unit, Exhbit E14.
When interviewed by SIS, Golden never mentioned any sexual
harrassment allegations. See memorandum of law for more details.


24, MSJ 13:7           The SIS technition recommended Plaintiff
                       be seperated from the other two inmates

     Agrred. But Unit team made the ultimate decision. See
MSJ P.1-16. See Exhibit E30, the transfer order. See Exhibit
38, SIS's recomendation for transfer.


25,26, MSJ 13:10       The Warden approved transfer on Nov 19, 2013
                       along with allegations that there is not
                       respondeat superior.

     Agreed in part, the warden did follow the recomendation of
Unit team and SIS and approved the transfer. Defendant Hansen
was directly involved in the decision. See Exhibit 36 showing

134



that defendant Hansen was directly in the committee that recomended
the 197 phone charge. See also Exhibit 24 that has his signature
on that charge. Defendant Hansen also signed off on the transfer.
Defendant Mendez was also directly involved in all aspects of the
investigation and its findings. See below.


28, MSJ 7:21         Defendant Mendez was not involved in the blocking
                     of Plaintiff's phone and only handles staff
                     investigations.

    Plaintiff can not comment on what job responsibilities defendant
Mendez has. But, Mendez admits being involved in staff misconduct
accusations, and plaintiff filed staff misconduct allegations against
Lt. Cooper (previous defendant in first complaint). See exhibit
E6 - E8, Remedy filings against Lt. Cooper.
Medez was involved with Plaintiff's issue from start to finish and
supervizes SIS. See Exhibit E9 - E11 implicating Mendez. See
Exhibit 33 which is a chronology of events provided to Mendez.


29, MSJ 7:24         Plaintiff was aware of the reasons his phone was
                     blocked.

    Plaintiff dissagrees. Plaintiff had been told in response to
his initial BP9 that the phone block was a matter between Plaintiff
and his family. SIS said instead that the FBI caused the block.
In the supporting documentation to region it was implied that
Plaintiffs ex-wife asked for the block. That story then changed to
accusations that plaintiff was calling on the wrong days of a state
custody order. The story was then embelished with the PSI prevented
plaintiff from talking to anyone under 18 while in prison. Finally,
after plaintiff's ex wife had practically been found to be in
contempt of the custody order, it was revealed that BOP Central
Roy Qualliotine had made plaintiff's ex-wife a victim in the VNS
system.
With regard to plaintiff's mail sent to his son, the Warden was
saying that although the phone was blocked, plaintiff still could
send mail. However soon after and without notification, plaintiff
was written a shot for sending mail. See Exhibit 39, and E 28.
Email was interfeared with, and an SIS agent said it was mallicous
interfearance. See E 27.

31, MSJ 8:8          The Special Investigative Supervisor, does not
                     refer to defendant Mendez.

     Dissagree. Since the defendants have never revealed who the
SIS person who sent the supporting documentation to region is,
defendant Mendez can not be ruled out. See Exhibit 12, the letter
sent to region supporting the phone block and accusing plaintiffs
ex-wife of asking for the block. See Mendez's complete response to
plaintiffs interrogatory — Exhibit E32, where he denies knowing
anything, or taking part in any aspect of Plaintiffs case. See
Exhibit 9 and 10, plaintiffs letters to defendant Mendez.

33, MSJ 8:22         On October 10, 2013 "another inmate submitted
                     an inmate request saying plaintiff was sexually
                     harrassing him, and that he would fear for his
                     safety if Plaintiff got out of administrative
                     detention.

     Dissagree. See related statement of fact 23. There is no evidence
of a PREA investigation, and the inmates request was never disclosed.
At trial this inmates testimony will be proven false if the court
finds his statement material.

41, 40, MSJ 8:16     Defendant Mendez was not involved in the transfer
                     of Plaintiff, the warden made the decission.

     On February 1, 2012 Mendez and LT Cooper met with plaintiff
and told him that if he sues them, he would be transferred to a
life threatening USP. On November 19, 2013, within weeks of seeking
a BP-199 payment form for the Bivens filing fee, the warden signed
off on the transfer recommendation for the Plaintiff in this case.
Plaintiff was also asking defendant Mendez to arrange a meeting
between the FBI and himself to bring criminal charges against USP
staff. See exhibit 45 where plaintiff finally filed to the
United States Attorneys office in Phoenix.
A trial will show Mendez's involvment from start to finish. It will
also show any involvement the FBI had in this retaliation against
plaintiff.

136

## CERTIFICATE OF SERVICE

I, David A. Diehl, Plaintiff in case No. CV 13-1996-TUC-JAS proceeding pro-se, hereby swear under the penalty of perjury that the enclosed Response To Defendant's Summary Judgement Motion was handed to prison legal mail staff with proper postage attached on _____5-27-17_____.

The package was addressed to J.Cole Hernandez, Assistant U.S. Attorney, 405 W. Congress, Suite 4800, Tucson, Arizona 85701-5040.


David A. Diehl, 53214018
Federal Correctional Complex
USP Coleman II
PO Box 1034
Coleman, FL 33521

David A. Diehl

_David a Diehl_
Proceeding Pro-SE

Signed this date of

_____5-25-17_____

Case: 17-16852, 04/27/2018, ID: 10853356, DktEntry: 20, Page 140 of 179

Case 4:13-cv-01996-JAS   Document 28   Filed 09/26/14   Page 1 of 24
Case: 4:13-cv-01996-JAS-PSOT   Document #: 24-1   Date Filed: 08/25/2014   Page 25 of 30

David A. Diehl    53214018
Name and Prisoner/Booking Number

USP Atwater
Place of Confinement

PO Box 019001
Mailing Address

Atwater, CA 95301
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

```
┌──────────────────────────────┐
│ ✓ FILED _____  LODGED ____  │
│   RECEIVED ____  COPY        │
│ 7        SEP 2 6 2014     7  │
│                              │
│     CLERK U S DISTRICT COURT │
│      DISTRICT OF ARIZONA     │
│ BY_____ DEPUTY     │
└──────────────────────────────┘
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

First Amended Complaint

David Andrew Diehl
(Full Name of Plaintiff)          Plaintiff,

vs.

(1) (FNU) Cooper
(Full Name of Defendant)

(2) (FNU) Mendez

(3) (FNU) Pendelton

(4) (FNU) Hansen

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 13-1996-TUC-JAS
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☒ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: _____

2. Institution/city where violation occurred: USP Tucson

Revised 5/1/2013                              1

**550/555**

138

## B. DEFENDANTS

1. Name of first Defendant: (FNU) Cooper . The first Defendant is employed as:
SIS Lieutenant  at  USP Tucson .
(Position and Title)                    (Institution)

2. Name of second Defendant: (FNU) Mendez . The second Defendant is employed as:
SIA Supervisor  at  USP Tucson .
(Position and Title)                    (Institution)

3. Name of third Defendant: (FNU) Men-Pendelton . The third Defendant is employed as:
EX Unit Mgr  at  USP Tucson .
(Position and Title)                    (Institution)

4. Name of fourth Defendant: (FNU) Hansen . The fourth Defendant is employed as:
Unit Manager  at  USP Tucson .
Continued...  (Position and Title)      (Institution)
Attachment 2A

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☒ Yes    ☐ No

2. If yes, how many lawsuits have you filed? 1 . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: David A. Diehl v. Craig Apker
      2. Court and case number: D.C. No. 4:12-CV-00788-JGZ .
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?) Dismissed
      _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____ .
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
      _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____ .
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
      _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

139

Case: 17-16852, 04/27/2018, ID: 10853356, DktEntry: 20, Page 142 of 179

Case 4:13-cv-01996-JAS    Document 28    Filed 09/26/14    Page 3 of 24
Case: 4:13-cv-01996-JAS-PSOT    Document #: 24-1    Date Filed: 08/25/2014    Page 27 of 30

TUC JAS

### D. CAUSE OF ACTION

#### COUNT I

1. State the constitutional or other federal civil right that was violated: First Amendment right to freedom of speech and association

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.

☐ Basic necessities  ☒ Mail  ☐ Access to the court  ☐ Medical care
☐ Disciplinary proceedings  ☐ Property  ☐ Exercise of religion  ☐ Retaliation
☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: ~~Phone~~

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Defendants denied Plaintiff all ability to communicate with his biological son. This included phone, mail email and visitation. The Defendants themselves decided that Plaintiffs son and ex-wife were victims of Plaintiff but since no court of law had ever found that to be true the Defendants used illegal means to terminate Plaintiffs ability to communicate with his son. The Defendants interfeared with Plaintiffs phone, mail, email and there was no practical way for visitation given practical constraints. Documentation shows they also intended to prevent visitation
　　　　　　　See Facts on Attached Page 3A

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Lost over $12,000. Lost 1.5 years of communications with my son. Lost Appellant attorney on appeal, Son became homeless, Transfered out of retaliation, lost good time, record dammaged, Months in isolation ect.

5. **Administrative Remedies:**

a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?　　　　　　☒ Yes  ☐ No

b. Did you submit a request for administrative relief on Count I?　　☒ Yes  ☐ No

c. Did you appeal your request for relief on Count I to the highest level?　☒ Yes  ☐ No

d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

140

Case: 17-16852, 04/27/2018, ID: 10853356, DktEntry: 20, Page 143 of 179

Case 4:13-cv-01996-JAS   Document 28   Filed 09/26/14   Page 4 of 24
Case: 4:13-cv-01996-JAS-PSOT   Document #: 24-1   Date Filed: 08/25/2014   Page 28 of 30

**COUNT II**

1. State the constitutional or other federal civil right that was violated: Fifth amendment right to equal protection under the law

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail              ☐ Access to the court      ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion     ☒ Retaliation
   ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Plaintiff was treated differently than other similarly situated inmates who's communication with their families was not interfeared with. Retaliation included Defendants writing improper sanctions, entering Plaintiffs family into the Victim Notification System (VNS) with out cause, Blocking Plaintiffs phone, taking his mail, taking good time, putting him in isolation, preventing his access to family attorneys and hindering his ability to litigate his Direct appeal. Defendants also transfered Plaintiff without cause to a life threatening USP and falsified incident reports to do so. Plaintiffs son was told by his mother, who was told by the BOP he was a victim of Plaintiffs. Other inmates were told Plaintiff victimized his son, these were all visous lies.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   See Count I injury

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?          ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count II?          ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?          ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

Case 4:13-cv-01996-JAS   Document 28   Filed 09/26/14   Page 5 of 24

Case: 4:13-cv-01996-JAS-PSOT   Document #: 24-1   Date Filed: 08/25/2014   Page 29 of 30

for JAS

## COUNT III

1. State the constitutional or other federal civil right that was violated: Tortious Interfeance with Texas State Court Order and Negligent failure to Investigate

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   ☐ Basic necessities        ☐ Mail            ☐ Access to the court        ☐ Medical care
   ☐ Disciplinary proceedings  ☐ Property        ☐ Exercise of religion      ☒ Retaliation
   ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments. Defendants Plaintiffs

Plaintiff failed to investigate the terms of the Plaintiffs custody agreement. They interferaled with the custody agreement out of retaliation and a willingness to violate Plaintiffs First Amendment rights to association and equal protection under the Fifth Amendments equal protection clause.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   See Count I injury

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                                    ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count III?                    ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?    ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

5

142

Tuc Jas

## E. REQUEST FOR RELIEF

State the relief you are seeking:

I seek a declaratory judgement that the actions, policies, practices and or customs alleged herin are illegal. Award compensory and punitive damages to be determined at trial as allowed by law, against each defendant jointly and severally. Preliminaly and permanently enjoin the policies, practices and or customs alleged herin are to be illegal and issue such injunctive relief as well remedy the violations of Petitioners rights. Force the BoP to return Plaintiff to USP Tucson the only yard he can walk.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ 9 - 16  2014 _____                         David A Diehl
                    DATE                                  SIGNATURE OF PLAINTIFF


(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


(Signature of attorney, if any)


(Attorney's address & telephone number)


## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable.  If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6

Attachment I-A                    Case 4:13-cv-01996-TUC-JAS

(Cont Page)

Defendants

(5)  (FNU)  Wink

(6)  (FNU)  Pennington

(7)  Craig  Apker

(8)  Louis  Winn  JR.

(9)  (FNU)  Petricka

(10)  (FNU)  Philips

(11)  (FNU)  Garcia

(12)  Roy  Quallotine

Attachment 2A                    Case 4:13-cv-01996-TUC-JAS

(Cont Page)

5. Name of Defendant: (FNU) Ninn
   Position and Title: Case Manager at: USP TUCSON

6. Name of Defendant: (FNU) Pennington
   Position and Title: Unit manager at: USP TUCSON

7. Name of Defendant: Craig Apker
   Position and title: Warden at: USP TUCSON

8. Name of Defendant: Louis Winn J.R.
   Position and Title: Warden at: USP Tucson

9. Name of Defendant: (FNU) Petricka
   Position and Title: DHO officer at: USP Tucson

10. Name of Defendant: (FNU) Phillips
    Position and Title: DHO officer at: USP Tucson

11. Name of Defendant: (FNU) Garcia
    Position and Title: Trust Fund mgr at: USP Tucson

12. Name of Defendant: Roy Quallio tine
    Position and Title: Central unit mgr at: BOP Central

First Amended Complaint

Continuation of Bivens complaint David A. Diehl v. Cooper ect
all.       CV 13-1996-Tuc-JAS


Facts - These are relevant to all counts

When Appellant was arrested, ten years after the charged
offense conduct, he had full custody of his son. Neither
Appellants son nor his ex wife were any part of Defendants
criminal charges, and the federal court itself imposed no
restrictions on Defendants ability to communicate with his
son. This fact was confirmed by USP Tucson psychiatrist Dr.
Unrue. Further, by statute, any association restrictions
stated in the committment order are only applicable "upon
release." Any statements made by Jessie Shiflett the person
that wrote Plaintiffs PSR should not be considered by this
court. Mrs. Shifflett had no direct knowledge of any events in
this case other than what she had been told by the Defendants
themeselves.

On December 1, 2011 when Plaintiff arrived at USP Tucson he
talked on the phone with his son weekly. This call schedule
represented a modification to an original State court call
schedule, and was made in agreement with Diehls' ex-wife Keri
Jenkins. Enforcement of the state custody order falls under
the jurisdiction of the state of Texas.


On Jan 1, 2012 approximatly one month after arriving at USP
Tucson Plaintiff discovered that one of the  phone number he
used to call his son had become blocked. Plaintiff was given
no notification of the block and yet BOP procedures dictates
that an inmate be given notice when phone restrictions are

3A

imposed. See BOP procedures §540.101. Plaintiff began making
inquiries about the number block and was told by Trust Fund
that his phone was blocked at the request of Keri Jenkins.
Keri Jenkins is on record in both a letter to the Warden, and
under oath in a Texas state court contempt hearing denying
being resonsible for the number block.

On Jan 9th, 2012 Special Investigative Services (SIS) agent
Lt. Cooper told Plaintiff in person that the phone number had
been blocked because, "the FBI didn't like what you
[Plaintiff] were saying on the phone, and so we blocked the
number."

On Feb 1, 2012 SIA Mendez changed that story to "your wife
wanted to know if we could limit calls to certain days and
since we couldn't we blocked the number." It should be noted
that Keri Jenkins always had the capability to block her own
number either using the BOP phone procedures or those
available through her own phone system. Keri Jenkins of course
knew causing such a block would be a direct violation of her
custody agreement. Defendant Mendez also informed the
Plaintiff that HE felt Plaintiffs ex-wife was a victim of
Plaintiff's because Mr. Jenkins was young when she and
Plaintiff became married in 1996.

On January 3, 2012, and again on February 1st, 2012 Plaintiff
sent emails to Warden Apker describing the details of the
phone block and asked him for his assistance in having the
block removed. A copy of the custody order was made available

3 ß

147

to Warden Apker who repeatedly maintained, "This is not an issue with the BOP, but should be addressed through your ex-wife and/or your personal attorney." See exhibit A3.

On February 1, 2012 SIA supervisor Mendez indicated that the reason for the phone number block was because, "your wife wanted to know if we could limit calls to certain days and since we couldn't we blocked her number." Mendez indicated that Plaintiff needed to get a letter from Mrs Jenkins to have the phone unblocked. Letters were written to her attorney with this request and no response was ever received.

On Feb, 5 2012 Plaintiff hired an attorney to take Keri Jenkins back to Texas state court for violating the custody order. The Texas state judge ordered in Plaintiffs favor, and did not find he violated the terms of the custody agreement. Keri Jenkins was ordered to write a letter to the Warden Apker at USP Tucson in an effort to get her phone number unblocked.

From Jan 1, to may 2012 Plaintiff proceeds through the formal remedy process.

On May 9, 2012 Region responded to the BP-10 saying, "Documentation has been provided by [the] special investigative supervisor from USP Tucson AZ [Defendant Mendez] which confirms that your calls were blocked at the request of your sons legal guardian."

On May 2012, just three weeks prior to the state court

contempt hearing, and six months after Petitioner was
sentenced, BOP central Unit manager Roy Qualiotine entered
Keri Jenkins into the BOP's Victim Notification System. See
Exhibit A-8. In a letter entered into evidence in the state
court proceeding Roy Qualiotine stated, "In response to your
recent inquiry the Bureau of Prisons (Bureau) pro-actively
takes steps to prevent inmates from contacting identified
victims of their crime." The letter continued "... your son
has been identified by federal authorities as a victim of
inmate Diehl. Therefor, we have taken steps to prevent this
inmate from placing him [diehls son] on any of the
aforementioned lists." The "lists" included the telephone,
mail, and visiting lists. The "federal authority" was not
identified. Plaintiff has never been charged with federal or
state crimes against his son or ex-wife. According to federal
law only the United States Attorney's office from the district
of prosecution has the authority to add victims to VNS. See 18
U.S.C. §3771 and Program Statement 551.151.


On June 6, 2012, Keri Jenkins wrote a letter to USP Warden
Apker requesting her phone number be unblocked. See exhibit A-
6. The letter, written by Mrs. Jenkins' paid for "victim
assistance," attorney indicated, "our understanding was that
inmate Diehl's calls to the minor child Nathaniel Archibald
Diehl, were blocked not because of an outside request but
because both Ms. Jenkins and the child are listed as victims
of inmate Diehl in the records of the federal criminal court
proceeding. Since Federal Bureau of Prisons (BOP) regulations
prohibit Mr. Diehl from contacting his victims, we understood

3 D

149

that the calls were blocked pursuant to federal BOP policy
..."

On 7-25-12 Mrs. Jenkins' letter was received at USP Tucson,
but instead of unblocking the phone, case manager Nink and
Unit Manager Hansen decided to write Plaintiff a (197) "Use of
a phone to further a criminal act"; sanction. Research shows
that this sanction applies in cases for example where an
inmate orchestrates a drug deal using prison phones. Since
"questioned" phone calls at that point were already six months
old the sanction should have not been written at all and
should have been immediately dismissed by DHO Patrika. BOP
policy only allows sanctions to be be written within twenty-
four hours. Case manager Nink later claimed staff had "just
discovered" that Plaintiff had called his ex-wife on days not
authorized by the custody agreement in July. However the
custody agreement had been presented to the Warden, Mr. Nink,
Mr. Hansen, Lt. Cooper, and Mr. Mendez in February. It's also
true that the details of all BOP calls are logged and
available to staff at all times.

On July 26, 2012 DHO representative Mrs. Patrika found
Plaintiff guilty of the 197 shot and took Plaintiff's phone
privileges for two year, months of good time, imposed a
$100.00 fine, and put him in isolation for three months. The
sanction was latter changed at the request of Region to a 297
(circumventing the phone system - usually covering an inmates
use of someone else's phone account), then later to a 397
(misuse of the phone). A 397 sanction would have been a 30-day

150

3E

phone penalty at most. It should be noted the three different
sanctions really have nothing in common. Plaintiff also
appealed the 397 sanction, but staff would not process the
request. Plaintiff asked Administrative Coordinator Mr.
Stahley on multiple occasions to sign off on the appeal of the
397 being acceptable as late. Mr. Stahley did provide such a
letter but SHU guard Mr. Owen took the letter and threw it
away. Plaintiff sent three different notices of these facts to
the BOP central offices and tried to finalize the 397 show to
no avail. Documentation concerning Plaintiffs attempts to
appeal the 397 has been maintained.

In October 2013 Plaintiff met with the new DHO officer, Mrs.
Phillips and she acknowledged that Plaintiff's phone
privileges should have been reset; Mrs Phillips however
refused to get involved with any resolution and indicated it
was the resonsibility of Trust Fund to unblock the phone
number.

On October 24, 2012. Plaintiff talked to trust fund manager
Defendant Garcia in person and asked him to reset the phone.

On October 25, 2013 Plaintiff filed a BP-8 to have the phone
reset.

On November 2, 2013 Defendant Nink informed the Plaintiff that
he was being transferred from USP Tucson. Mendez made a
similar comment "were getting rid of you."
Plaintiff was denied any due process concerning the transfer.

3 F

During the above time frame Plaintiff was also written a
separate sanction for sending his son a certified letter. The
certified letter was confiscated and never returned. That
particular incident was also overridden by Region. There is no
indication that any of Defendants mail ever made it to his
son, or five different family attorneys he tried to hire.
Plaintiff later found out that SIS had all of his mail
monitored. During the above time frame, emails were also
continuously interfered with and a SIS representative looked
into the matter and told Plaintiff that certain SIS staff
members were acting blocking the emails without authority and
were doing so out of  vindiction. This SIS lieutenant would
not produce the names of those SIS staff members. The email
interfearance caused Plaintiffs trust fund account to be
innapropriatly billed, but more importantly caused his family
members a great deal of frustration. Details of the blocked
emails have been retained.

First Amended Com plaint

Continuation of Bivens complaint David A. Diehl v. Cooper ect
all.        CV - 1996 - TUC - JAS


PERSONAL ROLES OF DEFENDANTS IN VIOLATING PLAINTIFFS RIGHTS:


Plaintiff contends that although several of the below
Defendants are supervisors, they did actively participated in,
or directed the violations or knew of the violations and
failed to act to prevent them.


SIS agent Cooper, Unit Manager Pendelton, and Case Manager
Pennington were involved in all charged counts. These
Defendants took part in the initial decision to block Keri
Jenkins phone number and threatened to retaliate if Plaintiff
used the remedy system to file a complaint about it. Plaintiff
was called into a conference room in Unit B1 with these
particular individuals immediately after writing a BP-8
(informal resolution) complaint naming Lt. Cooper. The phone
number block was discussed in detail at this meeting and
Plaintiff was warned not to proceed with the BP-8. It was
clear retaliation would take place if Plaintiff proceeded.
Obviously Petitioner has a legal right to file grievances
without being subject to retaliation and discrimination.


Warden Apker, Winn and SIA Manager Mendez are also guilty of
all filed counts. As evidenced by emails, Warden Apker, Warden
Winn, and SIS Supervisor Mendez were all kept abreast of the
pertinate facts concerning the call block from start. It was
made immediately clear that these Defendants intended to allow

3 H

153

the block to remain because THEY believed that Keri Jenkins
and Diehl's son were some sort of victims of Plaintiffs. Their
goal was to drive Plaintiff back to state court and this
conclusion was shared by Plaintiffs federal appellant attorney
Gerry Morris, who talked with Lt. Cooper on the phone within
weeks of the block. Defendant Mendez also stated the phone
would remain blocked because the FBI desired didn't like the
content of Plaintiffs calls (this is the subject of Plaintiffs
appeal involving confiscated personal property not in
Plaintiffs criminal Indictment). Mendez himself falsified
information provided to Region in his response to their
inquiries addressing the BP-10. Mendez told Region that Keri
Jenkins asked for her phone to be blocked when she she
testified she didn't. Supervisor Mendez made clear that he
would transfer Plaintiff if Plaintiff exercised his rights to
the court system. Mendez said he had been head of security at
multiple federal prisons and that Plaintiffs life would surely
be in jeopardy if such a transfer took place. Defendant Mendez
carried out his threat when he caused the defendant to be
transferred within weeks of the filing of the Bivens suit.
Plaintiff was threatened immediately upon getting to USP
Atwater, and the transfer has potentially significantly
effected Plaintiff's direct appeal with the 5th Circuit COA
where he is pro-se.
Mendez and his personnel falsified the actual reason for
Plaintiffs transfer and Plaintiff was denied any and all due
process regarding the transfer including requests via FOIA.
Warden Apker and Winn signed off on the over-ridden sanctions
(197, 297) and the transfer. The two wardens allowed

Plaintiffs mail and email to be interfered with, and knowingly
allowed their staff to violate Plaintiffs constitutional
rights as described by the facts in this case. Plaintiff has
maintained detailed logs off the numerous interactions.

Unit Manager Hansen, and Case manager Nink replaced Unit
Manager Pennington and Case manager Pendelton somewhere around
May 2013. Pennington and Pendelton are involved in all the
charged counts but their participation predates the sanctions.
Unit Manager Hansen wrote the 197 sanction against Plaintiff
knowing the time to write such a sanction was expired and did
so out of retaliation immediately following Keri Jenkins
letter to the Warden asking for her number to be unblocked.
Hansen retaliated against Plaintiffs success in state court
without hesitation.

DHO Patrika was involved in all charged counts. In cooperation
with SIS and Unit teams overall plan to prevent Plaintiff from
communicating with his family, at any cost Defendant Patrika
imposed sanctions on time expired 197 charges. Mrs Patrika
purposely took Plaintiff's phone on the clearly invalid
charges (twice), as confirmed by Region. Mrs. Patrika also
made horrendous, false accusations about the Plaintiff during
the DHO hearing and violated Plaintiffs due process rights by
removing him from the hearing when Plaintiff objected to those
outlandish remarks. Case manager Nink attended this meeting
and falsified who Plaintiffs probation officer was, and when
probation terms apply. Nink also apparently told other inmates
that he molested his son. This was communicated to Plaintiff

3 J

by those inmates.

DHO agent Phillips, Case Manager Nink, and Trust Fund Manager
Garcia refused to restore Plaintiffs phone privileges even
after the privileges were supposed be restored. This was a
violation of BOP policy and speaks volumes about Defendants
overall goal.

BOP Central Unit Manager Roy Qualiotine participated in the
violation of Plaintiffs rights by entering Plaintiffs ex-wife
into the Victim Notification System just prior to a contempt
hearing. Defendant Qualiotine had no legal authority to make
such an entry, and his justification was illegal even if he
did. Trying to deceive a state judge if that's what happened
is a crime.

As mentioned in the facts section of this fileing, there is
real evidence that the Defendants came together on multiple
occasions to orchestrate these constitutional violations; in
effect they conspired to violate Plaintiffs constitutional
rights and miss used their positions, power and resources to
accomplish that end. Discovery will show that Plaintiff was
treated differently than other similarly situated inmates and
was retaliated against. It is not BOP policy to terminate
family communications when the family is not a victim.
According to memos from the director of the BOP, the BOP
supports inmate family relationships.

3 K

Case 4:13-cv-01996-JAS Document 28 Filed 09/26/14 Page 20 of 24 Complaint

A-3

TRULINCS 53214018 - DIEHL, DAVID ANDREW - Unit: TCP-B-A

--------------------------------------------------------------------------------

FROM: 53214018
TO: Complex Warden
SUBJECT: ***Request to Staff*** DIEHL, DAVID, Reg# 53214018, TCP-B-A
DATE: 01/10/2012 08:34:53 PM

To: b1
Inmate Work Assignment: none

Both my unit manager Pennington and Trulincs indicate my ex-wife blocked the calls, however I was called into a meeting with
Lieutenant Cooper Monday and he said the BOP did it after listening into one of my calls. He said in the call that I mentioned
there were certain dates I was supposed to call on and that I wasn't calling on that date.
I am not restricted by the court to have contact with my ex wife and son that is a known fact. The district court of Texas also
guaranteed me the right to call on certain days but did not explicitly restrict me from calling more. My attorney explained to me it
was up to my son and ex-wife. The three of us agreed that I would call on Wednesdays and Sundays which is what I have been
doing for months if you look at the phone logs. If she had anything at all to do with blocking the number she is in contempt of
the courts orders - she knows that.
I don't understand why Lieutenant Cooper would get involved with my custody agreement at all. This is between the District
Court of Texas, my wife, my son and me. Why is Lieutenant Cooper saying he had the number blocked? That is what I don't
understand. It seems that this is a re-talitory action motivated by the FBI's or Prosecutors desire to cause me further
punishment which legally they are restricted from doing. I am confused.
The call records of 15 minutes for each call twice a week indicate clearly my Ex wife and son have agreed to talk on those
dates. If my ex blocked it then she needs to be accountable for her actions.
My son is also not getting his mail which the court ordered knowone is to interfere with. My son also says his email account is
not working. I have shown Lt. Cooper the custody agreement and my PSR clearly shows I have no restrictions with my son.
I appreciate your time on this very important matter.
David A. Diehl
-----Complex Warden on 1/3/2012 10:05 AM wrote:

This is not an issue with the BOP, but should be addressed through your
ex-wife and/or your personal attorney.

>>> ~^!"DIEHL, ~^!DAVID ANDREW" <53214018@inmatemessage.com> 1/1/2012
4:27 PM >>>
To: b1
Inmate Work Assignment: none

I have a custody agreement with my ex-wife and the District Judge of
Austin Texas ordered she is not to interfere with my phone calls to my
son. There is now as of Sunday a restriction on her phone number. This
is in violation with a district judges orders. How do I address this
issue ?

This message is intended for official use and may
contain SENSITIVE information. If this message
contains SENSITIVE information, it should be
properly delivered, labeled, stored, and disposed
of according to policy.?

157

CV 13 - Case 4:13-cv-01998-JAS   Document 28   Filed 09/26/14   Page 21 of 24  First Amendment

A-6

# VICARS

Victims Initiative for Counseling Advocacy & Restoration of the Southwest
*Protecting the rights of crime victims in Texas*

July 12, 2012

USP Tucson
U.S. Penitentiary
ATTN: Warden Aplher
9300 S. Wilmot Rd.
Tucson, AZ 85706
CMRRR#7008-1830-0000-0347-0740

U.S. Department of Justice
Federal Bureau of Prisons
Central Office
302 First St., NW
Washington, DC 20534
CMRRR#7008-1830-0000-0347-0733

Re:   David Diehl, Inmate Number 53214018

To Whom It May Concern:

Mendez

I am writing on behalf of Kerry Jenkins, victim of the above-referenced offender.   On July 6, 2012, a state court in Travis County, Texas ordered Ms. Jenkins to "submit written correspondence to the United States Penitentiary Tucson and the Federal Bureau of Prisons stating she consents to the removal of the call block she previously requested that prohibited Movant David Diehl's ability to communicate by telephone with the child Nathaniel Archibald Diehl." A copy of the order is attached for your convenience. Accordingly, to the extent that a call block was requested by her, Ms. Jenkins consents to the removal of the call block at the following times: 6:00 p.m. Central Standard Time on the first, third, and fifth Sunday of each month consistent with the visitation orders in Cause No. D-1-FM-10-005993. The telephone number affected is 512-216-0956.

Calls from Inmate Diehl received at any time outside 6:00 p.m. Central Standard Time on the first, third, and fifth Sundays will not be answered. Prior to the block being placed by the BOP, Inmate Diehl was making multiple phone calls to Ms. Jenkins and the child outside the court ordered visitation schedule including one day when upwards of 15 calls were made after the child refused to speak to Inmate Diehl. Multiple calls from Inmate Diehl outside the state court approved times will be considered to be harassment of the victims. Additionally, the state court's visitation order says, "If Nathaniel Archibald Diehl does not wish to speak to David Diehl, he is permitted to disconnect the call." In other words, **the minor child does not have to speak to the inmate.**

It should be noted that our understanding was that Inmate Diehl's calls to the minor child, Nathaniel Archibald Diehl, were blocked not because of an outside request but because both Ms. Jenkins and the child are listed as victims of Inmate Diehl in the records of the federal criminal court proceeding. Since Federal Bureau of Prisons (BOP) regulations prohibit Mr. Diehl from contacting his victims, we understood that the calls were blocked pursuant to federal BOP policy which states, "Telephone numbers for Victims and Witnesses (as defined in 28 C.F.R. § 151-151 a. & b.) that have requested notification regarding an inmate at a Bureau facility will be blocked

815 Brazos, Suite 1100, Austin, Texas 78701 ♦ Toll free: 888-343-4414 ♦ FAX: 512-477-6576 ♦ www.idvictim.org
*A program of Texas Legal Services Center*

158

Page 2

*who put them there and on what basis*

at the facility where the inmate is housed." The victims are in the federal victim notification system. However, Inmate Diehl produced a letter to the state court signed by Robert E. McFadden, Regional Director, and dated May 8, 2012 saying, "your [Diehl's] calls were blocked at the request of your son's legal guardian." Director McFadden's letter also states, "Further, evidence shows that your [Diehl's] calls were of a nature which threatened the safety, security or the protection of the public."

In conclusion, to the extent that the call block was placed at the request of Inmate Diehl's victim Kerry Jenkins instead of pursuant to Federal BOP regulations for the safety and security of victims, Ms. Jenkins consents to unblocking 512-216-0956 on the first, third, and fifth Sundays of the month at 6:00 p.m. Central Standard Time for the purpose of Inmate Diehl to contact his son/victim Nathaniel Archibald Diehl. The purpose of this letter is to comply with an order of the 353rd Judicial District Court of Travis County, Texas on a Motion for Contempt that Inmate Diehl filed against his victim Kerry Jenkins.

If you have any questions or concerns about this matter, please do not hesitate to contact me at 1-888-343-4414.

Sincerely,

*Paula Pierce*

Paula Pierce
*Attorney for Kerry Jenkins*

cc:    Lucio A. Del Toro
       Victim Witness Coordinator/CMC

C V   Case 4:13-cv-01996-JAS   Document 28   Filed 09/26/14   Page 23 of 24

A-8



May 10, 2012

Smo Part Dec

**U.S. Department of Justice**
**Federal Bureau of Prisons**
Central Office
320 First Street, NW
Washington, DC 20534
Phone: (202) 307-0884
Fax: (202) 514-6550

Kerry Jenkins
1616 Mentone Drive
*Round Rock, TX 78664*

Re: DAVID DIEHL
    Register Number: 53214-018
    Docket Number: 10-CR-00297

Dear Kerry Jenkins:

     You have requested to receive notifications for Nathaniel Diehl regarding DAVID DIEHL, an inmate incarcerated at this facility. Notification is being provided via the Victim Notification System (VNS). The VNS is designed to provide you with information regarding the case as it proceeds through the criminal justice system. You may obtain current information about this matter on the Internet at WWW.Notify.USDOJ.GOV or from the VNS Call Center at 1-866-DOJ-4YOU (1-866-365-4968) (TDD/TTY: 1-866-228-4619) (International: 1-502-213-2767). In addition, you may use the Call Center or Internet to update your contact information and/or change your decision about participation in the notification program. If you update your information to include a current email address, VNS will send information to that address.

     You will need the following Victim Identification Number (VIN) ▓▓▓▓ and Personal Identification Number (PIN) ▓▓▓▓ anytime you contact the Call Center and the first time you log on to VNS on the Internet. If you are receiving notifications with multiple victim ID/PIN codes please contact the VNS Call Center. In addition, the first time you access the VNS Internet site, you will be prompted to enter your last name (or business name) as currently contained in VNS. The name you should enter is ▓▓▓▓

     This notice is to inform you that , in response to your recent inquiry, the Bureau of Prisons (Bureau) proactively takes steps to prevent inmates from contacting identified victims of their crime. Our goal is not to further punish the inmate but rather to protect victims from further victimization by the same individual who has a documented history of harming that victim. In most circumstances Bureau policy and procedures do not allow inmates to have victims on their approved telephone, email or visiting lists.   *no Judge, no charges. Who?*

     As you are aware, your son has been identified by federal authorities as a victim of inmate Diehl. Therefore, we have taken steps to prevent this inmate from placing him on any of the aforementioned lists. Further, based on this inmate's current conviction for ▓▓▓▓ ▓▓▓▓ (on the above-referenced Docket Number) and his prior conviction for Domestic Violence, I see no reason to recommend that these privileges be extended to him.    *Roy Quilliotine*

     You should be aware that this inmate will be able to send correspondence through the regular mail. Although an inmate's regular mail is subject to monitoring and may be read, if this inmate learns through other means that you are receiving notification and threatens or attempts to intimidate you in any manner, please notify both the U.S. Attorney in the district where the inmate was prosecuted and staff at the facility that he is located: currently USP Tuscon, Arizona (520)663-5000).

If at any time you have any questions or concerns regarding this program or the offender's status, please do not hesitate to contact me at the above address or you may telephone the VNS Call Center.

Sincerely,


Roy Qualliotine
Unit Manager

APPEAL,CASREF,CLOSED,DTE,PROTO

# U.S. District Court
## DISTRICT OF ARIZONA (Tucson Division)
## CIVIL DOCKET FOR CASE #: 4:13-cv-01996-JAS

Diehl v. Cooper et al
Assigned to: Judge James A Soto
Related Case: 4:12-cv-00788-JGZ
Case in other court: 9th CCA, 17-16036
                  9th CCA, 17-16852
Cause: 28:1331 Federal Question: Bivens Act

Date Filed: 12/02/2013
Date Terminated: 08/29/2017
Jury Demand: Plaintiff
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**David A Diehl**
                  represented by  **David A Diehl**
                                         # 53214018
                                         COLEMAN-FL-COLEMAN-II-USP
                                       U.S. PENITENTIARY
                                       P.O. BOX 1034
                                       COLEMAN, FL 33521
                                       PRO SE

V.

**Defendant**

**Unknown Cooper**
*named as SIS Lieutenant (FNU)*
*Cooper / each and all in his/her*
*individual and official capacity*
*TERMINATED: 02/09/2015*

**Defendant**

**Unknown Mendez**
*named as SIA (FNU) Mendez / each*
*and all in his/her individual and official*
*capacity*
                  represented by  **J Cole Hernandez**
                                           US Attorneys Office - Tucson, AZ
                                         405 W Congress St., Ste. 4800
                                         Tucson, AZ 85701-4050
                                       520-620-7300
                                       Fax: 520-620-7138
                                       Email: cole.hernandez@usdoj.gov
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Unknown Pendelton**
*named as Case Manager (FNU)*

*Pendelton / each and all in his/her
individual and official capacity
TERMINATED: 02/09/2015*

### Defendant

**Unknown Nink**
*named as Case Manager (FNU) Nink /
each and all in his/her individual and
official capacity
TERMINATED: 02/09/2015*

### Defendant

**Unknown Hansen**
*named as Unit Team Manager (FNU)
Hansen / each and all in his/her
individual and official capacity*

represented by **J Cole Hernandez**
(See above for address)
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

### Defendant

**Unknown Pennington**
*named as Unit Team Manager (FNU)
Pennington / each and all in his/her
individual and official capacity
TERMINATED: 02/09/2015*

### Defendant

**Craig Apker**
*Warden / each and all in his/her
individual and official capacity
TERMINATED: 02/09/2015*

### Defendant

**Louis W Winn, Jr.**
*Warden / each and all in his/her
individual and official capacity
TERMINATED: 02/09/2015*

### Defendant

**Unknown Petricka**
*named as DHO (FNU) Petricka / each
and all in his/her individual and official
capacity
TERMINATED: 02/09/2015*

### Defendant

**Unknown Phillips**
*named as DHO (FNU) Phillips / each
and all in his/her individual and official*

*capacity*
*TERMINATED: 02/09/2015*

**Defendant**

**Unknown Garcia**
*named as Trust Fund (FNU) Garcia /*
*each and all in his/her individual and*
*official capacity*
*TERMINATED: 02/09/2015*

**Defendant**

**Roy Qualliotine**
*Central Unit Manager, BOP Central*
*TERMINATED: 02/09/2015*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/02/2013 | 1 | PRISONER CIVIL RIGHTS COMPLAINT filed by David A Diehl. (21 pages) (Attachments: # 1 Envelope)(KEP) (Entered: 12/03/2013) |
| 12/02/2013 | 2 | NOTICE OF ASSIGNMENT: (KEP) (Entered: 12/03/2013) |
| 12/26/2013 | 3 | NOTICE OF PARTY'S CHANGE OF ADDRESS by David A Diehl: ##53214018, United States Penitentiary Atwater, P.O. Box 019001, Atwater, CA 95301. (JKM) (Entered: 12/27/2013) |
| 01/03/2014 | 4 | ORDERED within 30 days Plaintiff must either pay the $400.00 filing and administrative fees or file a complete Application to Proceed in Forma Pauperis and a certified six-month trust account statement. If Plaintiff fails to either pay the $400.00 filing fee or file a complete Application to Proceed In Forma Pauperis within 30 days, the Clerk of Court must enter judgment without prejudice. Signed by Judge Jennifer G Zipps on 1/2/2014. (BAR) (Entered: 01/03/2014) |
| 01/06/2014 | 5 | Letter from David Diehl (2 pages). (SMBE) (Entered: 01/09/2014) |
| 01/06/2014 | 6 | MOTION To Have Transfer Reversed or Appointed Counsel by David A Diehl. (3 pages). (SMBE) (Entered: 01/09/2014) |
| 01/14/2014 | 7 | ORDER DENYING 6 Plaintiffs Motion for injunctive relief or to appoint him counsel. Signed by Judge Jennifer G Zipps on 1/14/14.(BAC) (Entered: 01/14/2014) |
| 01/17/2014 | 8 | Habeas Filing fee received: $350.00, receipt number TUC020162 (BAC) (Entered: 01/21/2014) |
| 01/30/2014 | 9 | NOTICE re: re payment and Motion to Reconsider by David A Diehl. (BAR) (Entered: 02/03/2014) |
| 01/30/2014 | 10 | MOTION for Reconsideration re: 7 Order of 1/14/2014 by David A Diehl. (BAR) (Entered: 02/03/2014) |

| 01/30/2014 | 11 | NOTICE of filing criminal complaint by David A Diehl. (BAR) (Entered: 02/03/2014) |
| 02/06/2014 | 12 | NOTICE of filing copy of letter sent to U.S. Attorney's Office by David A Diehl.(2 pages) (BAR) Modified on 2/7/2014 (BAR). (Entered: 02/07/2014) |
| 02/06/2014 | 13 | MOTION for Exemption from LR Civ 5.4 by David A Diehl. (1 page)(BAR) Modified on 2/7/2014 (BAR). (Entered: 02/07/2014) |
| 03/12/2014 | 14 | Peition for Reconsideration for Temporary Injunction, re: 7 Order on Motion for Miscellaneous Relief by David A Diehl. (BAC) (Entered: 03/17/2014) |
| 03/17/2014 | 15 | SUPPLEMENTAL BRIEF re: 14 MOTION for Reconsideration by Plaintiff David A Diehl. (9 pages).(BAC) (Entered: 03/19/2014) |
| 04/07/2014 | 16 | NOTICE re: Seven-Day Notice of Intent to Take Default by David A Diehl.(3 pages). (SMBE) (Entered: 04/07/2014) |
| 04/11/2014 | 17 | NOTICE re: Notice of Default mailed to Denise Ann Faulk by David A Diehl. Request confirmation that Notice of Default was received by Denise Ann Faulk. (1 Page). (SMBE) (Entered: 04/11/2014) |
| 04/21/2014 | 18 | NOTICE re: 7 Day Notice of Intent to Take Default by David A Diehl. (3 pages) (KAH) (Entered: 04/22/2014) |
| 04/21/2014 | 19 | Letter to the Court from David A Diehl. (1 page) (KAH) (Entered: 04/22/2014) |
| 05/13/2014 | 20 | NOTICE by David A Diehl. (Attachments: # 1 Attachment, # 2 Attachment) (BAC) (Entered: 05/16/2014) |
| 06/05/2014 | 21 | CASE STATUS REQUEST by Plaintiff David A Diehl. (BAC) (Entered: 06/06/2014) |
| 06/13/2014 | 22 | MOTION for Default Judgment by David A Diehl. (BAC) (Entered: 06/16/2014) |
| 07/22/2014 | 23 | Due to the appointment of new district judges in the Tucson division, this case is hereby reassigned by the clerk to the Honorable District Judge James A. Soto. All future filings shall reflect the following case number CIV 13-01996-TUC-JAS-PSOT. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (ADI-MLH, ) (Entered: 07/22/2014) |
| 08/25/2014 | 24 | ORDER denying 10 14 and 15 Motion for Reconsideration ; denying 11 12 13 16 17 18 19 20 and 22 Motion for Default, Notions and Letters to the extent that any relief is sought therein. The Complaint (Doc. 1 ) is dismissed for failure to state a claim.. Plaintiff has 30 days from the date this Order is filed to file a first amended complaint using the court-approved form in compliance with the Instructions and this Order. Failure to comply, and the Clerk of Court must enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as strike under 28 U.S.C. § 1915(g). Signed by Judge James A Soto on 8/22/14.(SMBE) (Entered: 08/25/2014) |
| 08/27/2014 | 25 | MOTION for Reconsideration re: 24 Order on Motion for Reconsideration, Order on Motion for Miscellaneous Relief, Order on Motion for Default Judgment by David A Diehl. (4 pages). (SMBE) (Entered: 08/29/2014) |

| 09/03/2014 | 26 | ORDER DENYING 25 Motion for Reconsideration. Signed by Judge James A Soto on 9/2/14.(BAC) (Entered: 09/03/2014) |
| 09/26/2014 | 27 | MOTION to Correct the Record by David A Diehl. (4 pages) (KAH) (Entered: 10/01/2014) |
| 09/26/2014 | 28 | First AMENDED COMPLAINT against All Defendants filed by David A Diehl. (24 pages) (KAH) (Entered: 10/01/2014) |
| 10/23/2014 | 29 | AFFIDAVIT by Plaintiff David A Diehl. (3 pages) (KAH) (Entered: 10/28/2014) |
| 12/12/2014 | 30 | NOTICE re: of Impending Transfer by David A Diehl. (KAH) (Entered: 12/16/2014) |
| 01/16/2015 | 31 | NOTICE re: of Impending Transfer by David A Diehl. (1 page) (KAH) (Entered: 01/26/2015) |
| 02/09/2015 | 32 | ORDER (Service Packet) denying 27 MOTION to Correct the Record. Plaintiff's claims for violation of his association and equal protection rights and his claim for tortious interference and negligent investigation are dismissed without prejudice. Defendants Cooper, Pendelton, Nink, Pennington, Apker, Winn, Petricka, Phillips, Garcia, and Qualliotine are dismissed without prejudice. Defendants Mendez and Hansen must answer Plaintiff's claim of retaliation. The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint 28 , this Order, and summons forms for Defendants Mendez and Hansen, and the United States of America. Signed by Judge James A Soto on 2/9/15. (See attached PDF for complete information.) (KAH) (Entered: 02/09/2015) |
| 03/23/2015 | 33 | AFFIDAVIT of David A Diehl re: Service packet by Plaintiff David A Diehl. (1 page) (KAH) (Entered: 03/24/2015) |
| 04/28/2015 | 34 | SERVICE EXECUTED: USMS Process Receipt and Return re: Summons, Complaint, Order upon U.S. Attorney's Office on 4/28/15. (KAH) (Entered: 05/05/2015) |
| 05/19/2015 | 35 | SERVICE EXECUTED : USMS Process Receipt and Return re: Summons, Complaint, Order upon U.S. Attorney General on 4/27/2015. (DLC) Modified on 5/20/2015 **to correct filing date, to date stamp**(DLC). (Entered: 05/20/2015) |
| 06/03/2015 | 36 | Service Returned Unexecuted by David A Diehl : Summons, Complaint and Order as to Unknown Mendez. (KEP) (Entered: 06/04/2015) |
| 06/03/2015 | 37 | Service Returned Unexecuted by David A Diehl : Summons, Complaint and Order as to Unknown Hansen. (KEP) (Entered: 06/04/2015) |
| 06/29/2015 | 38 | MOTION to Re-serve Defendants by David A Diehl. (BAC) (Entered: 07/01/2015) |
| 07/09/2015 | 39 | ORDER (Service Packet) IT IS ORDERED re: 38 MOTION to Re-serve Defendants (Mendez and Hansen) is GRANTED. Further Ordered Defendant's Mendez and Hansen must answer Plaintiffs claim of retaliation (Doc. 28.) The Clerk of Court must send Plaintiff a service packet including the First |

| | | Amended Complaint (Doc. 28), this Order, the previous Order (Doc. 32), and summons forms for Defendants Mendez and Hansen. Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. If Plaintiff does not complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.Signed by Judge James A Soto on 7/8/2015. (See Order for details)(KEP) (Entered: 07/09/2015) |
|---|---|---|
| 07/20/2015 | 40 | MOTION to Re-serve Defendants by David A Diehl. (BAC) (Entered: 07/22/2015) |
| 07/23/2015 | 41 | ORDER DENYING as moot Plaintiff's 40 Motion to Re-serve Defendants filed on 7/20/15, as the Court already granted Plaintiff's first 38 Motion to Re-serve Defendants, on 7/19/15 at Doc. 39. Signed by Judge James A Soto on 7/23/15. (BAC) (Entered: 07/23/2015) |
| 08/13/2015 | 43 | Mail Returned as Undeliverable. Mail sent to David A Diehl. Reason for return: Unable to Forward. Document number 41. (BAC) (Entered: 08/17/2015) |
| 08/17/2015 | 42 | MOTION to Appoint Counsel by David A Diehl. (BAC) (Entered: 08/17/2015) |
| 08/17/2015 | 44 | Service Returned Unexecuted by David A Diehl: Summons, Complaint Order as to FNU Hansen. (BAC) (Entered: 08/19/2015) |
| 08/17/2015 | 45 | Service Returned Unexecuted by David A Diehl: Summons, Complaint, Order as to FNU Mendez. (BAC) (Entered: 08/19/2015) |
| 09/08/2015 | 46 | MOTION to Supplement Record by David A Diehl. (BAC) (Entered: 09/10/2015) |
| 09/08/2015 | 47 | LODGED Proposed re: 46 MOTION to Supplement. Document to be filed by Clerk if Motion or Stipulation for Leave to File or Amend is granted. Filed by David A Diehl.(BAC) (Entered: 09/10/2015) |
| 10/19/2015 | 48 | MOTION to Supplement Record by David A Diehl. (BAC) (Entered: 10/20/2015) |
| 10/19/2015 | 49 | LODGED Proposed document re: 48 MOTION to Supplement. Document to be filed by Clerk if Motion or Stipulation for Leave to File or Amend is granted. Filed by David A Diehl.(BAC) (Entered: 10/20/2015) |
| 10/26/2015 | 50 | ORDER: IT IS ORDERED the Clerk must serve a copy of this Order on the US Attorney's Office for the District of Arizona in Tucson, Arizona. Within 10 days of the date of this Order, the US Attorney's Office must file under seal a Notice indicating the current employment location(s) of Defendants Mendez and Hansen. Upon receipt of an address for Defendants Mendez and Hansen, the Clerk of the Court shall complete a service packet and forward it to the United States Marshal Service. In light of this Order, Plaintiff's pending motions 42 Motion to Appoint Counsel; 46 Motion to Supplement; 48 Motion to Supplement are DENIED without prejudice. (See attached PDF for complete information). Signed by Judge James A Soto on 10/23/15.(BAC) (Entered: 10/26/2015) |

| 11/03/2015 | 51 | Sealed Document: Notice Pursuant to Court's Order (DKT. [50] filed by Unknown Hansen, Unknown Mendez. (MFR) (Entered: 11/04/2015) |
| 11/12/2015 | 52 | SERVICE EXECUTED: USMS Process Receipt and Return re: Complaint, Order, Summons upon USAO. (BAC) (Entered: 11/18/2015) |
| 11/20/2015 | 53 | Mail Returned as Undeliverable. Mail sent to David A Diehl. Reason for return: Unable to Forward. Document number 50. (BAC) (Entered: 11/23/2015) |
| 12/10/2015 | 54 | MOTION for Order to Compel Petitioners to Respond to Complaint by David A Diehl.(BAC) (Entered: 12/11/2015) |
| 12/23/2015 | 55 | RESPONSE to Motion re: 54 MOTION to Compel filed by Unknown Mendez. (Hernandez, J) (Entered: 12/23/2015) |
| 12/28/2015 | 56 | NOTICE OF PARTY'S CHANGE OF ADDRESS by David A Diehl: #53214018, USP Coleman, PO Box 1034, Coleman, Florida 33521. (1 page). (BAC) (Entered: 12/29/2015) |
| 12/31/2015 | 57 | SERVICE EXECUTED: USMS Process Receipt and Return re: Complaint, Order, Summons upon Unknown Mendez on 12/16/15. (BAC) (Entered: 01/04/2016) |
| 12/31/2015 | 58 | SERVICE EXECUTED: USMS Process Receipt and Return re: Complaint, Order, Summons upon USGA on 11/17/15. (BAC) (Entered: 01/04/2016) |
| 12/31/2015 | 59 | Service Returned Unexecuted as to Unknown Hansen: Defendant no longer at facility.(BAC) (Entered: 01/04/2016) |
| 01/20/2016 | 60 | Sealed Document: Second Notice Pursuant to the Court's Order (DKT. 50 ) by Unknown Hansen, Unknown Mendez. (MFR) (Entered: 01/21/2016) |
| 02/01/2016 | 61 | ORDER: IT IS ORDERED: The Clerk of the Court shall serve a copy of Docs. 50, 51, and 60 on the Marshals. Clerk shall complete a service packet for Defendant Hansen, and forward it to the United States Marshal Service. The Service shall be made within 60 days of the date of this Order by the United States Marshal Service or its authorized representative. (See attached PDF for complete information). Signed by Judge James A Soto on 1/27/16.(BAC) (Entered: 02/01/2016) |
| 02/09/2016 | 62 | SERVICE EXECUTED filed by David A Diehl: USMS Process Receipt and Return re: Summons, Complaint, Order upon Lorri Mitchell, for Unknown Hansen on 2/3/16. (BAC) (Entered: 02/11/2016) |
| 02/16/2016 | 63 | MOTION for Extension of Time to File Answer re: 28 Amended Complaint by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 02/16/2016) |
| 02/18/2016 | 64 | ORDER: IT IS ORDERED that Defendant Mendez shall have up to and including 4/4/16, to answer, file a motion, or otherwise respond to Plaintiff's 28 First Amended Complaint, this being the same date Defendant Hansen is required to respond. Plaintiff's 54 Motion to compel a response to the |

| | | |
|---|---|---|
| | | Complaint is DENIED as moot. Signed by Judge James A Soto on 2/18/16. (BAC) (Entered: 02/18/2016) |
| 04/04/2016 | 65 | ANSWER to 28 Amended Complaint by Unknown Hansen, Unknown Mendez.(Hernandez, J) (Entered: 04/04/2016) |
| 05/02/2016 | 66 | REQUEST to inform the court of discovery by Plaintiff David A Diehl. (2 pages) (KEP) (Entered: 05/03/2016) |
| 05/16/2016 | 67 | ORDERED, all Discovery shall be completed on or before 8/26/16, Dispositive motions shall be filed on or before 9/30/16 and Joint Proposed Pretrial Order due by 10/31/2016. Signed by Judge James A Soto on 5/13/2016. (See Order for details) (KEP) (Entered: 05/16/2016) |
| 06/15/2016 | 68 | SERVICE EXECUTED filed by Unknown Hansen, Unknown Mendez: Notice of Service re: Defendants' 1st Set of Non-Uniform Interrogatories upon Plaintiff on June 15, 2016. (Hernandez, J) (Entered: 06/15/2016) |
| 07/27/2016 | 69 | SERVICE EXECUTED filed by Unknown Hansen, Unknown Mendez: re: Defendants' Objections and Responses to Plaintiff's 1st Set of Non-Uniform Interrogatories and Requests for Production of Documents upon Plaintiff on July 27, 2016. (Hernandez, J) (Entered: 07/27/2016) |
| 08/08/2016 | 71 | MOTION for Extension of Time by David A Diehl. (2 pages) (KEP) (Entered: 08/09/2016) |
| 08/09/2016 | 70 | NOTICE of Deposition of Plaintiff David A. Diehl, filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 08/09/2016) |
| 08/17/2016 | 72 | STIPULATION re: 67 Order, Set/Reset Deadlines/Hearings *Stipulation to Extend Scheduling Order* by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 08/17/2016) |
| 08/23/2016 | 73 | ORDER granting 72 Stipulation. The 71 Motion to extend time is denied as moot. IT IS ORDERED that the Scheduling Order shall be amended as follows: All discovery shall be completed on or before 11/28/16. Dispositive motions shall be filed on or before 12/28/16. The parties shall file a proposed Joint Pretrial Order on or before 1/27/17. Signed by Judge James A Soto on 8/19/2016. (See attached Order for details) (KEP) (Entered: 08/23/2016) |
| 08/29/2016 | 74 | MOTION(Request) for Production of Documents by David A Diehl.(BAC) (Entered: 08/30/2016) |
| 09/15/2016 | 75 | MOTION (Request) for Production of Documents: Memorandum In Support of Subpoena by David A Diehl. (2 pages) (KEP) (Entered: 09/19/2016) |
| 09/22/2016 | 76 | MOTION for Leave to Depose Plaintiff by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 09/22/2016) |
| 10/04/2016 | 77 | ORDER granting 76 Motion for Leave to Depose Plaintiff. Defendants are hereby granted leave for their counsel to depose Plaintiff David A. Diehl in this action. Signed by Judge James A Soto on 10/4/2016. (DPS) (Entered: 10/04/2016) |

| 10/19/2016 | 78 | NOTICE of Deposition of Plaintiff, filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 10/19/2016) |
| 10/24/2016 | 79 | Miscellaneous Document: *the enclosed two documents as evidence in the present case.* (3 pages) (DLC) (Entered: 10/25/2016) |
| 10/26/2016 | 80 | SERVICE EXECUTED filed by Unknown Hansen, Unknown Mendez: Notice of Service re: Defendant's Initial Disclosure upon Plaintiff on October 26, 2016. (Hernandez, J) (Entered: 10/26/2016) |
| 10/27/2016 | 81 | NOTICE of Deposition of Plaintiff (Amended as to Time of Deposition), filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 10/27/2016) |
| 11/04/2016 | 82 | MOTION to Compel Defendant's to Fulfill Discovery per Court Order and Rule 26(a)(1) by David A Diehl. (2 pages) (DLC) (Entered: 11/04/2016) |
| 11/09/2016 | 83 | ORDERED, A review of the record reflects that Plaintiff has appeared to file three separate motions pertaining to discovery issues. See Doc. 74 , 75 , 82 . The record does not indicate that a response has been filed as to Docs. 74 and 75, and the time to file a response to Doc. 82 has not expired. Defendants shall file a response to these three motions by no later than 11/30/16. Signed by Judge James A Soto on 11/9/2016. (KEP) (Entered: 11/09/2016) |
| 11/10/2016 | 84 | STIPULATION *TO EXTEND DEADLINES* by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 11/10/2016) |
| 11/15/2016 | 85 | SERVICE EXECUTED filed by Unknown Hansen: Notice of Service re: Defendant Hansen's Responses to Plaintiff's 2nd Set of Non-Uniform Interrogatories upon Plaintiff on November 15, 2016. (Hernandez, J) (Entered: 11/15/2016) |
| 11/16/2016 | 86 | ORDER granting 84 Stipulation to Extend Deadlines. This Court's Order (Doc. 73 ) shall be amended as follows: All discovery shall be completed on or before 1/27/17; Dispositive motions shall be filed on or before 2/27/17; The parties shall file a proposed Joint Pretrial Order on or before 3/28/17. Signed by Judge James A Soto on 11/16/2016. (See Order for details) (DPS) (Entered: 11/16/2016) |
| 11/30/2016 | 87 | MOTION for Protective Order *Unopposed Motion for Privacy Act Protective Order for Subpoenaed Documents in the Possession of the Bureau of Prisons* by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 11/30/2016) |
| 11/30/2016 | 88 | RESPONSE to Motion re: 75 MOTION to Produce (Request) of Documents, 82 MOTION to Compel Defendant's to Fulfill Discocvery per Court Order and Rule 26(a)(1), 74 MOTION to Produce Documents filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 11/30/2016) |
| 12/01/2016 | 89 | ORDER granting 87 Motion for Protective Order. IT IS ORDERED that the documents produced by the Bureau of Prisons in response to Defendants' Touhy request and subpoena may be disclosed to Defendants. Defendants are authorized to disclose these documents, which may contain information |

https://ecf.azd.uscourts.gov/cgi-bin/DktRpt.pl?189394105337042-L_1_0-1                          3/29/2018

| | | |
|---|---|---|
| | | covered the Privacy Act, to Plaintiff without first obtaining prior consent of the individuals to whom such records pertain. Signed by Judge James A Soto on 12/1/2016. (See attached Order for details) (KEP) (Entered: 12/01/2016) |
| 12/02/2016 | 90 | SERVICE EXECUTED filed by Unknown Hansen, Unknown Mendez: Notice of Service re: Defendants' Amended Initial Disclosure Statement upon Plaintiff on December 2, 2016. (Hernandez, J) (Entered: 12/02/2016) |
| 12/05/2016 | 91 | MOTION to Appoint Counsel by David A Diehl. (1 page) (KAH) (Entered: 12/06/2016) |
| 12/12/2016 | 92 | Mail Returned as Undeliverable. Mail sent to David A Diehl. Reason for return: Refused - Unable to Forward. Document number 89. (KEP) (Entered: 12/14/2016) |
| 12/19/2016 | 93 | RESPONSE in Opposition re: 91 MOTION to Appoint Counsel filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 12/19/2016) |
| 01/03/2017 | 94 | REPLY to Response in Opposition to Motion re: 91 MOTION to Appoint Counsel filed by David A Diehl. (4 pages) (DPS) (Entered: 01/04/2017) |
| 01/10/2017 | 95 | ORDERED upon review of the parties briefs and the pertinent record and authority, Plaintiffs requests/motions (Docs. 74 , 75 , 82 , 91 ) are denied. Signed by Judge James A Soto on 1/10/2017. (See attached Order for details) (KEP) (Entered: 01/10/2017) |
| 01/12/2017 | 96 | NOTICE of Deposition of Plaintiff David A. Diehl (Amended), filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 01/12/2017) |
| 01/23/2017 | 97 | NOTICE re: of failure to fulfill discovery obligation to Plaintiff by David A Diehl. (1 page) (KAH) (Entered: 01/23/2017) |
| 02/21/2017 | 98 | MOTION For Leave to Amend Pleading by David A Diehl. (4 pages) (KEP) (Entered: 02/22/2017) |
| 02/23/2017 | 99 | MOTION for Extension of Time to File *Motion for Extension of Time to File Dispositive Motions (First Request)* by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 02/23/2017) |
| 02/23/2017 | 100 | ORDER granting 99 Motion for Extension of Time to File Dispositive Motions. IT IS HEREBY ORDERED that the dispositive motion deadline be extended until 10 days after the Court denies Plaintiffs Motion for Leave to Amend Pleading or until another date that this Court deems appropriate. Signed by Judge James A Soto on 2/23/2017.(KEP) (Entered: 02/23/2017) |
| 03/07/2017 | 101 | RESPONSE in Opposition re: 98 MOTION to Amend/Correct filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 03/07/2017) |
| 03/20/2017 | 102 | MOTION for Leave to Amend Plaintiff's Civil Rights Complaint & Final Response to Defendants "Response in Opposition to Amend Pleading" by David A Diehl. (5 pages) (KEP) (Entered: 03/21/2017) |
| 03/24/2017 | 103 | ORDERED, the Government filed an opposition, and Plaintiff filed a reply thereto labeled a "petition for leave to amend" (Doc. 102 ). Upon review of the |

| | | briefs, record, and pertinent authority, Plaintiffs motions (Doc. 98 , 102 ) are denied. Signed by Judge James A Soto on 3/24/2017. (KEP) (Entered: 03/24/2017) |
|---|---|---|
| 03/31/2017 | 104 | SERVICE EXECUTED filed by Unknown Hansen, Unknown Mendez: Notice of Service re: Defendant's 1st Supplemental Disclosure upon Plaintiff on March 31, 2017. (Hernandez, J) (Entered: 03/31/2017) |
| 04/03/2017 | 105 | *MOTION for Extension of Time to File *Dispositive Motions by One (1) Day (Second Request)* by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) *Modified to clarify docket text on 4/4/2017 (DPS). (Entered: 04/03/2017) |
| 04/04/2017 | 106 | MOTION for Summary Judgment by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 04/04/2017) |
| 04/04/2017 | 107 | MOTION to Seal Document *Motion to Seal Statement of Facts in Support of Defendants' Motion for Summary Judgment* by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 04/04/2017) |
| 04/04/2017 | 108 | Filed at Doc. 110 --SEALED LODGED Proposed Statement of Facts and Accompanying Exhibits 1-4 re: 107 MOTION to Seal Document *Motion to Seal Statement of Facts in Support of Defendants' Motion for Summary Judgment*. Document to be filed by Clerk if Motion or Stipulation to Seal is granted. Filed by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Exhibit 1-4)(Hernandez, J) Modified on 4/7/2017 (MFR). (Entered: 04/04/2017) |
| 04/07/2017 | 109 | ORDER granting 107 Motion to Seal Document. It is Ordered that Defendants' Statement of Facts and accompanying exhibits (appearing at Doc. 108 ) filed in support of Defendants' Motion for Summary Judgment are to be filed UNDER SEAL. Signed by Judge James A Soto on 4/7/2017.(MFR) (Entered: 04/07/2017) |
| 04/07/2017 | 110 | Sealed Document: Statement of Facts in Support of 106 Motion for Summary Judgment by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Exhibit 1-4)(MFR) (Entered: 04/07/2017) |
| 04/07/2017 | 111 | ORDER: Plaintiff must file a response to 106 Defendants' Motion for Summary Judgment, together with a separate Statement of Facts and supporting affidavits or other appropriate exhibits, no later than 5/8/17. Defendants shall file a reply within 21 days after service of Plaintiff's response. Signed by Judge James A Soto on 4/7/2017. (DPS) (Entered: 04/07/2017) |
| 04/12/2017 | 112 | ORDER granting 105 Motion for Extension of Time to File.. Signed by Judge James A Soto on 4/12/17.This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (JAS, kr) (Entered: 04/12/2017) |
| 04/24/2017 | 113 | MOTION to Deny/RESPONSE to Motion re: 106 MOTION for Summary Judgment filed by David A Diehl. (19 pages). (BAC) (Entered: 04/26/2017) |
| 04/24/2017 | 114 | MOTION to Add Two Defendants to the Claim by David A Diehl. (19 pages). (BAC) (Entered: 04/26/2017) |

| | | |
|---|---|---|
| 05/02/2017 | 115 | Plaintiff's MOTION (to Request the Court) to Force Defendants to Amend their Motion for Summary Judgment by David A Diehl. (3 pages).(BAC) (Entered: 05/02/2017) |
| 05/03/2017 | 116 | RESPONSE in Opposition re: 114 MOTION filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 05/03/2017) |
| 05/08/2017 | 117 | MOTION to Rule on Outstanding Motions by David A Diehl. (3 pages).(BAC) (Entered: 05/09/2017) |
| 05/15/2017 | 118 | REPLY to Response to Motion re: 106 MOTION for Summary Judgment filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 05/15/2017) |
| 05/15/2017 | 120 | NOTICE OF INTERLOCUTORY APPEAL to 9th Circuit Court of Appeals re: 103 Order by David A Diehl. (2 pages) (KAH) (Entered: 05/17/2017) |
| 05/16/2017 | 119 | RESPONSE to Motion re: 115 MOTION *to Force Defendants to Amend their Motion for Summary Judgment* filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 05/16/2017) |
| 05/18/2017 | 121 | USCA Case Number re: 120 Notice of Interlocutory Appeal. Case number 17-16036, 9th CCA. (Copies sent by Ninth Circuit.) (KAH) (Entered: 05/19/2017) |
| 05/18/2017 | 122 | TIME SCHEDULE ORDER of USCA re: 120 Notice of Interlocutory Appeal filed by David A Diehl. (Copies sent by Ninth Circuit.) (KAH) (Entered: 05/19/2017) |
| 05/22/2017 | 123 | RESPONSE to Motion re: 117 MOTION *to Rule on Outstanding Motions* filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 05/22/2017) |
| 05/30/2017 | 125 | Plaintiff's RESPONSE to 106 MOTION for Summary Judgment filed by David A Diehl. (10 oages). (BAC) (Entered: 06/02/2017) |
| 05/30/2017 | 126 | Plaintiff's Brief in Opposition to Defendants 106 MOTION for Summary Judgment by Plaintiff David A Diehl. (125 pages).(BAC) (Entered: 06/02/2017) |
| 05/31/2017 | 124 | ORDER: Plaintiff's Motions at Docs. 113 , 114 , and 115 are DENIED, and the Motion at Doc. 117 is GRANTED to the extent this Court has ruled on the pending motions. Signed by Judge James A Soto on 5/31/17.(BAC) (Entered: 05/31/2017) |
| 06/05/2017 | 128 | MOTION for Leave to Appeal in forma pauperis re: 120 Notice of Interlocutory Appeal by David A Diehl. (7 pages) (KAH) (Entered: 06/08/2017) |
| 06/07/2017 | 127 | MOTION to Strike 125 Response to Motion for Summary Judgment, 126 Statement of Facts by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 06/07/2017) |
| 06/19/2017 | 129 | RESPONSE to Defendants Motion re: 127 MOTION to Strike 125 Response to Motion for Summary Judgment, 126 Statement of Facts filed by David A Diehl. (3 pages) (KEP) (Entered: 06/19/2017) |
| 06/26/2017 | 130 | |

| | | |
|---|---|---|
| | | REPLY to Response to Motion re: 127 MOTION to Strike 125 Response to Motion for Summary Judgment, 126 Statement of Facts filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) (Entered: 06/26/2017) |
| 06/30/2017 | 131 | ORDER denying 127 Motion to Strike; denying 128 Motion for Leave to Appeal in forma pauperis. Signed by Judge James A Soto on 6/30/2017. (See Order for details) (DPS) (Entered: 06/30/2017) |
| 07/26/2017 | 132 | MOTION for Extension of Time to File Response/Reply as to 125 Response to Motion for Summary Judgment by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 07/26/2017) |
| 08/07/2017 | 133 | MANDATE of USCA re: 120 Notice of Interlocutory Appeal filed by David A Diehl. DISMISSED. (Attachments: # 1 Order, # 2 NDA) (Copies sent by Ninth Circuit.) (KAH) (Entered: 08/08/2017) |
| 08/14/2017 | 134 | ORDER GRANTING Defendants' 132 Motion for Extension of Time to File Reply re: 106 MOTION for Summary Judgment , and Defendants must file their reply within 10 days of the date of this Order. Signed by Judge James A Soto on 8/14/17.(BAC) (Entered: 08/14/2017) |
| 08/24/2017 | 135 | MOTION for Leave to File Excess Pages for Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 125), and Plaintiff's Brief in Opposition (Doc. 126) by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Text of Proposed Order)(Hernandez, J) (Entered: 08/24/2017) |
| 08/24/2017 | 136 | Filed at Doc. 139 --LODGED Proposed Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 125), and Plaintiff's Brief in Opposition (Doc. 126) re: 135 MOTION for Leave to File Excess Pages for Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 125), and Plaintiff's Brief in Opposition (Doc. 126) . Document to be filed by Clerk if Motion or Stipulation for Leave to File or Amend is granted. Filed by Unknown Hansen, Unknown Mendez. (Hernandez, J) Modified on 8/29/2017 (MFR). (Entered: 08/24/2017) |
| 08/28/2017 | 137 | *NOTICE re: Supplemental Legal Authority by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Exhibit A)(Hernandez, J) *Modified to remove link to lodged document on 8/29/2017 (DPS). (Entered: 08/28/2017) |
| 08/29/2017 | 138 | ORDER that Defendants' Motion for Leave to File Excess Pages (Doc. 135 ) is granted, and the Clerk of Court shall file Defendants' Lodged Proposed Reply (Doc. 136 ). It is further Ordered Defendants' Motion for Summary Judgment (Doc. 106 ) is granted, and the action is terminated without prejudice for failure to exhaust administrative remedies. The Clerk of Court must enter judgment accordingly. Signed by Judge James A Soto on 8/29/2017.(MFR) (cc: Plaintiff and Defense Counsel) (Entered: 08/29/2017) |
| 08/29/2017 | 139 | *REPLY to Response to Motion re: 106 MOTION for Summary Judgment by Unknown Hansen, Unknown Mendez. (MFR) *Modified to unseal; NEF regenerated on 8/29/2017 (MFR)/(SCH). (Entered: 08/29/2017) |
| | | |

| 08/29/2017 | 140 | CLERK'S JUDGMENT - IT IS ORDERED AND ADJUDGED pursuant to the Court's Order filed August 29, 2017, which granted the Motion for Summary Judgment, judgment is entered and the action is terminated without prejudice for failure to exhaust administrative remedies. (MFR) (Entered: 08/29/2017) |
| --- | --- | --- |
| 09/06/2017 | 141 | BILL OF COSTS by Unknown Hansen, Unknown Mendez. (Attachments: # 1 Memorandum of Taxable Costs and Necessary Disbursements)(Hernandez, J) (Entered: 09/06/2017) |
| 09/11/2017 | 142 | NOTICE OF APPEAL to 9th Circuit Court of Appeals re: 140 Clerks Judgment, 138 Order by David A Diehl. (BAR) (Entered: 09/11/2017) |
| 09/13/2017 | 143 | USCA Case Number re: 142 Notice of Appeal. Case number 17-16852, 9th CCA. Payment of the $505 docketing and filing fees is past due. Failure to correct this deficiency within 14 days will result in the dismissal of this case for failure to prosecute. See 9th Cir. R. 42-1. The fee is payable to the District Court. (BAR) (Entered: 09/15/2017) |
| 09/13/2017 | 144 | TIME SCHEDULE ORDER of USCA re: 142 Notice of Appeal filed by David A Diehl. (BAR) (Entered: 09/15/2017) |
| 09/14/2017 | 145 | ORDER of USCA re: 142 Notice of Appeal filed by David A Diehl. Within 21 days from the date of this order, appellant shall file a motion with this court to proceed in forma pauperis; pay $505 to the district court as the docketing and filing fees for this appeal and provide proof of payment to this court; or otherwise show cause why the appeal should not be dismissed for failure to prosecute. If appellant fails to comply, this appeal will be dismissed for failure to prosecute. (BAR)(copy mailed by 9th CCA) (Entered: 09/15/2017) |
| 09/25/2017 | 146 | Additional Attachments to Main Document re: 142 Notice of Appeal by Plaintiff David A Diehl. (2 pages). (BAC) (Entered: 09/27/2017) |
| 09/25/2017 | 147 | MOTION(to request) Extension for Deadline to File Motion to Reconsider by David A Diehl. (1 page).(BAC) (Entered: 09/27/2017) |
| 10/17/2017 | 148 | Taxation Judgment in amount of $457.49 against plaintiff. Signed by Chief Deputy Clerk Michael O'Brien on 10/17/2017. (CSM) (Entered: 10/17/2017) |
| 10/23/2017 | 149 | REQUEST for Status of Motion for Reconsideration and Informa Pauperis Request by Plaintiff David A Diehl. (2 pages) (MCO) (Entered: 10/25/2017) |
| 10/25/2017 | 150 | ORDER: IT IS ORDERED Plaintiff's 147 Motion for an Extension of Time is DENIED. The document showing up as a 149 "request" is only granted insofar as this Order updates any status of the case. This case has been dismissed, judgment has been entered, and the case is on appeal. Plaintiff shall direct other filings to the Court of Appeals. Signed by Judge James A Soto on 10/25/17. (BAC) (Entered: 10/25/2017) |
| 10/30/2017 | 151 | MOTION to Stay Assessment of Defendants Legal Fees by David A Diehl. (2 pages) (KEP) (Entered: 10/31/2017) |
| 01/23/2018 | 152 | ORDER of USCA re: 142 Notice of Appeal filed by David A Diehl. Appellant's motion to proceed in forma pauperis (Docket Entry No. 3) is granted. Appellant eventually must pay the full amount of the filing and |

| | | docketing fees for this appeal. If appellant fails to comply with this order, the Clerk shall dismiss this appeal for failure to prosecute. (See attached PDF for complete information). (BAC) (Entered: 01/24/2018) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/29/2018 11:49:38 | | | |
| **PACER Login:** | Miskellro:2963110:4299065 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:13-cv-01996-JAS |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April 2018, I electronically filed Appellee's Supplemental Excerpts of Record, Volume I and Volume II (Filed Under Seal), with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system..

I further certify that some of the participants in the case do not appear to be registered CM/ECF users. I certify that I have caused a copy of the Appellee's Supplemental Excerpts of Record Volume I and Volume II (Filed Under Seal) e to be mailed, postage prepaid, to: David A. Diehl, No. 53214-018, USP – U.S. Penitentiary – Coleman, USP II, P.O. Box 1034, Coleman, FL 33521.

*s/ Robert L. Miskell*
ROBERT L. MISKELL
Assistant U.S. Attorney

3